17 Civ. 2899 (LTS)(JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, INC., TIFFANI DUBLIN, individually and on behalf of all others similarly situated, ANTHONY ROMANO, individually and on behalf of all others similarly situated, MATTHEW HINES, individually and on behalf of all others similarly situated, FRANCIS CASTRO, individually and on behalf of all others similarly situated, and JOHN and JANE DOES 1 - 2,000,

Plaintiffs,

-against-

THE CITY OF NEW YORK, MAYOR BILL DEBLASIO, NEW YORK CITY DEPARTMENT OF CORRECTION, and COMMISSIONER JOSEPH PONTE,

Defendants

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

# ZACHARY W. CARTER
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-187
New York, N.Y.  10007-2601

*Of Counsel:*    Alan M. Schlesinger
*Telephone:*    (212) 788-0952
aschlesi#law.nyc.gov

Our No. 2017-018199

TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

      A.  Overview ............................................................................................................. 3

      B.  Nunez Consent Judgment .................................................................................. 4

      C.  Directive 5006R-D ............................................................................................ 5

      D.  The Complaint.................................................................................................... 6

      E.  Other Challenges To Nunez................................................................................ 8

ARGUMENT ....................................................................................................................... 10

      SUBSTANTIVE DUE PROCESS CLAIMS MUST
      BE DISMISSED. ............................................................................................... 10

      A.  Substantive Due Process - Overview ............................................................... 10

      B.  Application Of the Standards To This Case ...................................................... 16

      C.  Collateral Attack On Nunez ............................................................................. 23

CONCLUSION...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Adams v. Galletta,
    966 F. Supp. 210 (S.D.N.Y. 1997) (DOC) ...............................................................................1

Bailey v. New York City Police Department,
    910 F. Supp. 116 (E.D.N.Y. 1996) .......................................................................................1

Benzman v. Whitman,
    523 F.3d 119 (2d Cir. 2008)...............................................................................................13

Bishop v. Wood,
    426 U.S. 341 (1976).............................................................................................................23

Bivens v. Six Unknown FBI Agents,
    403 U.S. 388 (1971).............................................................................................................17

COBA v. City Of New York, et al.,
    BCB 4141-15, 4142-15, 4136-15, and 4137-15 ....................................................................8

COBA v City of New York, et al.,
    100530/2017 (Sup Ct. N.Y. Co.) ..........................................................................................9

Collins v. City of Harker Heights,
    503 U.S. 115 (1992)...................................................................................................... passim

Daniels v. Williams,
    474 U.S. 327 (1986).....................................................................................................10, 14

DeShaney v. Winnebago County Dep't of Social Services,
    489 U.S. 189 (1989)...........................................................................................11, 12, 13, 17

Kaluczky v. White Plains,
    57 F.3d 202 (2d Cir. 1995).................................................................................................10

Kaucher v. County of Bucks,
    455 F.3d 418 (3d Cir. 2006)...................................................................................... passim

Kelley v. Johnson,
    425 U.S. 238 (1976).............................................................................................................17

Kentucky v. Graham,
    473 U.S. 159 (1985)...............................................................................................................1

Lombard v. Board of Educ. of New York,
    784 F. Supp. 1029 (E.D.N.Y. 1992) ......................................................................17

Lombardi v. Whitman,
    485 F.3d 73 (2d Cir. 2007) ............................................................................. *passim*

Matican v. City of New York,
    524 F.3d 151 (2d Cir. 2008) ...............................................................11, 12, 13, 15

McClary v. O'Hare,
    786 F.2d 83 (2d Cir. 1986) ................................................................................14, 15, 23

Nunez v. City of New York,
    11 Civ. 5845 (LTS)(JCF) ............................................................................... *passim*

Pappas v. Giuliani,
    290 F.3d 143 (2d Cir. 2002) .............................................................................17

Pauk v. Board of Trustees of City University of New York,
    654 F.2d 856 (2d Cir. 1981) .............................................................................17

Personnel Administrator v. Feeney,
    442 U.S. 256 (1979) .........................................................................................15

Sacramento v. Lewis,
    523 U.S. 833 (1998) .......................................................................10, 15, 17, 21

Sheppard v. Phoenix,
    1998 U.S. Dist. LEXIS 10576, 1998 WL 397846 (S.D.N.Y. 1998) ..............23, 24

Washington v. District of Columbia,
    256 U.S. App. D.C. 84, 802 F.2d 1478 ([D.C. Cir. 1986)) ................................22, 23

Waters v. Churchill,
    511 U.S. 661 (1994) .........................................................................................17

White v. Lemacks,
    183 F.3d 1253 (11th Cir. 1999) .......................................................................21

Wilson v. City of New York,
    800 F. Supp. 1098 (E.D.N.Y. 1992) ...................................................................1

**Statutes**

42 U.S.C. § 1983 ...................................................................................................1, 14, 17

N.Y.C. Charter § 396 .............................................................................................1

N.Y.C. Charter, Chapter 25, § 623 .......................................................................3

New York City Charter § 1171 ........................................................................................8

New York City Administrative Code §§ 12-301, <u>et</u> <u>seq.</u> ................................................8

N.Y.C. Admin. Code §§ 12-306 ...................................................................................8, 9

N.Y.C. Admin. Code §§ 12-309 .......................................................................................9

New York City Collective Bargaining Law .....................................................................8

**Other Authorities**

Fourteenth Amendment ...............................................................................................1, 14

Due Process Clause .................................................................................................. *passim*

Equal Protection Clause .................................................................................................15

Fed. R. Civ. Proc. 17 .........................................................................................................1

Federal Constitution .......................................................................................................16

## PRELIMINARY STATEMENT

Plaintiffs, the union representing Correction Officers ("COBA") employed by the City of New York ("City") in the City's Department of Correction ("DOC") and four of its members, bring this action alleging that a wide variety of the DOC's policies and procedures have caused Correction Officers ("COs") to be placed in increased danger in City jails.  Many of the policies at issue are governed by a consent judgment entered into in settlement of a federal action, Nunez v. City of New York, 11 Civ. 5845 (LTS)(JCF).  The Complaint alleges that the DOC's policies result in increased risk to COs and are therefore unconstitutional under the substantive component of the Due Process Clause of the Fourteenth Amendment and § 1983.[1] The Complaint does not allege that the DOC has established these policies for the very purpose of increasing the risk to COs.

