17 Civ. 2899 (LTS)(JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, INC., TIFFANI DUBLIN, individually and on behalf of all others similarly situated, ANTHONY ROMANO, individually and on behalf of all others similarly situated, MATTHEW HINES, individually and on behalf of all others similarly situated, FRANCIS CASTRO, individually and on behalf of all others similarly situated, and JOHN and JANE DOES 1 - 2,000,

Plaintiffs,

-against-

THE CITY OF NEW YORK, MAYOR BILL DEBLASIO, NEW YORK CITY DEPARTMENT OF CORRECTION, and COMMISSIONER JOSEPH PONTE,

Defendants.

## DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

### ZACHARY W. CARTER
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-187
New York, New York 10007-2601

*Of Counsel:*   Alan M. Schlesinger
*Telephone:*   (212) 356-2628
aschlesi@law.nyc.gov

Our No. 2017-018199

Table of Contents

**Page**

Table of Authorities ........................................................................................................... i

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 3

THE COMPLAINT'S SOLE CLAIM OF
SUBSTANTIVE DUE PROCESS MUST BE
DISMISSED. ....................................................................................................... 3

CONCLUSION ................................................................................................................ 18

APPENDIX A .................................................................................................................... 1

*2017 Bill Text NY A.B. 6838* ............................................................................................ i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
  556 U.S. 662, 678-79 (2009) ...................................................15

Benzman v. Whitman,
  04 Civ. 1888, 2006 U.S. Dist. LEXIS 4005, 2006 WL 250527 (S.D.N.Y.
  Feb. 2, 2006), <u>aff'd in part rev'd in part</u>, 523 F.3d 119 (2d Cir. 2008) ...............................11

Benzman v. Whitman,
  523 F.3d 119 (2d Cir. 2008)................................................. *passim*

Bright v. Westmoreland County,
  443 F.3d 276, 281 (3d Cir. 2006).................................................15

Briscoe v. Potter,
  355 F. Supp. 2d 30 (D.D.C. 2004), <u>aff'd</u>, 171 F. App'x 850 (D.C. Cir. 2005) ......................15

Briscoe v. Potter,
  355 F. Supp. 2d 30 (D.D.C. 2004), <u>aff'd</u>, 171 F. App'x 850 (D.C. Cir. 2005) ......................15

Capers v. Giuliani,
  253 A.D.2d 630, 633 677 N.Y.S.2d 353. 356 (1st Dep't 1998), <u>motion
  dismissed and app. denied</u>, 93 N.Y.2d 868, 689 N.Y.S.2d 14, 711 N.E.2d 199
  (1999)......................................................................6

Collins v. City of Harker Heights,
  503 U.S. 115 (1992)........................................................ *passim*

DeShaney v. Winnebago County Dep't of Social Services,
  489 U.S. 189 (1989)....................................................3, 4, 16

Ford v. Bender,
  768 F.3d 15 (1st Cir. 2014)...................................................7, 8

Kaluczky v. White Plains,
  57 F.3d 202 (2d Cir. 1995).....................................................3

Kaucher v. County of Bucks,
  455 F.3d 418 (3d Cir. 2006)...................................................16

Kneipp v. Tedder,
  95 F.3d 1199, 1208 (3d Cir. 1996)..............................................15

Lombardi v. Whitman,
   485 F.3d 73 (2d Cir. 2007)......................................................................*passim*

Martinez v. California,
   444 U.S. 277, 281 (1980)..............................................................................15

Matican v. City of New York,
   524 F.3d 151 (2d Cir. 2008)....................................................................1, 3, 4

McClary v. O'Hare,
   786 F.2d 83 (2d Cir. 1986)......................................................................*passim*

Paul v. Davis,
   424 U.S. 693 (1976)......................................................................................16

Rochin v. California,
   342 U.S. 165 (1952)........................................................................................4

Sacramento v. Lewis,
   523 U.S. 833 (1998)....................................................................3, 4, 11, 12

Shillingford v. Holmes,
   634 F.2d 263, 266 (5th Cir. 1981) ..............................................................14

Wallace v. Adkins,
   115 F.3d 427, 430 (7th Cir. 1997) ..............................................................16

Whitley v. Albers,
   475 U.S. 312, 320 (1986)............................................................................12

**Statutes**

42 U.S.C. § 1983.....................................................................................6, 14

The Due Process Clause...................................................................*passim*

N.Y. Civil Service Law §§ 200, et seq. ..............................................................6

N.Y. Labor Law § 27-a ..............................................................................6

N.Y. Public Health L. § 3502 ...............................................................8, 1

New York City Collective Bargaining Law...................................................6

Public Employee Safety and Health Act (PESH) ..........................................6

**Other Authorities**

ASSEMBLY BILL 6838 ...............................................................................1

A.6838/S.5337 ...................................................................................................................8

A.8002/S.5828 ...................................................................................................................8

## PRELIMINARY STATEMENT[1]

Plaintiffs bring this Complaint complaining that decisions by the Department of Correction of the City of New York ("DOC") concerning jail conditions, some compelled by the terms of the Nunez, consent judgment increase the risks that Correction Officers ("COs") confront in DOC jails, making a dangerous job even more dangerous.  Plaintiff contend that DOC's alleged deliberate indifference to the increased safety risks engendered by DOC policies, including those required by Nunez, violate the substantive component of the Due Process Clause of the Fourteenth Amendment.  Defendants moved to dismiss and plaintiffs opposed.

