UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
CORRECTION OFFICERS' BENEVOLENT ASSOCIATION,
INC., ANTHONY ROMANO, individually
and on behalf of all others similarly situated, BRYAN ASHENDORF
individually and on behalf of all others similarly situated,
and JOHN and JANE DOES 1 – 2,000,

|  |  |
|---|---|
| | **DECLARATION OF CYNTHIA DEVASIA, ESQ. IN SUPPORT OF** |
| **PLAINTIFFS'** | |
| Plaintiffs, | **MOTION SEEKING LEAVE TO FILE A** |
| against- | **FIRST AMENDED** |
| THE CITY OF NEW YORK, MAYOR BILL DE BLASIO, | **COMPLAINT** |
| NEW YORK CITY DEPARTMENT OF CORRECTION, and | |
| COMMISSIONER CYNTHIA BRANN,[1] | Case No. 17-CV-2899 (LTS) |
| Defendants. | |

-------------------------------------------------------------------------------x

**CYNTHIA DEVASIA, ESQ.,** declares under penalty of perjury pursuant to 28 U.S.C

§1746 as follows:

1.  I am an associate with the law firm of Koehler & Isaacs, LLP, which represents

    Plaintiffs CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, INC.

    ("COBA"), on behalf of its members, ANTHONY ROMANO ("Plaintiff

    Romano"), individually and on behalf of all others similarly situated, BRYAN

    ASHENDORF ("Plaintiff Ashendorf"), individually and on behalf of all others

    similarly situated, (collectively the "Individual Plaintiffs"), and Plaintiffs JOHN

    and JANE DOES 1 – 2,000 (all parties collectively "Plaintiffs") in the above

    captioned action.

---

[1] By Opinion and Order dated May 30, 2018, which dismissed the Original Complaint in this action in part, this Court substituted Defendant Commissioner Joseph Ponte with current Department of Correction Commissioner Cynthia Brann.

2.  I submit this declaration in support of Plaintiffs' Motion for Leave to File a First Amended and Supplemented Complaint ("FASC") pursuant to FRCP Rule 15.

3.  Plaintiff COBA filed the Original Complaint ("OC") in this action on April 24, 2017, pursuant to 42 U.S.C. § 1983 along with individual Plaintiffs Tiffani Dublin, Mathew Hines, Francis Castro and Anthony Romano. The lawsuit alleged that Defendant the City of New York, Mayor Bill de Blasio, the New York City Department of Correction ("DOC"), and then-Defendant and DOC Commissioner, Joseph Ponte (collectively "Defendants") violated Correction Officers' right to be free from state created or increased dangers[2] as guaranteed under the Fourteenth Amendment of the U.S. Constitution. That is, the right to be free from governmental policies that create or increase a substantial and imminent risk of serious bodily harm or death from third parties like inmates.

4.  The OC alleged that Defendants, with deliberate indifference to the safety and lives of Correction Officers, implemented nine (9) policies that, in their totality, increased the risk of serious bodily harm and even death to officers.   The challenged policies were: 1) eliminating punitive segregation for Young Adult Inmates (ages 18-21) and replacing it with non-punitive alternative programs for them and Adolescent Inmates (ages 16-17); 2) limiting and eliminating punitive segregation policies for Adult Inmates (ages 22 and above); 3) failure to utilize pre-hearing detention against assaultive inmates; 4) haphazard implementation of a restrictive Use of Force Policy; 5)  failure to provide overall training and re-training for officers and adequate training Facilities; 6) housing highly assaultive inmates in West Facility which is designed for housing communicable disease

---

[2] Reference to "state created danger" also includes reference to "state increased danger" herein.

inmates; 7) housing inmates of like gang affiliation together thus allowing them to act concertedly against correction officers; 8) failing to properly equip officers against attacks from highly assaultive inmates; and 9) misreporting or underreporting violence in the jails against officers. See OC, Docket No. 1.

5. In support of their claims, Plaintiffs asserted detailed factual allegations, including numerous exhibits containing reports, statistics and examples of inmate-on-officer assaults that demonstrated an increase in: 1) violence against Correction Officers; and 2) likelihood of serious bodily harm or even death as a result of Defendants' actions and inactions.

6. On or about July 30, 2017, Defendants filed a motion to dismiss the OC.

7. Plaintiffs filed their opposition on or about August 18, 2017, followed by Defendants' Reply filed on or about September 15, 2017.

8. By Opinion and Order dated May 30, 2018 ("May 2018 Opinion & Order"), this Court dismissed Plaintiffs' claims **without prejudice** and allowed Plaintiffs an opportunity to amend the Complaint. See attached hereto as Exhibit A, a true and correct copy of the May 2018 Opinion & Order.