Defendants now move to dismiss the Complaint in its entirety.[2]  The gravamen of the complaint is that the union does not like the way in which the DOC runs the City's jails and wants the Court to impose policies which the union favors.  However, the Constitution does not mandate terms and conditions of employment simply because the employment is in government or inherently dangerous.  Nor does the Due Process Clause specify occupational and safety regulations to minimize alleged danger to employees.  Plaintiffs use the Constitution to specify

---

[1] All references to "§ 1983" are to 42 U.S.C. § 1983.

[2] Defendants are the City, DOC, Mayor Bill DeBlasio and former DOC Commissioner Joseph Ponte.  The individual plaintiffs have been sued in their official capacities only.  Official capacity suits are the same as suits against the municipality itself.  Kentucky v. Graham, 473 U.S. 159, 165-67 (1985).  The DOC is an agency of the City and is not itself a suable entity. Fed. R. Civ. Proc. 17; N.Y.C. Charter § 396; see Bailey v. New York City Police Department, 910 F. Supp. 116, 117 (E.D.N.Y. 1996); see also Adams v. Galletta, 966 F. Supp. 210, 212 (S.D.N.Y. 1997) (DOC)(and cases cited therein) Wilson v. City of New York, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992).  The DOC must be dismissed from this case.

which programs will be offered to which inmates or the training to be offered to employees. The Constitution cannot be used by government employees to take over the government's jails or to constrain the authority of the DOC to manage those institutions. Thus, the Complaint must be dismissed.

**STATEMENT OF FACTS**[3]

A.     **Overview**

The DOC is charged with the care and custody of inmates in facilities operated by the City.   These inmates include felons, misdemeanants, and individuals awaiting trial on criminal charges.   N.Y.C. Charter, Chapter 25, § 623.   Among those facilities are ten (10) jails located on Rikers Island in Queens, New York: (1) Anna M. Kross Center ("AMKC"), (2) Eric M. Taylor Center ("EMTC"), (3) George Motchan Detention Center ("GMDC"), (4) George R. Vierno Center ("GRVC"), (5) James A. Thomas Center ("JATC"), (6) North Infirmary Command ("NIC"), (7) Otis Bantum Correctional Center ("OBCC"), (8) Robert N. Davoren Complex ("RNDC"), (9) Rose M. Singer Center ("RMSC"), and (10) West Facility ("WF"). DOC also maintains secure facilities in Elmhurst Hospital in Queens, New York, and at Bellevue Hospital in Manhattan, New York.   DOC operates a transportation fleet of over 500 vehicles, and provides training to both uniformed and civilian Department staff through the Correction Academy.

Members of the DOC are entrusted with the responsibility for the care and custody of inmates of the various DOC facilities in the City.   In doing so, DOC members may at times be called upon to use physical force, and on very rare occasions, deadly physical force. Given the great responsibility entrusted to its members, it is incumbent on the DOC to determine and set standards for DOC officers and to take steps to monitor their performance.   In particular, DOC is obligated to deter, detect, and discipline the use of excessive force.   In furtherance of

---

[3] On a motion to dismiss, the allegations set forth in the complaint are deemed true and the legal sufficiency of the complaint tested.   Thus, this statement of facts is drawn from the allegations of the complaint, filed April 21, 2017, (Dkt No. 1) ("Complaint") and defendants neither admit nor deny those allegations.

these valid governmental and managerial goals, the DOC has long had regulation governing the Use of Force, including DOC Directive 5006R-C, an 18-page order which was effective January 31, 2008.

**B.    <u>Nunez</u> Consent Judgment**

Despite the various DOC Directives and Orders, The Federal government and inmates contended that DOC employees engaged in a pattern and practice of using unnecessary and excessive force against inmates in violation of their constitutional rights under both the United States and New York State Constitutions.  <u>See</u> <u>Nunez v. City of New York</u>, 11 Civ. 5845 (LTS)(JCF), consent judgment, filed October 21, 2015 (Dkt. No. 249) ("<u>Nunez</u>"), § I (Second Whereas Clause).  <u>Nunez</u> challenged various other conditions of confinement of the plaintiffs in that case.  The parties settled <u>Nunez</u> by entering into the consent judgment.  <u>Id.</u>

<u>Nunez</u> requires, <u>inter alia</u>, a new DOC Use of Force policy.  <u>Nunez</u>, § IV, at 5. The new use of force directive will be subject to the approval of the <u>Nunez</u> monitor.  The <u>Nunez</u> judgment also requires a myriad of changes in the documenting and investigation of Use of Force incidents.  This included increased camera coverage of DOC facilities through an increase in the number of fixed cameras as well as hand-held and body cameras.  <u>Id.</u> §§ V(14)(l) ("Tracking") at 13; VII(13)(c) ("Video Review") at 22; IX ("Video Surveillance"), at 28.  The <u>Nunez</u> order also requires certain procedures for Use of Force Investigations.  <u>Id.</u> § VII, at 15.