Defendants now reply.  DOC treads a narrow and dangerous pathway between its core mission of the care and custody of inmates, many charged but not convicted but many violent, the safety of DOC staff including COs, and the constitutional limits on the treatment of inmates.  A delicate balancing must be maintained of all these interests.  The gravamen of the Complaint is that the substantive component of the Due Process Clause limits the policies that DOC may adopt to those which maximize the safety of COs without regard to best interest of inmates or society.  Otherwise, the DOC is "deliberately indifferent" to the harm that may befall COs.  However, there was, and is, no allegation that the DOC's policies were adopted for the purpose of causing harm to anyone, let alone COs, and even less still, any particular CO.

Defendants moved to dismiss because the Due Process Clause does not establish occupational safety parameters or provide for public sector labor relations.  Defendants relied on several Second Circuit cases, including McClary, Matican, and Lombardi, which narrowly subscribe the parameters of the Due Process Clause's provision prohibiting governmental actions placing individuals in physical danger or increasing preexisting physical danger.  COBA would

---

[1] As used in this memorandum, the terms plaintiffs and COBA are used interchangeably while "individual plaintiffs" refers to the four individual plaintiffs.

enmesh the federal courts in every aspect of government that might bear on the well-being of government employees.

Plaintiffs' opposition barely cites these Second Circuit cases and does not even attempt to distinguish them from the instant case.  Nor does the plaintiffs' opposition acknowledge the myriad of interests that the DOC must confront on a daily basis.  Rather, plaintiffs' sole interest is the protection of COBA members to the exclusion of all other interests.  The substantive Due Process Clause does not instruct State and local governments on how to balance competing interests.

Further, the policies at issue did not create a direct risk to specific members of staff.  Rather, the individual plaintiffs were exposed to risks common to all COs and were unfortunately injured by the actions of inmates.  There was no specific and particularized risk to those particular COs.  The Due Process Clause does not command the government to think only about the interests of staff.  The Complaint must be dismissed.

## STATEMENT OF FACTS

For a complete Statement of Facts concerning the motion to dismiss, the Court is respectfully referred to the complaint filed April 21, 2017 Dkt. No. 1 ("Complaint"), Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss, dated June 30, 2017, Dkt No. 34 ("Defendants' Memorandum") and to Plaintiffs' Memorandum of Law In Opposition To Defendants' Motion To Dismiss, dated August 18, 2017, Dkt No. 41 ("Plaintiffs' Opposition").[2]

---

[2] On a motion to dismiss the facts set forth in the complaint are deemed true and their legal sufficiency tested.  Defendants therefore accept these fact allegations as true for purposes of this motion.

## **ARGUMENT**

### **THE COMPLAINT'S SOLE CLAIM OF SUBSTANTIVE DUE PROCESS MUST BE DISMISSED.**

Defendants Memorandum traced briefly the history of the substantive component of the Due Process Clause.  We began by the extreme caution exercised by the Supreme Court and its reluctance to expand the theory into uncharted areas.  Defendants' Memorandum at 10-12 (citing Sacramento v. Lewis, 523 U.S. 833 (1998)); Collins v. City of Harker Heights, 503 U.S. 115 (1992); and DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 196 (1989)).  This fundamental caution against expanding substantive Due Process was traced through Second Circuit cases such as Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008); Lombardi v. Whitman, 485 F.3d 73, 74-75 (2d Cir. 2007); Kaluczky v. White Plains, 57 F.3d 202, 211 (2d Cir. 1995); and McClary v. O'Hare, 786 F.2d 83 (2d Cir. 1986).  The recurrent themes of these lines of cases require a plaintiff asserting a substantive Due Process Clause claim to show that government's action truly shocks the conscience and were the direct cause of harm to the plaintiff.  In each situation the government's action was not simply wrong or acting tortuously but, rather, was either for the very purpose of causing harm and without competing governmental interests in favor of the action taken.  This would include the state created danger exception to DeShaney, relied on by plaintiffs in the instant case.  See Matican, 524 F.3d at 157.

Matican, required a showing that the government intentionally created an actual particularized danger to a private individual for the purpose of causing harm.  524 F.3d at 157; Lombardi, 485 F.3d at 80 (and cases discussed therein).  In each of the cases reviewed in Lombardi, there was a particularized danger to a particular person which was intentionally enhanced by a government actor's wrongdoing.  Id.

Plaintiffs' Memorandum is a study in ignoring both the extreme caution explicitly advised by the Supreme Court in its substantive Due Process Clause cases and the line of Second Circuit cases delineating the contours of substantive Due Process.  Indeed, Matican, for example, is mentioned only in passing.  See Plaintiffs' Memorandum at 16.  The attempt to distinguish McClary is made near the end of the brief while cases from outside the Circuit are brought to the fore.  See Plaintiffs' Memorandum at 32 and 20-22.