9. In sum and substance, the Court held that the OC failed to state claims upon which relief may be granted with respect to the first eight challenged policies. With respect to the ninth challenged policy, Defendants' deliberate underreporting and misreporting of violence in the jails, the Court held that the OC lacked Factual allegations "showing how such false reporting increase the CO's exposure to physical harm" or "allegations tying the allegedly false reports of violence against COs or among inmates to any of the alleged injuries to a CO." As the OC

did not allege how Defendants' practice of underreporting and misreporting jail violence increased the risk of harm and/or caused CO injuries, the court did not reach the question of whether such alleged conduct shocks the conscience. Id.

10. The Court ordered that any motion to amend the OC must be filed by July 2, 2018, which deadline was subsequently extended twice by agreement of the parties and with Court approval, ultimately to September 7, 2018.  See Docket Nos.52-55.

11. It should be noted that no discovery or any action besides the briefing of the motion to dismiss in the nearly fifteen months since the OC's filing.

12. Plaintiffs now seek leave to file an amended and supplemental complaint alleging additional facts in accordance with the May 2018 Opinion & Order. Attached hereto as Exhibit B is a true and correct copy of Plaintiffs' proposed FASC. The draft has been "blacklined" to the extent that alterations (even to those topics previously referenced in the OC) are underlined. Given the nature of these and the various issues of fact raised, Defendants should, at minimum, be entitled to pursue discovery into these matters.

13. The proposed FASC, substitutes certain individual Plaintiffs. Plaintiffs Dublin, Hines and Castro have been substituted for new Plaintiff Ashendorf.

14. The proposed FASC, in sum and substance, maintains the same allegations against, essentially, the same defendants as asserted in the OC, this time on the basis of Defendants' policy/practice of underreporting and misreporting jail violence. To that end, the FASC alleges a significant amount of new facts and exhibits in support of their claims -- all of which provide additional and

supplemental facts that further amplify and develop the narrative of the original claim as well as cure the OC's deficiencies identified in the Court's May 2018 Opinion & Order.

15. Plaintiffs' FASC describes in great detail how in recent years Defendants have been under intense public scrutiny for their mismanagement of the City Jails. *See* FASC, at ¶¶ 32-44. Defendants have engaged in a Reform Agenda repealing a number of long standing institutional practices and implementing new protocols all purported to reduce jail violence and increase safety for inmates and staff. *Id.*

16. Defendants claim their reforms have reduced inmate-inmate and inmate-staff jail violence, however their reforms have empowered the most violent inmates, reduced accountability for their misconduct, and increased the likelihood of substantial bodily harm or even death to Correction Officers. *Id.* at para 45-46.

17. The proposed FASC references and/or includes a number of reports from various stakeholders and oversight agencies confirming that Defendants' Reform Agenda has increased the risk of harm to Correction Officers. *Id.* ¶¶ 47 – 73. These exhibits include Reports from the State Commission of Correction, Federal Monitor, Plaintiff COBA and various news outlets. *Id.* Notably, the City's own Comptroller's Office and Mayor's Management Report confirms violence has increased in the Jails. *Id.* Commensurate with this increase in an increase in the number of personal injury law suits filed by inmates in connection with jail violence and workers compensation claims filed by staff.  Various examples are also given of some of the more heinous attacks on Correction Officers since the filing of the OC in April 2017. *Id.*

18. The FASC alleges that in an effort to demonstrate their reform policies are working, Defendants have engaged in a policy, practice and/or custom[3] of concealing or covering up the increased risk of harm and the true nature, magnitude and frequency of the on-going violence occurring within the City Jails which has, in turn, increased the dangers faced by Correction Officers in the workplace far beyond what is "typical" for this job. Id. at ¶¶ 72-134.

19. Specifically, Defendants' "concealment practices" include non-reporting, underreporting or misreporting of violence, including criminal acts, against other inmates or Correction Officers, downgrading violence incidents, and failing to hold inmates accountable for their violent actions. Id.

20. The FASC details, at length, Defendants' long standing and well documented history of this cover-up including a New York Times investigation that confirmed Defendants routine falsify violence statistics. Id.

21. The FASC provides specific details about how Defendants knowingly and intentionally non-report, underreport, misreport and downgrade violence, including acts that otherwise constitute crimes. Id.

22. Defendants cover-up the violence occurring in the Jails by downgrading and misclassifying incidents involving clear assaults on staff or other inmates as "log book entries" or other designations that fail to recognize these incidents as the crimes they are. "Log book entry" is an administrative designation which is not reported or investigated like other more seriously labelled incidents. Id.

23. Astoundingly, and inexplicably, Defendants accurately report assaults by inmates

---

[3] The use of the word "practice" and its plural also includes the terms "custom and/or policy" and their respective plurals.

on medical staff as assaults, yet regularly fail to report inmate-officer assaults. This is a clear violation of their legal obligations to report crimes occurring within its Jails (i.e. in accordance with CompStat). Id.