The investigation requires review of video and photographs of inmates and staff taken after the incident.  <u>Nunez</u>, § VII(7)(a), at 17.  The Use of Force investigation must include the photographing of inmate and staff injuries.  <u>Id.</u> § VII(16)(f), at 24 (requiring "color photographs of any Inmate or Staff injuries;").

<u>Nunez</u> also requires a preliminary investigation by the DOC's Investigations Division ("ID").  After the preliminary investigation ID will determine whether further

investigation will be conducted by the facility or by ID or, if the conduct by staff or inmate appears to be criminal in nature, by the City's Department of Investigations ("DOI").  Nunez, § VII(7), at 16.  The preliminary review by ID must be completed within 2 days after the use of force incident.

## C.    Directive 5006R-D

As noted above, the DOC has always had a comprehensive Directive on the subject of the "Use of Force," which states DOC policy and procedures to be followed when it is necessary for staff to use force against an inmate.  DOC has sought to confine the use of force to those cases where force is necessary and to work to ensure that force is used with a minimum of injury to both staff and inmates.  The current Use of Force Directive, Directive 5006R-C, has been in effect since January 31, 2008, when it superseded Directive 5006R-B, which in turn, was issued June 20, 2006.  Directive 5006R-C will continue in effect until September, 2017, when, in accordance with the consent judgment in Nunez, Directive 5006R-D, the latest iteration of the Use of Force Directive becomes effective.  See Nunez, § IV(1)("Within 30 days of the Effective Date, in consultation with the Monitor, the Department shall develop, adopt and implement a new comprehensive use of force policy with particular emphasis on permissible and impermissible uses of force").[4]

Like Directive 5006R-C, the new directive, Directive 5006R-D, confines the use of force to those situations in which force is necessary and, again like its predecessor, seeks to minimize injuries for both staff and inmates.  Directive 5006R-D, §§ II(C) and II(F).  Staff is

---

[4] Directive 5006R-D was initially scheduled to become effective on November 20, 2015, but its effective date was changed to February 17, 2016, and now to September, 2017.

enjoined to attempt methods designed to prevent the use of force in the first place.  See Directive 5006R-D, §§ II(B).

Both iterations of the Directive require an attempt to defuse the situation by speaking with the inmate before force is used if possible.  Compare 5006R-C, § V(a)(1)("… alternative methods to resolve a conflict should be exhausted before force is used.") with 5006R-D, § (VI)(A)("Staff shall first try to de-escalate and resolve the situation by talking to the Inmate, if time and circumstances permit.").  Both iterations of the Directive have different "classes" of use of force.  Compare 5006R-C § V(G)(4)(a) with 5006R-D § IV(G), both of which provide that Class A use of force incidents are ones which require medical treatment beyond the prescription of over-the-counter analgesics or the administration of minor first aid.  In contrast, Class B use of force is one which does not require hospitalization or medical treatment beyond the prescription of over-the-counter analgesics or the administration of minor first aid.  See 5006R-C § V(G)(4)(b)(1) and 5006R-D § IV(H)(1).

Training has always been provided to both newly hired staff and to staff of all ranks and experience.  Among the topics covered by training are: Use of Force, Conflict Resolution, Defensive Tactics, Interpersonal Communication, Mental Health Minimum Standards, Report Writing, Inmate Escort, Inmate Disciplinary Procedures, Penal Law, and Medical Emergency Briefing.  Training specific to the revised Use of Force Directive 5006R-D was introduced to newly hired Correction Officers beginning in November, 2015, and to existing members of service beginning in July, 2016.

## D.    The Complaint

The Complaint states that much of the new use of force regulation, Directive 5006R-D, is taken verbatim from the Nunez consent judgment.  Complaint, ¶ 75.  The Complaint alleges that Directive 5006R-D has already been effectively implemented even though it is not

officially promulgated until September, 2017.  The Complaint alleges that the new directive is

impractical and creates additional dangers for COs.  Id. ¶ 80.  The Complaint further alleges that

> **[p]laintiffs do not challenge the ability of Defendants to enter into the Consent Judgment except to the extent that doing so violates their rights.** The sweeping changes imposed by the Consent Judgment and new Directive 5006R-D with respect to Uses of Force have increased the danger in the workplace faced by Correction Officers …

Id. ¶ 79 (emphasis in original); see also Complaint, ¶¶ 82-84.

The Complaint also alleges that risks to COs are created by:

(1)     insufficient training (¶¶ 85-104);

(2)     insufficient use of punitive segregation (¶¶ 24, 28, 31, 32, and 47-52, 63);

(3)     programs alternative to punitive segregation (¶¶ 31-32, 40, and 41);

(4)     insufficient use of pre-hearing detention (¶¶ 66-74);

(5)     the use of West Facility on Rikers Island and the management of that facility (¶¶ 106-17);

(6)     DOC's gang policies and housing of gang members (¶¶ 119-25; 129-30);

(7)     equipment provided and withheld as well as the limitations on the use of equipment (¶¶ 131-41); and

(8)     the alleged underreporting of violence in DOC facilities including the categorization of spitting by inmates as a "Log Book Entry" level of discipline (¶¶ 142-48).

The Complaint alleges that these are policies of DOC and that they have increased

risks to COs working at DOC facilities.  Plaintiffs cite to the violence perpetrated against four

COs who are named party plaintiffs.  The Complaint does not state that any particular policy

caused any particular assault by any particular inmate.  Rather, the Complaint alleges that the policies increased the risks to the COs and that DOC was deliberately indifferent to those risks. Plaintiffs contend that the District Attorney ("DA") cannot prosecute every inmate who assaults a CO.  Complaint ¶ 73.  The DA is not a party to the instant case and the Complaint does not specify the reasons that the inmates are not prosecuted for assaults on COs.  The Complaint alleges that this is a class action.  Id. ¶¶ 160-73.