Indeed, plaintiffs actually argue for limiting the "shocks the conscience" test to only those instances in which decisions are made hurriedly, that is, in "emergent circumstances."  Plaintiffs' Memorandum at 22.  The contention, which is at the core of plaintiffs' case, must be rejected.  First, the shocks the conscience test has a history stretching back over 50 years.  Lewis, 523 U.S. at 845-47 (tracing the history of substantive Due Process from Rochin v. California, 342 U.S. 165 (1952)).  Lewis, explained that the test limits the application of the doctrine to only the most egregious and abusive of executive actions, citing to Collins, 503 U.S. at 129.  Id. at 846 ("for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.").  There is no possible justification in the substantive Due Process Clause cases for the radical expansion of the doctrine proposed by plaintiffs.  The "shocks the conscience" test of arbitrary action is in keeping with the holdings of DeShaney, Lewis, and Collins, limiting substantive Due Process to only the most egregious cases of government oppression.  It is also in keeping with the admonition in Lombardi, that the

> substantive due process liability should not be allowed to inhibit or control policy decisions of government agencies, even if some decisions could be made to seem gravely erroneous in retrospect

485 F.3d at 84.

Second, as <u>Lombardi</u>, has noted, "hurried or unhurried" where there are competing considerations to be balanced by the government, the action of the government cannot be considered arbitrary egregious or conscience shocking, even when it has truly deplorable consequences such as the illness and death of 9/11 first responders in <u>Lombardi</u>.  485 F.3d at 83-84; <u>Benzman</u>, 523 F.3d at 127-28.

Plaintiffs' attempt to distinguish the Second Circuit's decision in <u>Lombardi</u>, are unavailing.  Plaintiffs' Memorandum at 30-31.  Plaintiffs' attempt to distinguish <u>Lombardi</u>, from the case at bar hinges on two factors: first their contention that while there were competing interests to be balanced by the government in <u>Lombardi</u>, no such interest are present here; and second that the decisions in <u>Lombardi</u> were "hurried."  Each fails.

First, plaintiffs admit that there are competing interests and, as they call it, competing "constituencies" to protect.  Plaintiffs' Memorandum at 2.  This does not prevent plaintiffs from attempting to distinguish <u>Lombardi</u>, by denying that there are any competing considerations to be balanced by the government in the instant case even though most of their memorandum is spent explaining that COBA's demands would not offend the substantive Due Process Clause rights of DOC's inmates.  Plaintiffs' Memorandum at 30-31.

COBA's task of showing a lack of competing interests to be balanced is made all the harder by the <u>Nunez</u> judgment, which is designed in part to protect the Due Process Clause rights of inmates and which plaintiffs candidly admit they are trying to vacate at least in part.  <u>See</u> Complaint, ¶ 79; Plaintiffs' Memorandum at 2.  Indeed, the aim of this suit is to place the DOC in a bind between the substantive Due Process Clause rights of inmates, as in <u>Nunez</u>, and the hypothetical substantive Due Process Clause rights of Correction Officers as envisaged by COBA.  COBA would have the Federal Court balance these competing interests under the guise

of competing substantive Due Process Clause rights.   Yet COBA simultaneously attempts to deny that there are competing interests that DOC is balancing in promulgating it policies. Plaintiffs' Memorandum at 30.   This balancing as the Supreme Court noted in Collins, is best accomplished by the State and local governments and not under the guise of substantive Due Process.   See Lombardi, 485 F.3d at 84 ("Collins also instructed that, at least in the § 1983 context, courts should operate from a 'presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces.'").   The Supreme Court in Collins, rejected the very same argument made by plaintiffs here - that the substantive component of the Due Process Clause harbors within it protection for government employees' occupational safety and health and that this hypothetical guarantee can be enforced through the Federal Courts:

> [t]he reasoning in those cases applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship.

Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992).

New York governs its employment relationship with public sector employees. See N.Y. Civil Service Law §§ 200, et seq. (the "Taylor Law" governing public sector labor relations in New York); N.Y.C. Admin. Code §§ 12-301, et seq. (the New York City Collective Bargaining Law governing public sector labor relations in New York City); N.Y. Labor Law § 27-a (Public Employee Safety and Health Act ("PESH") (generally governing occupational safety of public workers)); Capers v. Giuliani, 253 A.D.2d 630, 633 677 N.Y.S.2d 353. 356 (1st Dep't 1998), motion dismissed and app. denied, 93 N.Y.2d 868, 689 N.Y.S.2d 14, 711 N.E.2d 199 (1999) (no private right of action under PESH).   As noted in Defendants' Memorandum, COBA has filed labor relations claims before an independent adjudicative body created to

resolve claims of violation of public sector labor laws and those claims include one of safety impact on COBA's members.  Defendants' Memorandum at 8-9.  Thus, Collins, is directly on point here and requires dismissal of the Complaint.  It need only be added that the Collins plaintiff claimed intentional conduct rather than the "deliberate indifference" claim interposed here.  503 U.S. at 118 (the city had systematically and intentionally failed to provide the equipment and training required by a Texas statute … ").  Intent is far closer to the state of mind which must be shown to state a claim under the substantive component of the Due Process Clause.  See Lombardi, 85 F.3d at 74-75 ("only intent to cause harm arbitrarily can shock the conscience in a way that justifies constitutional liability.").