24. In addition to Plaintiff COBA, the BOC, Federal Monitor and several news outlets have independently confirmed Defendants' deceptive misreporting and downgrading. Id.

25. The FASC further elaborates on misleading reporting practices used by Defendants to cover-up the violence in the Jails:

- misreporting slashings.

- misreporting the incidences of inmate splashings (of known and unknown liquids) and spittings.

- nonreporting violence incidents or leaving out key information related to an incident's severity.

Id.

26. The FASC details how Defendants cover-up the violence in the Jails by failing to hold inmates accountable for their violent actions by failing to: a) allow violence complaints/infractions; b) investigate infractions; and c) follow their own policies imposing inmate discipline. Id. at ¶¶ 135-147.

27. The FASC also details how the foregoing concealment practices are the direct and proximate cause of the increased risk of harm to Correction Officers and the injuries they have sustained. Id.

28. Specifically, Defendants' concealment practices increase the danger faced by Correction Officers because information regarding an inmate's violent

institutional conduct directly impinges on inmate classification, inmate housing, whether or not inmate discipline is imposed, the degree of inmate discipline that is imposed, and the custodial practices and management strategies applied to inmates. Id.

29. Defendants' practices allow violent inmates to be classified as far less likely to cause injury and to be intentionally classified in ways that require less restrictive security measures, less restrictive observation practices, and housing decisions which in turn expose staff and other inmates to unprecedented levels of violent victimization. Id.

30. Unreported or inaccurately reported violence incidents result in a failure to impose necessary inmate discipline or the correct type of therapeutic or behavioral programming. Id.

31. Further, unreported or inaccurately reported violence incidents results in failure to provide the additional equipment, staffing, and financial resources that are needed to ensure the safety and security of the jails. Conversely, unreported or inaccurately reported violence incidents, results in a reduction of necessary safety measures, like use of OC spray. Id.

32. Accordingly, when the true level of violence is masked and inmates are not subject to the appropriate and necessary institutional measures, Correction Officers suffer more violence and injury while being fed a false sense of security, are being exposed to a greater level of danger, and are getting injured. Id.

33. By way of example, the FASC illustrates how by Defendants' concealment practices caused injury Correction Officers, Plaintiff Anthony Romano, Plaintiff

Bryan Ashendorf, Malik Medina, and Corey Hughes were each victimized. Id. at ¶¶ 148-165.

34. In each of the instances, violent inmates attacked a correction officer, the incident was misreported as a "log book entry", the Defendants failed to investigate or treat these incidents with the severity they deserved, failed to impose disciplinary or remedial measures on the inmates and failed to alter the inmates' classification or housing status. As a result, the inmate went on to attack the Correction Officer. In Plaintiff Romano's case, the same inmate attacked him twice within a span of four days. Id.

35. The FASC alleges that Defendants' actions exhibit an intent to harm Plaintiffs in asmusch as they have by design, intentionally engaged in the afore-described concealment practices and knew that covering up the true nature, magnitude and frequency of violence occurring in the Jails would result in misclassification and an increased likelihood of injuring, and actually did injure, Plaintiffs.

36. Alternatively, the FASC alleges that Defendants' actions exhibit a deliberate indifference to the safety of COBA members and the individual Plaintiffs inasmuch as they knew and disregarded the risk of harm from engaging in the afore-described concealment practices to cover up the true nature, magnitude and frequency of violence occurring in the Jails violence, and disregarded that risk.

37. Based on the same transactions and occurrences set forth in the OC, further amplified by the new facts described above in the FASC, Plaintiffs also add two pendent claims against the same Defendants under New York State law alleging negligence in breach of a special duty.

38. In sum and substance, these claims allege that by engaging in the described concealment practices, Defendants have breached their duty to use due care and maintain a safe and secure environment, where workplace hazards are minimized for Plaintiffs.  This special duty arises from both Defendants' assurances of safety made under their Reform Agenda and the dictates of the Workplace Violence Act. Specifically, Defendants' have assumed a special duty through their mission statement, numerous public statements and proclamations, all of which state their intent, desire and goal to ensure staff safety especially in connection with their Reform Agenda. A statutory special duty is also imposed through the Workplace Violence Act, which requires that Defendants observe certain occupational safety and health standards and that Defendants minimize the hazards of workplace violence to public employees.

39. I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 7, 2018
        New York, New York

                           KOEHLER & ISAACS LLP
                           *Counsel for Plaintiffs*

                     By: _____
                          Cynthia Devasia, Esq. (CD0320)
                          61 Broadway - 25th Floor
                          New York, New York 10006
                          Office: (917) 551-1325