**E.      Other Challenges To <u>Nunez</u>**

There have been a variety of suits challenging parts of the <u>Nunez</u> consent judgment, one of which is the instant action.  This includes at least multiple improper practice proceedings before the Board of Collective Bargaining ("BCB"), which adjudicates improper practice claims involving City and unions representing City employees.[5]  <u>See COBA v. City Of New York, et al.</u>, BCB 4141-15, 4142-15, 4136-15, and 4137-15.  COBA contends in those petitions that the DOC violated the New York City Collective Bargaining Law found at New York City Administrative Code §§ 12-301, <u>et</u> <u>seq.</u> by making unilateral changes to terms and conditions of employment and that if these changes were a "managerial prerogative" as defined in the New York City Collective Bargaining Law, then the changes have a safety impact which must be negotiated.

In addition there have been at least two special proceedings brought by COBA in New York State Supreme Court.  <u>See</u> N.Y. Civ. Prac. L. & R. Art. 78, §§ 7801, <u>et</u> <u>seq.</u>  The first Article 78 proceeding challenges the provisions of <u>Nunez</u> which requires that the DOC take use

---

[5] The BCB is a seven-member tripartite body created by the New York City Charter § 1171 and has two members representing the City's unions, two members representing the employer, and three impartial members, including the BCB Chair.  The BCB is empowered, *inter alia¸* to determine whether the City has committed an improper labor practice.  N.Y.C. Admin. Code

of force disciplinary matters into account in determining whether to promote a CO to Correction Captain.  <u>COBA v City of New York, et al.</u>, 100530/2017 (Sup Ct. N.Y. Co.).  The second Article 78 proceeding challenges the BCB's determination refusing to join COBA in seeking to enjoin the DOC from denying promotions based on the use of force and false report findings as required by the <u>Nunez</u> promotion provisions.  Both Article 78 proceedings are being litigated in State Court and defendants have moved to dismiss the Article 78 petition brought by COBA in both cases.

---

§§ 12-306 (defining improper practices); and 12-309(a)(3)(BCB to adjudicate and remedy improper practices).

## ARGUMENT

## SUBSTANTIVE DUE PROCESS CLAIMS MUST BE DISMISSED.

**A.      Substantive Due Process - Overview**

Substantive, as opposed to procedural, due process focuses on an individual's right to life, liberty and property regardless of the procedures used to implement the government's action.  See Daniels v. Williams, 474 U.S. 327, 331 (1986); see also Sacramento v. Lewis, 523 U.S. 833 (1998)("Lewis").  The Supreme Court has noted that

> As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.

Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)(citation omitted).  Substantive due process is not a device to be used to challenge every governmental action that employees dislike. Kaluczky v. White Plains, 57 F.3d 202, 211 (2d Cir. 1995) ("[s]ubstantive due process protects against government action that is arbitrary, conscience shocking or oppressive in a constitutional sense but not against government action that is 'incorrect or ill-advised'"); see Lewis, 523 U.S. at (substantive due process protects against government "exercise of power without any reasonable justification in the service of a legitimate governmental objective, . . .")(citing Daniels v. Williams, 474 U.S. 327, 331 (1986)).  Rather, the actions of the government must substantially burden a constitutional right and be a gross abuse of governmental authority.  The government's action must be extreme.  The Second Circuit has held that "**only intent to cause harm** arbitrarily can shock the conscience in a way that justifies constitutional liability."  Lombardi v. Whitman, 485 F.3d 73, 74-75 (2d Cir. 2007) (emphasis supplied).  The Second Circuit in Lombardi,

summarized the law and noted the narrow parameters of the substantive component of the Due Process Clause.

> Government action resulting in bodily harm is not a substantive due process violation unless "the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"

Id. at 79 (quoting Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005) which quoted Lewis, 523 U.S. at 847 n.8)).

This distillation of the substantive Due Process Clause's limitations flows from the general rule that the government does not bear responsibility for the safety of individuals.

> [T]he Due Process Clauses generally confer **no affirmative right to governmental aid**, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.

DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 196 (1989) (emphasis supplied).  Even if the government is aware of the danger to the individual and has stated that the government intends to help that individual avoid that danger, the government is not constitutionally bound to do so.  Id. at 200.

There are two exceptions to this general rule. See Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008).  First, the government has a duty to protect when the government limits the freedom of the individual.  In such circumstances a "special relationship" is formed and the government is constitutionally bound to protect the individual.  The quintessential of this special relationship is that of inmates to government.  Id.  Involuntary custody is the "linchpin" of the special relationship.  Id. at 156.  The second exception arises if the government has created or increased the danger to a private individual.  Id. at 155.

In <u>Matican</u>, the plaintiff was a government informant who had been promised protection by the government if the informant would take part in a "sting" operation.  524 F.3d at 153.  The government had failed to provide the plaintiff with all the facts concerning the criminal on whom plaintiff informed, failed to properly design the sting so that the criminal was unaware of Matican's part in it, and also failed to protect Matican from that criminal, who slashed plaintiff in retaliation.  <u>Id.</u> at 154.   The Court held that there was no special relationship because plaintiff was not physically forced to enter into the role of informant.  <u>Id.</u> at 156.  In <u>Matican</u>, the Second Circuit concluded that "a noncustodial relationship between a confidential informant and police, absent more, is not a special relationship."  <u>Id.</u> (citations omitted).  Thus, there can be no "special relationship" in the instant case and defendants do not read the complaint as attempting to allege such a relationship.  This is an end to the first exception to the <u>DeShaney</u> principle.