The difficulty of balancing the rights of inmates and the interests of staff in self-protection is amply illustrated by COBA's attack on the use of punitive segregation of younger inmates.  See Plaintiffs' Memorandum at 6-7.  In Ford v. Bender, 768 F.3d 15 (1st Cir. 2014), the First Circuit explored the contours of the use of punitive segregation.  In Ford, an inmate was released on bail while serving a term in punitive segregation for an assault on multiple staff members.  768 F.3d at 20-21.  Ford had received full procedural due process before being sent to punitive segregation.  Id. at 20.  Ford was rearrested for violating the terms of his release by sending heroin to a prisoner by mail and returned to prison and to punitive segregation.  Id. at 21.  The First Circuit held that qualified immunity would shield the individual defendants because it was not clearly established that returning a pre-trial inmate to punitive segregation when re-incarcerated violated the constitutional rights of the inmate, in particular, substantive due process rights.  Id. at 26-27.  The District Court in Ford had also ordered that Ford be able to participate in "transitional programs" while incarcerated.  Id. at 28.  The First Circuit did not reach the constitutional issues in Ford because Ford had been released from confinement. Id. at 28 n.9.

Ford illustrates the competing considerations applicable to the case at bar. Certainly, the staff injured by Ford had an interest in their own safety as did other staff members of the correctional facilities in which Ford was incarcerated, both before and after his release.  It is equally certain that an inmate has the right to be free from punishment while a pre-trial detainee, although that right does not prohibit disciplinary restriction on the already incarcerated inmate.  The balancing of these competing interests is left by the Constitution's Due Process Clause to the State and local governments.   Government must be provided with latitude necessary to operate correctional facilities on a day to day basis without the parameters of substantive due process turning the path of constitutionally permissible operations into a tight wire.  The competing interests must be balanced by the government but that does not mean that all of those interests must be converted to substantive due process mandates.   While COBA claims that it does not intend to do so, the necessary result of its argument is exactly such a conundrum.  See Plaintiffs' Memorandum at 2.

For yet another example of the competing considerations confronting DOC, if one were needed, plaintiffs complain that DOC is not using body scanner even though DOC possesses the equipment.  Plaintiffs' Memorandum at 11, plaintiffs' "Policy 8."  COBA does not mention, although it certainly is well aware of the fact, that the use of body scanners on inmates is prohibited by New York State law.  N.Y. Public Health L. § 3502.  Further, it is a matter of public record that there have been several proposed bills in the New York Legislature to specifically authorize the use of body scanners by correctional facilities.   See, e.g., A.6838/S.5337 introduced March 22, 2017, a copy of which is annexed hereto as Appendix "A," for the convenience of the Court[3]; A.8002/S.5828 introduced June 5, 2015.  COBA seeks to use

_____

[3] On LEXIS, this proposed bill can be found at 2017 Bill Text NY A.B. 6838.

the Due Process Clause to compel DOC to use body scanners without mentioning the countervailing consideration of the prohibition in New York State law.  This is one of the many conflicting interests and obligations confronting DOC these interests and obligations must be considered into creating operational policies, much as in <u>Lombardi</u>.  The competing interests, including the rights of inmates, the <u>Nunez</u>, consent judgment, and the constraints of numerous state laws, are too firmly implanted in the record to be gainsaid.  Plaintiffs' cannot erect a substantive Due Process Clause claim by denying the core of its own Complaint.

It must be noted that the "9 policies" challenged by plaintiffs' here run the gamut of correctional policies including:

- where inmates are housed (Policies 6 and 7);

- the use of force by staff (Policy 4);

- the training of staff (Policy 5);

- the equipment including body scanners to be used by staff (Policy 8);

- the discipline of inmates (Policies 2 and 3);

- the use of punitive segregation (Policies 1 and 2);

- the classification of inmates (Policy 6 and 7); and

- DOC recordkeeping (Policy 9).

Plaintiffs' Memorandum 5-12.

Simply put, the Complaint covers a myriad of areas of the operation of DOC facilities and if they are to be governed by the substantive Due Process Clause then it is difficult to see any aspect of the operations of correctional facilities which would fall outside the ambit of the Constitution.  This violates the narrow scope of substantive Due Process which is the bedrock of the doctrine.  <u>See</u> <u>Collins</u>, 503 U.S. at 125 ("As a general matter, the Court has always been

reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."); Lombardi, 485 F.3d at 79; Defendants' Memorandum at 10-11.

Nor can Lombardi, be distinguished by the plaintiff's second contention, that Lombardi, concerned only decisions made in a hurry.  Plaintiffs' Memorandum at 26, 30. Lombardi itself rejects this misconstruction.  Indeed, the Lombardi, plaintiffs alleged that

> that the defendants' deliberate indifference shocks the conscience because the defendants made their decisions in an "unhurried" fashion with "hours, days, weeks and even months to contemplate, deliberate, discuss and decide what to do and say about the health hazards posed to thousands of people who were coming onto and working at Ground Zero."

485 F.3d at 82.  Further, the Second Circuit in Lombardi, indicated that the time frame of decisionmaking was not of critical importance. 485 F.3d at 83 ("Hurried or unhurried, the defendants were subjected to the 'pull of competing obligations.'").[4]  If there are competing forces to balanced and if the choice of policies was made without a deliberate and malicious intent to harm then the substantive Due Process Clause does not provide a constitutional remedy for government employees injured in the course of their employment.  See Benzman v. Whitman, 523 F.3d 119, 127-28 (2d Cir. 2008).