<u>Matican</u>, next considered the second exception to the <u>DeShaney</u> doctrine, which the Second Circuit referred to as the "State created danger exception."  524 F.3d at 157.  In this line of cases the government either creates the danger to a private citizen or increases the danger to that private citizen.  <u>Id.</u> (and cited cases).  <u>Matican</u>, found that if the government intentionally created an actual particularized danger to a private individual for the purpose of causing harm, then the government's conduct might "shock the conscience" and fall within the second exception to the <u>DeShaney</u> doctrine.  <u>Id.</u>

<u>Matican</u>, found that the conduct of the officers in that case did not shock the conscience citing to the Second Circuit's decision in <u>Lombardi v. Whitman</u>, 485 F.3d 73 (2d Cir. 2007), in which the Circuit dismissed claims by workers at the World Trade Center site who alleged that they were intentionally mislead by government statements that the air was safe to breathe at the site.  524 F.3d at 158 (describing <u>Lombardi</u>).  The Second Circuit held that in

<u>Lombardi</u>, as in <u>Matican</u>, the government had competing interests and that balancing those competing interests was the very core of the government's responsibilities and could not be arbitrary or shocking to the conscience in the constitutional sense.   <u>Id.</u>; <u>see</u> <u>Benzman v.</u> <u>Whitman</u>, 523 F.3d 119, 128-29 (2d Cir. 2008).

> that those competing obligations counseled against broad constitutional liability for the government officials, whose decisionmaking might be inhibited by the threat of lawsuits.   We concluded that "[w]hen great harm is likely to befall someone no matter what a government official does, the allocation of risk may be a burden on the conscience of the one who must make such decisions, but does not shock the contemporary conscience."

<u>Matican,</u> 524 F.3d at 159 (citing <u>Lombardi</u>, 485 F.3d at 84-85).

<u>Lombardi</u> was instructive in <u>Matican</u>, and is instructive here.   In <u>Lombardi</u>, the Second Circuit considered the case of State and local rescue workers at the World Trade Center site in the wake of the September 11, 2001, terrorist attack.   485 F.3d at 75.   The employees alleged that they were injured because of the false statements of the federal government that the air at the site was safe when it was not.   <u>Id.</u>  In affirming the District Court's grant of a motion to dismiss the complaint, the Second Circuit held that the workers might qualify under the second exception to the <u>DeShaney</u> principle but that the actions of the government, even if done with deliberate indifference to the health of the employees, did not shock the conscience in the constitutional sense.   <u>Id.</u> at 74-75.   Rather, the actions of the government reflected a balancing of many competing considerations and could not be "second guessed" by the courts under the rubric of substantive due process.   Thus, only actions with an intent to cause harm arbitrarily can "shock the conscience" in the constitutional sense.   <u>Id.</u>

The Second Circuit has applied these rules of analysis to government employment.  McClary v. O'Hare, 786 F.2d 83 (2d Cir. 1986).  In McClary, the estate of a government employee killed while working brought suit against the government under § 1983. Id. at 84.  The plaintiff contended that the government violated the substantive due process provisions of the Constitution by failing to provide a safe working environment.  Id.  The District Court granted the government's motion to dismiss and the Second Circuit affirmed.  Id. at 84-85.

The Second Circuit held that the Constitution did not provide a cause of action for negligent acts causing unintended physical injury to a government employee.  Id. at 85 (citation omitted).  McClary cited and quoted Daniels v. Williams, in which the Supreme Court held that:

> the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property

474 U.S. 327, 328 (1986).

The McClary Court found that the complaint in that case might be construed to allege recklessness and that recklessness might be a culpable state of mind under the Fourteenth Amendment after Daniels.  786 F.2d at 85-86.  The Circuit therefore turned its attention to the issue of whether there exists a cause of action under the Constitution through § 1983 to challenge terms and conditions of government employment.

The Circuit proceeded from the employee's undisputed right to life and then analyzed the parameters of the substantive due process right not to be deprived of life.  786 F.2d at 88.  The Court noted that where the individual harmed is in state custody the case law generally finds that a substantive due process claim exists.  Id.  In such cases the government, acting as the government, has control over the individual and consequently responsibility for the individual's well-being.  Id.  However, where the individual harmed is simply a member of the public not under the government's control then there generally is no substantive due process

- 14 -

clause claim.  Id.  Substantive due process is a barrier to government action using the powers of the government to oppress a member of the public in his or her capacity as a member of the public.  An employee is not under the direct physical control of the government and is not at the mercy of the government to protect him or her.  Further, in McClary, the harm was done by the government acting as an employer rather than as a government; the government did not use governmental authority to affirmatively injure the plaintiff.  Id. at 89.  The Second Circuit in McClary, has, therefore, made clear that the circumstances in which substantive due process will apply to a government employee are extremely narrow.

Even where a plaintiff can show that the plaintiff falls within one of these two exceptions, the government cannot be held liable unless the government's conduct "was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' County of Sacramento v. Lewis, 523 U.S. 833, 848 n.8, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)."  Matican, 524 F.3d at 155.  As the Second Circuit held in Lombardi the governmental action must be for the very purpose of injuring the employee and not simply done with deliberate indifference to the welfare of the employee.  485 F.3d at 74-75; cf. Personnel Administrator v. Feeney, 442 U.S. 256, 279 (1979) (under the Equal Protection Clause, intent means more than "intent as volition or intent as awareness of consequences. . . . It instead involves a decisionmaker's undertaking a course of action 'because of, not merely in spite of, the action's adverse effects upon an identifiable group.'") (citation omitted).

In Collins, the Supreme Court reviewed the grant of a motion to dismiss a complaint concerning the government's liability for the death by asphyxiation of a sanitation worker.  503 U.S. at 117.  Plaintiff in that case claimed that the death occurred "because the city customarily failed to train or warn its employees about known hazards in the workplace."  Id.