Next, plaintiffs attempt to distinguish Lombardi by contending that deliberate misinformation circulated by the government always "shocks the conscience," in the substantive Due Process Clause sense.  Plaintiff's Memorandum at 29.  Yet Lombardi, concerned repeated EPA statements which were entirely inconsistent with facts known to EPA at the time.  See 485

---

[4] Further, the Lombardi plaintiff complained of intentional misinformation that continued for months.  See 485 F.3d at 77 (citing statements made as late as October 30th).

F.3d at 79-80.   Indeed, Lombardi, assumed for purposes of decision that there was sufficient causation connection between the government's statements and plaintiffs' exposure to toxic substances.   Id. at 81.   Thus, Lombardi, rejected the plaintiffs' contention in that case that deliberate misinformation creates a substantive Due Process Clause claim.

Lombardi   is instructive here and requires rejections of plaintiffs' contention concerning alleged misinformation.   Lombardi, examined a decision in Benzman v. Whitman, which had been decided on the same facts and claims as Lombardi; that is, the misinformation of the EPA causing injury to government employees.   Lombardi, 485 F.3d at 83-84; Benzman v. Whitman,04 Civ. 1888, 2006 U.S. Dist. LEXIS 4005, 2006 WL 250527 (S.D.N.Y. Feb. 2, 2006), aff'd in part rev'd in part, 523 F.3d 119 (2d Cir. 2008).   According to Lombardi, the District Court in Benzman had held that if the EPA had acted with knowledge of the falsity of its statements then the issuance of those statements "shocks the conscience" in the substantive due process sense.   485 F.3d at 84; Collins, 503 U.S. at 128; Lewis, 523 U.S. at 847.   The Second Circuit in Lombardi, rejected the District Court decision in Benzman, and held that misrepresentations do not always shock the conscience in the substantive Due process Clause sense.   The Lombardi, Court required that the competing interests at issue be considered:

> We disagree with this reasoning [of Benzman], which focuses too narrowly on the mission of a single agency without considering the other substantial government interests at stake

485 F.3d at 84 (footnote omitted); see Benzman, 523 F.3d at 128.   On appeal in Benzman, the Second Circuit reversed the District Court's substantive Due Process analysis and dismissed that claim because there were conflicting considerations and no intent to harm.   Benzman, 523 F.3d at 128 (also rejecting an attempt by plaintiffs' to distinguish Lombardi based on the need for "prompt" appearance at the site),   Thus, plaintiffs cannot plausibly assert that alleged

- 11 -

misrepresentations <u>always</u> shock the conscience or that if there were any misrepresentations they would shock the conscience in this case where there are considerable competing interests.[5]

Plaintiffs equate Correction Officers with inmates despite cases rejecting attempts to equate government employees with inmates.  Plaintiffs' Memorandum at 1-2.  The Supreme Court and the Second Circuit have repeatedly refused to equate individuals who are free, who can choose their environment and protect themselves, with inmates who are reliant on the government for the basic necessities of life and who are stripped of most of the physical protections free citizens take for granted.

As the Second Circuit put it in <u>Lombardi</u>,

> [t]he duty of a prison official in such a situation "does not ordinarily clash with other equally important governmental responsibilities," because no "substantial countervailing interest excuse[s] the State from making provision for the decent care and protection of those it locks up . . . ."

453 F.3d at 81 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320 (1986) and <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 851 (1998)).  This is an end to plaintiffs' argument that DOC employees can somehow be equated with inmates or that their substantive Due Process rights are to be equated.

In <u>Benzman</u>, the Second Circuit repeated the holding of <u>Lombardi</u>, dismissing a substantive Due Process claim where there were competing interests and no intent to harm. <u>Benzman</u>, 523 F.3d at 128.  <u>Benzman</u>, involved the residents of lower Manhattan and not, as in <u>Lombardi</u>, first responders, in the wake of 9/11.  Substantive Due Process claims were rejected in

---

[5] Indeed, such alleged misrepresentations would appear to be a matter for the <u>Nunez</u> case and not this one.  Further, there is no plausible line of causation linking these alleged misreporting of incidents with any injury to plaintiffs or any CO.  The alleged misrepresentation cannot be the source of a violation of substantive Due Process in the case at bar.

Benzman, even though the EPA was alleged to have acted with deliberate indifference  to the health of the residents of lower Manhattan.

In distinguishing inmates from government employees we do not denigrate the needs and risks of employees.  Collins did not diminish the value of the life of the sanitation worker whose life was lost in the course of employment.  503 U.S. at 117.  Nor did the Second Circuit in McClary, devalue the life of the government worker killed while employed.  786 F.2d at 84.  Lombardi, did not hold the lives of 9/11 workers lightly.  Rather, in each case the Court held that the substantive component of the Due Process Clause does not provide a remedy for every governmental worker injured while working.  This is especially true here where the job of Correction Officer is inherently dangerous.  It is also in keeping with the very narrow scope of the substantive component of the Due Process Clause described in Defendants' Memorandum and above.