- 15 -

The complaint in <u>Collins</u> alleged that a prior incident had given the City notice of the risks "and that the city had systematically and intentionally failed to provide the equipment and training required by a Texas statute." <u>Id.</u> at 118. In <u>Collins</u>, as in the instant case, the sole claim in the complaint was a violation of the substantive component of the Due Process Clause. <u>Id.</u> at 125. The Supreme Court in <u>Collins</u> held that the Due Process Clause did not provide a remedy for failure to protect the employee from that danger. Rather, the Due Process Clause was meant to prevent the use of government power as an instrument of oppression. <u>Id.</u> at 126 (citing to and quoting from <u>DeShaney</u>, 489 U.S. at 196 which quoted <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986)). The Court contrasted an inmate with an employee; noting that the former has a special relationship with the government while the latter does not. <u>Id.</u> at 127. The <u>Collins</u> Court held:

> We also are not persuaded that the city's alleged failure to train its employees, or to warn them about known risks of harm, was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.

<u>Id.</u> at 128. The Court cited a number of cases holding that the Due Process Clause does not shield an individual from common place torts. <u>Id.</u> The Court then held that "[t]he reasoning in those cases applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship." <u>Id.</u> (citations omitted). In arriving at this conclusion the Court noted that labor relations issues "such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country." <u>Id. at 129.</u>

**B.      Application Of the Standards To This Case**

In evaluating the government's action in this case it should first be noted that plaintiffs are employees of the government complaining of working conditions in their capacity

as employees and the employees' union.[6]  Restrictions that would not necessarily be tolerated in cases where the restriction is imposed on the public in general are tolerated in circumstances in which the government is acting as employer.  See, e.g., Waters v. Churchill, 511 U.S. 661 (1994); Kelley v. Johnson, 425 U.S. 238, 245 (1976); Pappas v. Giuliani, 290 F.3d 143, 146-47 (2d Cir. 2002).  The limitations that a governmental employer may impose are all the greater when the employee is a member of a public safety agency.  See Pappas, 290 F.3d at 149.  Further, plaintiffs are not in custody, as were the plaintiffs in Nunez, and cannot claim a "special relationship" under the first exception to the DeShaney principle.

Here, there is no allegation here of conduct that is arbitrary in the constitutional sense or an intent to cause an employee harm.  Just the opposite is true; the allegations of the instant complaint show that there is an attempt by DOC to match means to legitimate state interests in the operation of the prisons.   Included in these interests are the Constitutional imperative of protecting inmates and their rights.  The Nunez consent judgment is a settlement of a lawsuit claiming deprivation of the rights of those inmates.  Also balancing in the equation is the need to protect the health welfare and safety of the public which the City, DOC, and plaintiffs all serve.  The Complaint in the instant case does not allege that there is intent to harm them or any CO or any behavior that would objectively shock the conscience.  See Lewis, 523 U.S. at 849.  Rather, the Complaint claims, at most, "deliberate indifference" to plaintiffs' safety

---

[6] The Complaint is unclear as to whether plaintiffs are attempting to state a claim for damages directly under the Constitution.  See Complaint, Claim 1, ¶¶ 175, et seq.  If such a claim is being interposed then that claim should be dismissed.  A direct claim under the constitution, a so-called "Bivens," action cannot be maintained where a § 1983 claim is possible.  Bivens v. Six Unknown FBI Agents, 403 U.S. 388 (1971); see Pauk v. Board of Trustees of City University of New York, 654 F.2d 856, 865 (2d Cir. 1981)("when § 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available."); Lombard v. Board of Educ. of New

from a myriad of different DOC policies and practices of which plaintiffs disapprove.  Only in

the rarest of cases can deliberate indifference suffice to state a claim under substantive

component of the Due Process Clause.  Lombardi, 453 F.3d at 81 (quoting Lewis).[7]

        The Second Circuit in Lombardi, noted that "inmate welfare" was of

constitutional dimension and that "[t]he duty of a prison official in such a situation 'does not

ordinarily clash with other equally important governmental responsibilities,' because no

'substantial countervailing interest excuse[s] the State from making provision for the decent care

and protection of those it locks up . . . .'"  453 F.3d at 81 (quoting Whitley v. Albers, 475 U.S.

312, 320 (1986) and Lewis, 523 U.S. at 851).   The interests set forth in Nunez are the

establishment of conditions of confinement that are in accordance with the United States and

New York Constitutions.   These interests are extremely weighty, if not constitutionally

"compelling."   In the instant case, COBA has asserted interests of CO safety, the increase in

risks to COs on an already inherently risky job.  This is, of course, of significant importance to

DOC and to plaintiffs.  However, these are not of countervailing constitutional weight.  An

inmate is confined to a prison facility and is not free to leave.  A CO has chosen this line of work

---

York, 784 F. Supp. 1029, 1035 (E.D.N.Y. 1992)("Where there is a Section 1983 action available, a direct action such as this is obviated.").

[7] The Second Circuit in Lombardi, noted that "inmate welfare" was of constitutional dimension and that "[t]he duty of a prison official in such a situation 'does not ordinarily clash with other equally important governmental responsibilities,' because no 'substantial countervailing interest excuse[s] the State from making provision for the decent care and protection of those it locks up . . . .'"  453 F.3d at 81 (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986) and Lewis, 523 U.S. at 851).  The interests set forth in the instant case, while of grave importance to DOC and to plaintiffs, are not of substantial countervailing constitutional weight in considering inmate safety and conditions of confinement.  Thus, the context of this case favors considering the constitutional right of inmates while in DOC jails.  Plaintiffs would prefer that greater emphasis be placed on the safety of staff.  The central meaning of this entire line of substantive Due Process Clause cases is that there is a critical difference between those deprived of liberty and dependent on government and those who are employees, present in the jails by their own volition.

and assumed the risks inherent in the work, including the management of the facilities by ODC. Thus, the context of this case favors ensuring the constitutional right of inmates to safety, security, and constitutional conditions of confinement.