Plaintiffs' attempt to distinguish McClary, is ineffective.  Plaintiffs' Memorandum at 32.[6]  Perhaps needless to say, the Second Circuit did not find, as plaintiffs contend, that a government employee was not a "person" under the Due Process Clause.  See id. The Circuit in McClary, began its analysis by stating that "[i]t thus may fairly be said that a person has a substantive due process right not to be deprived of life."  786 F.2d at 88.  The Circuit then proceeded to the analysis of the substantive Due Process claim.  Id.  The McClary,

---

[6] Plaintiffs engage in a deliberate misstatement of defendants' brief by contending that "[c]ontrary to Defendants' assertion, the McClary Court did not make a blanket determination that there can be no substantive due process violations where the government acts as an employer."  Plaintiffs' Memorandum at 32.  Defendants have never made such a contention let alone made it about McClary.  Rather, where, as here there are competing interests and difficult policy choices, employees do not have a substantive Due Process Clause right to compel the selection of particular governmental policies.  The Constitution affords the executive branch of State and local governments discretion in making these difficult choices.  Indeed, such discretion must in some ways be basic to a system of democracy.

Court reasoned that the Due Process Clause's substantive component was meant to prevent the government from using governmental powers as an instrument of oppression.  Id.  The Second Circuit continued its analysis by noting, as have many other Courts over the years, that when an individual is in the custody and control of the government the opportunity for, and risk of, oppression increases substantially.   The Constitution's Due Process Clause provides more protection for inmates than for free private citizens even if those citizens are government employees.   Therefore, McClary, continued, many of the substantive Due Process cases were found in the area of the protection of inmates.

However, the Circuit in McClary, also noted that the non-incarcerated were also protected by substantive Due Process where "the government conduct is 'sufficiently severe, sufficiently disproportionate to the need presented and so deliberate and unjustified a misuse of [authority] as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights.'" 786 F.2d at 88 (quoting Shillingford v. Holmes, 634 F.2d 263, 266 (5th Cir. 1981)).  The Circuit concluded that

> Where the government's control is lessened, so is its duty, and its failings are less likely be of constitutional proportions cognizable under section 1983.

Id. at 88-89.  The McClary, Court then noted that employees of the government, unlike inmates, are not in the custody of the government and they are not under the government's direct physical control.  Id.

As with any person not under the government's direct physical control, the standard for alleging a violation of substantive Due Process is consequently more difficult.  See Lombardi, 485 F.3d at 81 (discussing state created danger cases holding that "'the harm ultimately caused was foreseeable and fairly direct'" but declining to decide the causation issue)

- 14 -

(quoting Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006), which in turn quoted Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996)).

Oddly, plaintiffs' rely in part on the District Court's decision in Briscoe v. Potter, 355 F. Supp. 2d 30 (D.D.C. 2004), aff'd, 171 F. App'x 850 (D.C. Cir. 2005).   Plaintiffs' Memorandum at 14.   However, Plaintiffs' Memorandum fails to note that Briscoe was affirmed by the D.C. Circuit or that the case was distinguished by the Second Circuit in Lombardi. Lombardi, 485 F.3d at 83.   Lombardi, noted that the case had been decided on qualified immunity grounds and that the Circuit found it need not reach the correctness of the District Court's resolution of the substantive Due Process issues of Briscoe.   Id.

Nor is there the direct causation necessary to a substantive Due Process Clause claim and which plaintiffs blithely and conclusorily allege in their papers.   See Lombardi, 485 F.3d 80.   The Court is not required to accept a plaintiff's conclusory allegations when deciding a motion to dismiss.   Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).   In this case, plaintiffs do not suggest any facts showing direct causation but, rather, simply leap to the conclusion by selecting their individual plaintiffs.   See Plaintiffs' Memorandum at 34.   The 9 policies which plaintiffs attack are broad policies applicable to DOC at large and a broad spectrum of DOC operations. They are not directed at a particular person, employee, or inmate.   Nor is there any hint of an allegation that these policies were selected because they would harm an individual (be it inmate or staff) or even for their alleged tendency to increase risks associated with the job of Correction Officer.   Nor is there evidence that if these policies were not enacted the individual plaintiffs would have been unharmed.   There is no evidence of anything that might be considered "direct" causation in the substantive Due Process sense.   Lombardi, 485 F.3d at 80 (quoting Martinez v. California, 444 U.S. 277, 281 (1980)).   The job of Correction Officer entails physical danger and

these policies may, in the long term, decrease violence in DOC facilities. That is certainly the goal of the Nunez, judgment. That these policies may sometimes conflict with the goal of increasing safety of Correction Officers may be true but that does not compel the recognition of a substantive Due Process Clause right to different policies to be dictated by the union through Federal Court actions. See Kaucher v. County of Bucks, 455 F.3d 418, 434-35 (3d Cir. 2006)(citing Wallace v. Adkins, 115 F.3d 427, 430 (7th Cir. 1997)(which rejected a suit arising from an inmate assault and the increased risk created by the assigning of the plaintiff to an area in which the assaulting inmate was housed, "these are risks of the guard's job").

In Defendants Memorandum, we pointed out the long line of cases declining to expand the substantive Due Process Clause's protection against injury by the government. It stretched from the refusal in Paul v. Davis, to convert the Fourteenth Amendment's Due Process Clause into a "font of tort law," Paul v. Davis, 424 U.S. 693, 701 (1976), and the similar statement in DeShaney, 489 U.S. at 202, that the Due Process Clause does not "transform every tort committed by a state actor into a constitutional violation," to the admonition in Collins, 503 U.S. at 125, that the Supreme Court is generally wary of expanding substantive Due Process because of a lack of "guideposts" in this "unchartered area," to the flat limitation in Lombardi, that

> [g]overnment action resulting in bodily harm is not a substantive due process violation unless 'the government action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

485 F.3d at 79 (citations to cases quoted omitted). These cases are all designed to, and do, limit the substantive Due Process Clause to only the most egregious and outrageous conduct unsupported by any legitimate governmental interests.