Plaintiffs would prefer that greater emphasis be placed on the safety of staff.  The central meaning of this entire line of substantive Due Process Clause cases is that when these competing interests are to be measured and weighed in the balance, the government's choice of emphasis is not a question of substantive due process unless the government's choice is shocking to the conscience.

Here, as in Lombardi, the employees claim that the actions of the government created a higher risk of harm to the employees which otherwise would not have existed. Lombardi, 485 F.3d at 79.  Here, as in Lombardi, the employees are not claiming a "special relationship" between the government and the employee.  Nor is there any allegation that the DOC wanted the inmates to commit the violence at issue.  Id. at 79-80.  Here, as in Lombardi, "a poor choice made by an executive official between or among the harms risked by the available options is not conscience-shocking merely because for some persons it resulted in grave consequences that a correct decision could have avoided."  Id. at 85.  Balancing risks and competing interests cannot be said to be the expression of "arbitrary" action of the government even if, as plaintiffs contend here, it is wrong.  The substantive component of the Due Process Clause does not supply occupational health and safety guidelines for COs.  It need only be added that the job of CO is inherently risky and assaults will happen regardless of the policies adopted by DOC.  There is no way to tell whether the assaults specified in the Complaint, would have occurred even without the policies plaintiffs choose to challenge.  See Kaucher v. County of Bucks, 455 F.3d 418, 434-35 (3d Cir. 2006)(citing Wallace v. Adkins, 115 F.3d 427, 430 (7th

Cir. 1997)(which rejected a suit arising from an inmate assault and the increased risk created by the assigning of the plaintiff to an area in which the assaulting inmate was housed, "these are risks of the guard's job").  The intentional acts of the inmates are the quintessential intervening cause.  Thus, the Complaint does not state a claim and should be dismissed.

Further, the Complaint does not contend that the DOC intends that any inmate attack any employee, including a CO.  Rather, the altercations between an inmate and an employee are in some sense random.  The core of the Complaint is, then, DOC's alleged indifference to the increased risk to the employees that is at issue in the Complaint.

The Second Circuit in Lombardi, held that the causation must be both foreseeable and direct.  485 F.3d at 80 (quoting Martinez v. California, 444 U.S. 277, 281 (1980)); see Kaucher, 455 F.3d at 433.  The Complaint alleges simply that the policies adopted by the DOC have increased risks to COs in various facilities.  There is no identification of any particular CO who will be harmed or any particular inmate who will act violently; the identifications must await the event.  The actions of the DOC are alleged to have failed to sufficient restrain the inmates and thereby created the alleged risk.  All of the injuries sustained here were inflicted by inmates and plaintiffs claim only that the inmates would not have injured the CO but for the increased risk allegedly flawed policies of the DOC.  Here, then, there is no direct causation alleged and, thus, the Complaint does not state a substantive due process claim.

In Lombardi, the Second Circuit held that, except in the rarest of circumstances, "deliberate indifference" is insufficient to state a substantive due process clause cause of action. 453 F.3d at 74-75; see Kaucher, 455 F.3d at 426 and n.3 (3d Cir. 2006).  Where, as here, the government is considering a number of competing interests which the government must serve, including the conditions of those confined and the safety of COs, there can be no substantive due

- 20 -

process claim arising from the government's exercise of discretion in making that balance. Rather, the conduct alleged in the complaint must be egregious and extreme to meet the "shocks the conscience" test of substantive due process.  Id.  Here, as in Lombardi the complaint fails to state a claim and must be dismissed.

In Kaucher, one of the cases relied on by plaintiffs in their correspondence in this case, the Third Circuit considered whether deliberate indifference could suffice to state a substantive due process claim where a correction officer sued for alleged injury caused by the prison officials alleged failure to alert the officer concerning a contagious infection in the prison and to treat infected individuals with a particular medicine increased the risks to the correction officers.  455 F.3d at 428, 430.  The Third Circuit dismissed the complaint in Kaucher, finding that there was no evidence of deliberate indifference.  Id. at 428-29.  However, the Circuit noted that the context of the decision is important, including whether there were competing considerations confronting the prison officials.  Id. at 426.  The Circuit noted that: "at least one of our sister courts of appeals has indicated a higher standard of culpability may be required where a defendant's decisionmaking relates to workplace conditions.  See White v. Lemacks, 183 F.3d 1253, 1258 (11th Cir. 1999) ('Although Lewis leaves open the possibility that deliberate indifference on the part of government officials or employees will "shock the conscience" in some circumstances, . . . it is clear after Collins that such **indifference in the context of routine decisions about employee or workplace safety cannot carry a plaintiff's case across that high threshold**.') (citation omitted)."  Id. at 426 n.3 (ellipsis in Kaucher)(citing to Sacramento v. Lewis, and Collins v. City of Harker Heights, both of which are discussed above)(emphasis in bold supplied).  The Kaucher Court opined that the government's "failure to provide a workplace

free from health risks cannot form the basis of a substantive due process claim." Id. at 430.  The

Third Circuit concluded that

> We note that other Courts of Appeals have similarly
> concluded a failure to devote sufficient resources to
> establish a safe working environment does not
> violate the *Due Process Clause*. See, e.g., White v.
> Lemacks, 183 F.3d 1253, 1258 (11th Cir. 1999)
> ("[W]hen someone not in custody is harmed
> because too few resources were devoted to their
> safety and protection, that harm will seldom, if ever,
> be cognizable under the Due Process Clause."");
> Walker v. Rowe, 791 F.2d 507, 510-11 (7th Cir.
> 1986).