- 16 -

Plaintiffs in the case at bar do not like DOC's policies and do not believe that they will in the long run result in safer and better DOC correctional facilities.  But the substantive component of the Due Process Clause does not compel DOC to accept the union's opinions and prognostications.  Nor does it require to the DOC to confine its policies to the wishes of the union or to those policies the union believes wise.  COBA has one "constituency" its members.  DOC must balance and consider many interests and groups.  Where, as here, no intent to harm is alleged, the selection of policies emerging from that balancing does not "shock the conscience," is not a violation of the substantive component of the Due Process Clause and, therefore, the Complaint must be dismissed.[7]

---

[7] Plaintiffs seek leave to replead even while contending that their Complaint is not fatally defective.  Plaintiffs' Memorandum at 35.  Defendants doubt that there are any fact allegations that can remedy the underlying fatal flaws of their theory of the case.  In any event, defendants cannot comment on a prospective amended complaint before the Court has ruled and before plaintiffs have proffered their proposed amendments other than to say that the proposal must somehow (and we know not how) fill the gaping voids which fatally infect the original complaint.

## CONCLUSION

**WHEREFORE,** defendants respectfully request that the complaint be dismissed in its entirety, that the request for relief be denied in all respects, that judgment be entered for defendants and that defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:          New York, New York
                September 15, 2017

                                        **ZACHARY W. CARTER**
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for Defendants
                                        100 Church Street, Room 2-187
                                        New York, New York 10007-2601
                                        (212) 356-2628
                                        aschlesi@law.nyc.gov


                                By:     /s/   *Alan Maer Schlesinger*
                                        _____
                                        Alan M. Schlesinger
                                        Assistant Corporation Counsel
                                        AS-2673

# APPENDIX A

## *2017 Bill Text NY A.B. 6838*

Introduced, March 22, 2017

**Reporter**
2017 Bill Text NY A.B. 6838

## Notice

**Added:** Text highlighted in green

**THE STATE OF NEW YORK BILL TEXT > NEW YORK 240TH ANNUAL LEGISLATIVE SESSION > ASSEMBLY BILL 6838**

## Synopsis

AN ACT to amend the public health law, in relation to body imaging scanning equipment; and providing for the repeal of such provisions upon expiration thereof

## Text

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. *Section 3502 of the public health law is amended* by adding a new subdivision 6 to read as follows:

6.

(A)

(I) NOTWITHSTANDING THE PROVISIONS OF THIS SECTION OR ANY OTHER PROVISION OF LAW, RULE OR REGULATION TO THE CONTRARY, LICENSED PRACTITIONERS, PERSONS LICENSED UNDER THIS ARTICLE AND UNLICENSED PERSONNEL EMPLOYED AT A LOCAL CORRECTIONAL FACILITY MAY, IN A MANNER PERMITTED BY THE REGULATIONS PROMULGATED PURSUANT TO THIS SUBDIVISION, UTILIZE BODY IMAGING SCANNING EQUIPMENT THAT APPLIES IONIZING RADIATION TO HUMANS FOR PURPOSES OF SCREENING INMATES COMMITTED TO SUCH FACILITY, IN CONNECTION WITH THE IMPLEMENTATION OF SUCH FACILITY'S SECURITY PROGRAM.

(II) THE UTILIZATION OF SUCH BODY IMAGING SCANNING EQUIPMENT SHALL BE IN ACCORDANCE WITH REGULATIONS PROMULGATED BY THE DEPARTMENT, OR IN CITIES HAVING A POPULATION OF TWO MILLION OR MORE, SUCH UTILIZATION SHALL BE IN ACCORDANCE WITH

2017 Bill Text NY A.B. 6838

REGULATIONS PROMULGATED BY THE NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE.

(B) PRIOR TO ESTABLISHING, MAINTAINING OR OPERATING IN A LOCAL CORRECTIONAL FACILITY ANY BODY IMAGING SCANNING EQUIPMENT, THE CHIEF ADMINISTRATIVE OFFICER OF THE FACILITY SHALL ENSURE THAT SUCH FACILITY IS IN COMPLIANCE WITH THE REGULATIONS PROMULGATED PURSUANT TO THIS SUBDIVISION AND OTHERWISE APPLICABLE REQUIREMENTS FOR THE INSTALLATION, REGISTRATION, MAINTENANCE, OPERATION AND INSPECTION OF BODY IMAGING SCANNING EQUIPMENT.