Id.  Kaucher, therefore, supports defendants in the instant case.

The parameters of the substantive component of the Constitution's Due Process

Clause are far from clear and that has led the Courts to tread cautiously when asked to apply that

clause to occupational safety.  See Kaucher, 455 F.3d at 436 (citing Washington v. District of

Columbia, 256 U.S. App. D.C. 84, 802 F.2d 1478, 1481-82 ([D.C. Cir. 1986)) ("The Court of

Appeals, affirming the district court's dismissal for failure to state a claim, held the officials'

failure to provide safe prison conditions did not form the basis of a substantive due process

claim").[8]  In part, this accounts for the narrow limits so far circumscribing this area of law.  This

case proves the wisdom of this approach.  At the end of the day, plaintiffs here are attempting to

inject this Court into a broad and varied range of the operations of the DOC simply because the

decisions at issue do not, according to plaintiffs' subjective beliefs, sufficiently favor COs.  This

invitation to unlimited usurpation of government operations under the rubric of substantive due

process should be rejected.

---

[8] Washington involved a prison guard assaulted by an inmate who held a previous grudge against
the guard.  That plaintiff alleged that placing him in close proximity to the inmate increased the
guard's risks and made the government liable for the inmate's assault on the guard.

As the Supreme Court said 40 years ago:

> We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. **The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.**

Bishop v. Wood, 426 U.S. 341, 349-50 (1976) (footnote omitted)(emphasis supplied). "Nor does it guarantee municipal employees a workplace that is free of unreasonable risks of harm."

Collins, 503 U.S. at 129. Perhaps the Second Circuit put it best in Lombardi,

> substantive due process liability should not be allowed to inhibit or control policy decisions of government agencies, even if some decisions could be made to seem gravely erroneous in retrospect

453 F.3d at 84. Just as in Collins, McClary, Kaucher, and Washington, and a welter of other Due Process Clause cases, plaintiffs are attempting to assert a breach of a duty of care, an ordinary tort law claim. Substantive due process is not a substitute for tort claims, or labor claims, or occupational safety regulations. The Complaint must be dismissed.

## C.     Collateral Attack On Nunez

This is not the first time that conditions of confinement in DOC facilities has been challenged by inmates and not the first time that COBA has sought to undermine the consent judgment resulting from that litigation. In Sheppard v. Phoenix, another judge of this Court faced a similar attempt by COBA and the Correction Captains' union, to derail a consent judgment concerning conditions of confinement. 91 Civ. 4148 (RPP), 1998 U.S. Dist. LEXIS

10576 at \*1-2, 1998 WL 397846 (S.D.N.Y. 1998).  In <u>Sheppard</u>, as here, the subject of unilateral changes by DOC in the COs terms and conditions of employment, and the safety impact of those changes, was also pending.  <u>See</u> <u>Sheppard</u>, 1998 U.S. Dist. LEXIS 10576 at \*17-25.  The Court held that the unions were too late to intervene in the case, which had been continuing for 7 years and which was then at the precipice of settlement; the Court was about to hold a fairness hearing concerning the settlement agreed to by the parties.  <u>Id.</u> at \*4-6, and 6 ("To abort the Settlement at this process, at this late critical stage would prejudice the parties to this litigation.").  The <u>Shepard</u> Court held that it had an obligation to see that unconstitutional conditions of confinement were remedied.  <u>Id.</u> at \*25.  The Court concluded that "[t]he issues raised by the applicants do not show that they have a direct, substantial and legally protectable interest in this action or in the relief requested to be ordered in the Stipulation."  <u>Id.</u> at \*28.  The Court therefore denied the unions' request to intervene in <u>Sheppard</u> for purposes of challenging the settlement.

Here, COBA has chosen not to intervene in <u>Nunez</u>, but, instead, has mounted this suit which is in part a collateral attack (one of many) on the <u>Nunez</u>, consent judgment.  Plaintiffs contend that the consequences to COs of the changes in DOC operations engendered by, or in conjunction with, the <u>Nunez</u>, consent judgment were so foreseeable that DOC "must have been" deliberately indifferent to the needs of the COs.  Yet, COBA choose not to attempt to intervene in <u>Nunez</u>, possibly deterred by their failure in <u>Sheppard</u>.  In <u>Sheppard</u>, the consent judgment had not yet been approved by the Court and plaintiffs were attempting to intervene to stop that stipulation before it was signed by the Court.  Here, COBA is attempting to collaterally attack a consent judgment that was signed by the Court 1½ years ago.  Here, as in <u>Sheppard</u>, the interests represented by plaintiffs may be important but cannot outweigh the interests of the DOC in

operating prison facilities in accordance with constitutional restrictions on conditions of confinement.  As in <u>Sheppard</u>, this collateral attack on a consent judgment must be rejected.

## <u>CONCLUSION</u>

**WHEREFORE,** defendants respectfully request that the complaint be dismissed in its entirety, that the request for relief be denied in all respects, that judgment be entered for defendants and that defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:          New York, New York
                June 30, 2017

                                        **ZACHARY W. CARTER**
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for Defendants
                                        100 Church Street, Room 2-187
                                        New York, New York 10007-2601
                                        (212) 356-2628
                                        aschlesi@law.nyc.gov


                          By:    /s/  *Alan Maer Schlesinger*
                                        Alan M. Schlesinger
                                        Assistant Corporation Counsel
                                        AS-2673