(C) THE REGULATIONS PROMULGATED PURSUANT TO SUBPARAGRAPH (II) OF PARAGRAPH (A) OF THIS SUBDIVISION SHALL INCLUDE, BUT NOT BE LIMITED TO:

(I) A REQUIREMENT THAT PRIOR TO OPERATING BODY IMAGING SCANNING EQUIPMENT, UNLICENSED PERSONNEL EMPLOYED AT LOCAL CORRECTIONAL FACILITIES SHALL HAVE SUCCESSFULLY COMPLETED A TRAINING COURSE APPROVED BY THE DEPARTMENT, OR IN CITIES OF TWO MILLION OR MORE, APPROVED BY THE NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, AND THAT SUCH PERSONNEL RECEIVE ADDITIONAL TRAINING ON AN ANNUAL BASIS;

(II) LIMITATIONS ON EXPOSURE WHICH SHALL BE NO MORE THAN FIFTY PERCENT OF THE ANNUAL EXPOSURE LIMITS FOR NON-RADIATION WORKERS AS SPECIFIED BY APPLICABLE REGULATIONS, EXCEPT THAT INMATES UNDER THE AGE OF EIGHTEEN SHALL NOT BE SUBJECT TO MORE THAN FIVE PERCENT OF SUCH EXPOSURE LIMITS, AND PREGNANT WOMEN SHALL NOT BE SUBJECT TO SUCH SCANNING AT ANY TIME. PROCEDURES FOR IDENTIFYING PREGNANT WOMEN SHALL BE SET FORTH IN THE REGULATIONS;

(III) REGISTRATION WITH THE DEPARTMENT OF EACH BODY IMAGING SCANNING MACHINE PURCHASED OR INSTALLED AT A LOCAL CORRECTIONAL FACILITY;

(IV) INSPECTION AND REGULAR REVIEWS OF THE USE OF BODY IMAGING SCANNING EQUIPMENT BY THE DEPARTMENT OR THE NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, AS APPLICABLE; AND

(V) A REQUIREMENT THAT RECORDS BE KEPT REGARDING EACH USE OF BODY IMAGING SCANNING EQUIPMENT BY THE LOCAL CORRECTIONAL FACILITY.

(D) FOR THE PURPOSE OF THIS SUBDIVISION, "BODY IMAGING SCANNING EQUIPMENT" OR "EQUIPMENT" MEANS EQUIPMENT THAT UTILIZES A LOW DOSE OF IONIZING RADIATION TO PRODUCE AN ANATOMICAL IMAGE CAPABLE OF DETECTING OBJECTS PLACED ON, ATTACHED TO OR SECRETED WITHIN A PERSON'S BODY.

(E) FOR THE PURPOSES OF THIS SUBDIVISION, "LOCAL CORRECTIONAL FACILITY" SHALL HAVE THE SAME MEANING AS FOUND IN SUBDIVISION SIXTEEN OF SECTION TWO OF THE CORRECTION LAW.

(F) ANY LOCAL GOVERNMENT AGENCY THAT UTILIZES BODY IMAGING SCANNING EQUIPMENT IN A LOCAL CORRECTIONAL FACILITY UNDER ITS JURISDICTION SHALL SUBMIT AN ANNUAL REPORT TO THE DEPARTMENT, THE SPEAKER OF THE ASSEMBLY, AND THE TEMPORARY PRESIDENT OF THE SENATE. SUCH REPORT SHALL BE SUBMITTED WITHIN EIGHTEEN MONTHS AFTER THE INITIAL DATE OF REGISTRATION OF SUCH EQUIPMENT WITH THE DEPARTMENT, AND ANNUALLY THEREAFTER, AND SHALL CONTAIN THE FOLLOWING INFORMATION AS TO EACH SUCH FACILITY:

(I) THE NUMBER OF TIMES THE EQUIPMENT WAS USED ON INMATES UPON INTAKE, AFTER VISITS, AND UPON THE SUSPICION OF CONTRABAND, AS WELL AS ANY OTHER EVENT THAT TRIGGERS THE USE OF SUCH EQUIPMENT;

(II) THE AVERAGE, MEDIAN, AND HIGHEST NUMBER OF TIMES THE EQUIPMENT WAS USED ON ANY INMATE, WITH CORRESPONDING EXPOSURE LEVELS;

(III) THE NUMBER OF TIMES THE USE OF THE EQUIPMENT DETECTED THE PRESENCE OF DRUG CONTRABAND, WEAPON CONTRABAND, AND ANY OTHER ILLEGAL OR IMPERMISSIBLE OBJECT OR SUBSTANCE;

(IV) INCIDENTS OR ANY INJURIES OR ILLNESS RESULTING FROM THE USE OF SUCH EQUIPMENT OR REPORTED BY PERSONS SCANNED BY SUCH EQUIPMENT; AND

(V) ANY OTHER INFORMATION THE DEPARTMENT MAY REASONABLY REQUIRE.

Section 2. This act shall take effect on the one hundred twentieth day after it shall have become a law; provided, however, that, effective immediately, the addition, amendment, and/or repeal of any rules and regulations necessary to implement the provisions of this act on its effective date are directed to be completed on or before such effective date; and provided further, that this act shall expire and be deemed repealed five years after such effective date. Weprin D

## History

STATE OF NEW YORK 6838 2017-2018 REGULAR SESSIONS IN ASSEMBLY MARCH 22, 2017 INTRODUCED BY M. OF A. WEPRIN, GOTTFRIED -- READ ONCE AND REFERRED TO THE COMMITTEE ON HEALTH

**Load-Date:** March 23, 2017

THE STATE OF NEW YORK BILL TEXT
Copyright ©2017 LexisNexis. All rights reserved.

End of Document