UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
CORRECTION OFFICERS' BENEVOLENT ASSOCIATION,
INC., ANTHONY ROMANO, individually
and on behalf of all others similarly situated, BRYAN ASHENDORF
individually and on behalf of all others similarly situated,
and JOHN and JANE DOES 1 – 2,000,

                                        Plaintiffs,

                    -against-                                    Case No. 17-CV-2899  (LTS)

THE CITY OF NEW YORK, MAYOR BILL DE BLASIO,
NEW YORK CITY DEPARTMENT OF CORRECTION, and
COMMISSIONER CYNTHIA BRANN,[1]

                                        Defendants.
--------------------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
LEAVE TO FILE AN AMENDED AND SUPPLEMENTAL COMPLAINT**

---

[1] By Opinion and Order dated May 30, 2018, which dismissed the Original Complaint in this action without prejudice, this Court substituted Defendant Commissioner Joseph Ponte with current Department of Correction Commissioner Cynthia Brann.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT.................................................................................................................. 2

   PLAINTIFFS HAVE MET THE STANDARD FOR OBTAINING LEAVE TO..................... 2

   FILE AN AMENDED COMPLAINT UNDER RULE 15 ..................................................... 2

     A.    The Proposed Amendments Further the Interests of Justice and Are Consistent with
the Court's Order. ............................................................................................................ 3

     B.    The Proposed Amendments Will Not Unduly Prejudice the Defendants. ................. 4

     C.    The Proposed Amendment Is Not Unduly Delayed. ................................................. 5

     D.    The Amendment Is Not Sought in Bad Faith or with a Dilatory Motive. .................... 5

     E.    The Proposed Amendment Is Not Futile. ................................................................... 6

         1. The FASC Sets Forth a Valid Claim For a Violation of Substantive Due Process
Under the 14th Amendment................................................................................ 7

            a. The FASC Cures the OC's Deficiencies and Demonstrates How
Defendants' Concealment Practices Have Increased the Risk of Harm To
and/or Injured Plaintiffs..............................................................................8

            b. The FASC Demonstrates How Defendants' Concealment Practices
Constitutes Conduct that Shocks the Conscience....................................9

         2.  The FASC Sets Forth a Valid Claim for Negligence, Breach of Special Duty
Under New York State Law.................................................................................12

CONCLUSION.................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725–26 (2d Cir. 2010). ...................................................................................................................... 4

Benzman v. Whitman, 523 F.3d 119 (2d Cir. 2008)................................................. 10

Conley v. Gibson, 355 U.S. 41(1957)....................................................................... 6

Cuffy v. City of New York, 69 N.Y.2d 255 (1987)..................................................... 12

DeWan v. Seideman, No. 17-cv-1315 (ER), 2017 WL 6048816, at *5 (S.D.N.Y. Dec. 5, 2017). ...................................................................................................................... 4,7

Foman v. Davis, 371 U.S. 178, 182 (1962) .............................................................. 3

Green v. Wolf Corp., 50 F.R.D. 220, 223 (S.D.N.Y. 1970) ...................................... 5

Kowaleski v. Lewis, 643 F. Supp. 2d 259 (N.D.N.Y. 2009) ...................................... 10

Lesperance v. Cty. of St. Lawrence, No. 7:10-CV-01273, 2011 WL 3651161 (N.D.N.Y. Aug. 18, 2011) ...................................................................................................................... 11

Lombardi v. Whitman, 485 F.3d 73, 80 (2d Cir. 2007).............................................. 11

Middle Atl. Utils. Co. v. S.M.W. Dev. Corp., 392 F.2d 380 (2d Cir.1968) ................ 5

Okin v. Village of Cornwall–on–Hudson Police Dep't., 577 F.3d 415, 427-28 (2d Cir. 2009)...10

Pangburn v. Culbertson, 200 F.3d 65  (2d Cir. 1999)............................................... 6

Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114 (2d Cir. 2012)............ 6

Pasternak v. Shrader, 863 F.3d 162 (2d Cir. 2017).................................................. 5

Pena v. DePrisco, 432 F.3d 98  (2d Cir. 2005). ........................................... 7, 9, 11

Presbyterian Church Of Sudan v. Talisman Energy, Inc., 582 F.3d 244  (2d Cir. 2009).............. 5

Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119  (2d Cir. 1991)............................... 3,6

Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647 (2d Cir. 1987) ................ 3,5

Sacramento v. Lewis, 523 U.S. 833 (1998) ........................................... 7, 9, 10, 11

Slayton v. Am. Express Co., 460 F.3d 215 (2d Cir. 2006).......................................... 3

State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843 (2d Cir. 1981) ...................... 3, 4

Zeigan v. Blue Cross and Blue Shield, 607 F.Supp. 1434 (S.D.N.Y.1985) ................ 5

**Other Authorities**

Const. Amed. Fourteen................................................................................................. 1

Fed. R. Civ. P. 15 (a)(2)............................................................................................ 2

Fed. R. Civ. P. 15 (c). ............................................................................................... 2

Fed. R. Civ. P. 15 (d). ............................................................................................... 2

## INTRODUCTION

Plaintiffs CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, INC. ("COBA"), on behalf of its members, ANTHONY ROMANO ("Plaintiff Romano"), individually and on behalf of all others similarly situated, BRYAN ASHENDORF ("Plaintiff Ashendorf"), individually and on behalf of all others similarly situated, (collectively the "Individual Plaintiffs"), and Plaintiffs  JOHN and JANE DOES 1 – 2,000 (all parties collectively "Plaintiffs"), by their attorneys, Koehler & Isaacs LLP, respectfully seek leave to file a First Amended and Supplemental Complaint ("FASC"),  a copy of which is attached as Exhibit B of the Declaration of Cynthia Devasia, Esq., in accordance with the Court's Order dated May 30, 2018 ("May 2018 Order"), which is also attached as Exhibit A to the Declaration.

The Original Complaint ("OC"), alleged that Defendants violated Plaintiffs' 14th Amendment substantive due process constitutional right to be free from state created or increased dangers by adopting nine different policies/practices that created or increased the risk of  workplace danger within the New York City Jails ("City Jails") and substantial bodily harm or even death to New York City Correction Officers at the hands of violent, third parties like inmates.  In accordance with the Court's May 2018 Opinion & Order, the proposed FASC, maintains the same allegations against, essentially, the same defendants as asserted in the OC, but further amplifies the claims based upon one of the original challenged policies:  Defendants' policy/practice of underreporting and misreporting jail violence.

To that end, the FASC alleges a significant amount of new facts and exhibits in support of the claims -- all of which provide additional and supplemental facts that further amplify and develop the narrative of the original claim as well as cure the OC's deficiencies identified in the Court's May 2018 Opinion & Order.  Based on the same transactions and occurrences set forth

1

in the OC, further amplified by new facts described in the FASC, Plaintiffs also add two pendent claims under New York State law alleging negligence in breach of Defendants' special duty to maintain due care to minimize hazards and ensure a safe work environment for Plaintiffs. Lastly, the proposed FASC substitutes certain parties by removing three individual Plaintiffs (Dublin, Hines and Castro) and adding a new Plaintiff Ashendorf. For the reasons set forth below, and to the extent the FASC raises several, significant issues of fact, Plaintiffs should, at minimum, be allowed to proceed to discovery on their claims.

## STATEMENT OF FACTS

In the interest of brevity, Plaintiffs respectfully refer this Court to the facts set forth in the Declaration of Cynthia Devasia, Esq. dated September 7, 2018, which details the procedural history as well as the amendments proposed by the FASC.

## ARGUMENT

## PLAINTIFFS HAVE MET THE STANDARD FOR OBTAINING LEAVE TO FILE AN AMENDED COMPLAINT UNDER RULE 15

Federal Rule of Civil Procedure 15(a)(2) states "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15 (a)(2). Pursuant to Rule 15(d) a party may supplement its pleadings by alleging "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15 (d). Pursuant to Rule 15(c), amendments to pleadings will relate back to the date of the original filing as long as the "amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15 (c).

Rule 15's purpose "is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." Slayton v. Am. Express Co., 460 F.3d 215, 228 (2d Cir. 2006). Thus, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Richardson Greenshields Secs., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987).   "As a matter of procedure, when a complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) "It is rare that such leave should be denied." Id. 941 F.2d at 123.

While the decision whether to grant leave to amend a pleading is within the sound discretion of the district court, the Supreme Court has held that denial of leave must be based on a "justifying reason" such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see also State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981). Here, none of these factors are present and, accordingly, this Court should grant Plaintiffs' motion.

## A. The Proposed Amendments Further the Interests of Justice and Are Consistent with the Court's Order.

Given the serious nature of the allegations in the proposed FASC -- that Defendants, by design, intentionally non-report, misreport, underreport violence, including criminal acts, against other inmates or Correction Officers, that they downgrade violence incidents, and fail to hold inmates accountable for their violent actions --- there can be no question that the amendments sought further the interests of justice. As explained in the FASC, Defendants' attempts to cover up jail violence not only violate their reporting obligations, but also increases the risk of harm to

3

inmates and Correction Officers. Defendants' cover-up results in misinformation related to an inmate's institutional conduct and, thus, distorted decisions related to inmate classification, inmate housing, whether or not inmate discipline, and the custodial practices and management strategies applied to inmates.   Absent this Court's intervention, Defendants will continue to disregard their legal obligations, and endanger the lives of inmates and officers alike.

### B.   The Proposed Amendments Will Not Unduly Prejudice the Defendants.

A defendant is prejudiced by an amendment only when it would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725–26 (2d Cir. 2010). Undue prejudice may arise, for example, when "an amendment [comes] on the eve of trial and would result in new problems of proof." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); see also DeWan v. Seideman, No. 17-cv-1315 (ER), 2017 WL 6048816, at *5 (S.D.N.Y. Dec. 5, 2017).

Here, granting Plaintiffs leave to amend will not cause unfair prejudice to the Defendants for three reasons. First, the FASC raises, in sum and substance, the same challenge to Defendants' failures regarding workplace safety as the OC did. The new allegations amplify and provide additional proof of the same core allegations contained in the OC of which Defendants have been long aware. Thus, there is no surprise to Defendants here. Second, this case is in its infancy and is far from the "eve of trial." There has been no discovery or other action in this matter other than briefing of the motion to dismiss. Lastly, Defendants will have the same opportunity to address the new factual allegations proposed in the FASC as it did the allegations in the OC.

## C. The Proposed Amendment Is Not Unduly Delayed.

Similar to the undue prejudice analysis, this Circuit has held there is no undue delay when parties seek leave prior to discovery. See Pasternak v. Shrader, 863 F.3d 162, 173 (2d Cir. 2017). Notably, Courts have declined to find undue delay even when a party seeking leave provides additional facts in support of their claim **years** after filing the original complaint. See, e.g., Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases); see also, Middle Atl. Utils. Co. v. S.M.W. Dev. Corp., 392 F.2d 380, 383 (2d Cir.1968) (amendment after three-year interval and notice of trial readiness); Zeigan v. Blue Cross and Blue Shield, 607 F.Supp. 1434, 1438 (S.D.N.Y.1985) (amendment after three-year interval); Green v. Wolf Corp., 50 F.R.D. 220, 223 (S.D.N.Y. 1970) (amendment after after four-year interval).

Here, Plaintiffs have not delayed in seeking leave to amend the FASC and do so now, only a few short months after the Court's May 2018 Opinion & Order. With both Defendants' and this Court's approval, Plaintiffs sought additional time to file the FASC in order to investigate and interview relevant sources of information as well as review extensive documentation received from Defendants regarding violence in the City Jails in order to cure the defects of the OC.

## D. The Amendment Is Not Sought in Bad Faith or with a Dilatory Motive.

Courts have found bad faith when a party has failed to follow a court's instructions when filing an amended complaint and filed several years into the litigation. See, e.g., Presbyterian Church Of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009) (finding bad faith when leave sought three years after filing deadline in scheduling order and on eve of summary judgment deadline)

Here, Plaintiffs' proposed FASC is not sought in bad faith or with a dilatory motive and is filed in compliance with the Court's instructions. Although the mechanical changes to the FASC are extensive, substantively the changes simply amplify the core allegations regarding underreporting and misreporting of jail violence as alleged in the OC. Also, the Second Circuit has found that where new factual bases for claims have come to light – as with the supplemental facts, allegation of new Plaintiff Ashendorf, and the pendent state law claims - even a three-year delay in moving to amend a complaint does not support a finding of bad faith. State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).

**E.  The Proposed Amendment Is Not Futile.**

The proposed FASC is futile only if it fails to state a claim under Rule 12(b)(6). Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991); see also Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114 (2d Cir. 2012).  Thus, like the standard used to evaluate a motion to dismiss, when determining whether a proposed amended complaint states a claim, a court must (i) consider the proposed amendments and the remainder of the complaint, (ii) "accept as true all non-conclusory factual allegations therein," and (iii) "draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." Panther Partners, 681 F.3d at 119.  The district court should not dismiss the FASC for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Id. quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957). See also Pangburn v. Culbertson, 200 F.3d 65, 71 (2d Cir. 1999). The Second Circuit has recognized that "this principle should be applied with particular strictness when the plaintiff seeks to file an amended complaint charging a violation of his civil rights" such as is the case here. Ricciuti., 941 F.2d at 123 (2d Cir. 1991)

While the trial court has broad discretion when ruling on a motion to amend, leave to amend based on futility is not generally denied "unless the proposed amendment is clearly frivolous or legally insufficient." DeWan v. Seideman, No. 17 CIV. 1315 (ER), 2017 WL 6048816, at *3 (S.D.N.Y. Dec. 5, 2017) See also, In re Ivan F. Boesky Sec. Litig., 882 F. Supp. 1371, 1379, (S.D.N.Y. 1995). "Beyond these considerations, the court does not need to consider the substantive merits of the plaintiff's claim on a motion to amend," Id., since "plaintiff is not required to prove his case at this stage. Ricciuti, 941 F.2d at 123-124. Accordingly, Plaintiffs should be allowed to proceed to discovery on the allegations raised in the FASC.

1.    **The FASC Sets Forth a Valid Claim For a Violation of Substantive Due Process Under the 14th Amendment.**

In its May 2018 Order, this Court held that to establish a state created danger substantive due process violation, a plaintiff must establish that defendants' actions that allegedly enhance or increase the risk of harm "caused the plaintiff to suffer harm through an affirmative action that was of such character to shock the conscience." Devasia Decl., Exhibit A, p. 8. The Court further found that "a determination as to whether a state-sanctioned action shocks the conscience requires a careful evaluation of the particular circumstances of the case, including the nature of the state action, the magnitude and form of the harm inflicted on the plaintiff, and the state of mind of the defendants." Id.; see also Sacramento v. Lewis, 523 U.S. 833, 850-54 (1998); Pena v. DePrisco, 432 F.3d 98, 114 (2d Cir. 2005). With regard to the requisite state of mind, the Court found that intent harm as well as deliberate indifference under certain circumstances would suffice to demonstrate conduct that shocks the conscience. Devasia Decl., Exhibit A, pp 8-10. Elaborating further on deliberate indifference, the Court opined that whether a defendant's deliberate indifference is sufficiently egregious to shock the conscience is a fact specific

analysis, dependent on the nature of the government action, the harm inflicted and whether or not competing interests existed between policy decisions.  Id.

### a. The FASC Cures the OC's Deficiencies and Demonstrates How Defendants' Concealment Practices Have Increased the Risk of Harm To and/or Injured Plaintiffs.

Plaintiffs' FASC cures the OC's deficiencies by elaborating on Defendants' practice of concealing or covering up the true nature, magnitude and frequency of the on-going violence occurring within the City Jails and how this has increased the risk of harm faced by Correction Officers in the workplace and caused actual injuries. First, the FASC details, at length, Defendants' "concealment practices" which include  non-reporting, underreporting or misreporting violence against other inmates or Correction Officers,  downgrading violence incidents, and failing to hold inmates accountable for their violent actions. This includes failure to report assaults on Correction Officers as criminal acts (even though the same assaults on civilian staff are reported accurately), downgrading of serious assaults as mere "log book entries," which are not treated or investigated with the severity that a more serious classification would warrant, and failure to accurately report spittings, splashings and slashings. Additionally, Defendants' concealment practices include failing to hold inmates accountable by discouraging reports of violence from Correction Officers, failing to infract inmates, failing to investigate infractions, and failing to impose inmate discipline as required under DOC policies.

Then, the FASC details how these concealment practices are the proximate cause of the increased risk of harm to Correction Officers and the injuries they have sustained. Specifically, Defendants' concealment practices increase the danger faced by Correction Officers because misinformation regarding an inmate's violent institutional conduct directly distorts decisions related to the inmate's classification, housing, whether or not inmate discipline is imposed, the

degree of inmate discipline that is imposed, and the custodial practices and management strategies applied to inmates.   Inmates are not subject to the appropriate and necessary institutional measures. Defendants' practices allow violent inmates to be classified as far less likely to cause injury and to be intentionally classified in ways that require less restrictive security measures, less restrictive observation practices, and housing decisions which in turn exposes staff and other inmates to unprecedented levels of violent victimization.

Unreported or misreported violence incidents result in failure to impose necessary discipline or the depravation of therapeutic or behavioral programming.  It also results in failure to provide the additional equipment, staffing, and financial resources that are needed to ensure the safety and security of the jails. Conversely, unreported or inaccurately reported violence incidents results in a reduction of necessary safety measures, like use of OC spray.

Finally, the FASC presents three examples of how Defendants' concealment practices allowed specific inmates to continue committing assaults on Correction Officers.  The FASC details how after each inmate committed a first assault, Defendants underreported the incident as a "log book entry" instead of an "assault on staff" crime, failed to investigate the incident, failed to take remedial or punitive measures against the inmates, failed to impose discipline, or alter the inmates' classification or housing status --- all of which resulted in a second attack either on the same or another officer.

### b. The FASC Demonstrates How Defendants' Concealment Practices Constitutes Conduct that Shocks the Conscience.

The FASC forth a palpable claim that Defendants' actions shock the conscience. See Lewis, supra; see also, Pena, supra. The FASC alleges that Defendants' knowing and intentional concealment practices evince, at worst, an intent to harm Correction Officers and, at least, a deliberate indifference to their safety.

As a preliminary matter, the nature of Plaintiffs' allegations ----that Defendants are underreporting the violence occurring in the City Jails to perpetuate an illusion that their reform measures are succeeding ---- is so shocking to the conscience that it should survive. See Benzman v. Whitman, 523 F.3d 119 (2d Cir. 2008) (making knowingly false statements is undoubtedly conscience-shocking conduct). Moreover, Courts recognize that matters that risk safety in prisons, specifically conduct that disregards known dangers or increases danger, suffices to shock the conscience. See Kowaleski v. Lewis, 643 F. Supp. 2d 259, 272 (N.D.N.Y. 2009). Plaintiff COBA has for years brought the dangers alleged in the FASC to Defendants' attention, have begged for change, and even proposed potential solutions. Defendants intentionally and willfully disregarded these dangers and risk the safety of all jail constituencies.

With regard to the "intent to harm" state of mind, Plaintiffs submit that Defendants' actions evince this state of mind inasmuch as they have, by design, intentionally engaged in concealment practices and knew that covering up the true nature, magnitude and frequency of violence occurring in the Jails would result in misclassification of violent inmates which, in turn, adversely impacts the institutional response to the inmate and results in increased danger and injuries claimed herein. In other words, by covering up the violent conduct of highly assaultive inmates, Defendants knew there would be only one outcome – more violence and injuries to inmates and staff.

Alternatively, with regard to the "deliberate indifference" state of mind, Plaintiffs submit that Defendants' concealment practices evince "willful disregard" of the "obvious risks," "serious implications," and likelihood of harm that would result when jail violence is covered up. Okin v. Village of Cornwall–on–Hudson Police Dep't., 577 F.3d 415, 427-28 (2d Cir. 2009). Indeed, Defendants had actual time for deliberation, were aware of the risks and dangers to officers in

10

implementing the policies and knowingly acquiesced to the risks. Defendants' deliberate failure to remedy this situation, despite being placed on notice about these conditions and the serious consequences, shocks the conscience. See Lesperance v. Cty. of St. Lawrence, No. 7:10-CV-01273, 2011 WL 3651161, at *6 (N.D.N.Y. Aug. 18, 2011) quoting Lewis, 523 U.S. at 853 ("Deliberate indifference to the welfare of a private citizen may rise to the level of conscious shocking conduct when government officials have the knowledge of and the ability to prevent impending harm."). Additionally, the Second Circuit has recognized that deliberate indifference to the health and safety of government workers shocks the conscience, if the government's actions demonstrate a gross disregard for dangerous situations where deliberation is practical. Lombardi v. Whitman, 485 F.3d 73, 80 (2d Cir. 2007).

Unlike the first eight policies alleged in the OC which were dismissed by this Court, Defendants' decision to cover-up jail violence was not one subject to competing governmental interests. Indeed, the choice to falsify violence statistics adversely impacts all jail constituencies. Further, there is no legitimate government interest that is furthered by covering up violence in the jails. There is no doubt that here, Defendants had "time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations" or public goals. Lewis, 523 U.S. at 853; see Lombardi, 485 F.3d at 83; see also Pena, 432 F.3d at 112-14.

Under these standards, the FASC sets forth a plausible claim for violation of substantive due process rights under the 14th Amendment. At minimum, Plaintiffs are entitled to discovery regarding the facts surrounding Defendants' state of mind when adopting and implementing their concealment practices and whether the Defendants were "tainted by an improper or malicious motive." Lewis, 523 U.S. at 855.

2.   **The FASC Sets Forth a Valid Claim for Negligence, Breach of Special Duty Under New York State Law.**

The FASC alleges two new pendent state law claims for negligence based the same transactions and occurrences as those alleged in the OC - Defendants' underreporting and misreporting of violence in the jails. The general rule is that a government agency is not liable for injuries arising out of its failure to adequately protect the health and safety of the public at large. Cuffy v. City of New York, 69 N.Y.2d 255, 513 N.Y.S.2d 372 (1987). An exception is when there is a "special relationship" between the plaintiff and the governmental entity. Id. The Cuffy Court articulated the required elements to prove a "special relationship":

> (1) An assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured;
>
> (2) Knowledge on the part of the municipality's agents that inaction could lead to harm;
>
> (3) Some form of direct contact between the municipality's agents and the injured party; and
>
> (4) The party's justifiable reliance on the municipality's affirmative undertaking.

Here, the FASC alleges a special duty arises in two ways:  1) Defendants' express and repeated assurances of safety made under their Reform Agenda;  and 2) the obligations imposed by the Workplace Violence Law.  Defendants' have assumed a special duty through their mission statement, numerous public statements and proclamations all of which state their intent, desire and goal to ensure staff safety especially in connection with their Reform Agenda. A statutory special duty is also imposed through the Workplace Violence Act, which requires certain occupational safety and health standards and that Defendants minimize the hazards of workplace violence to public employees. Plaintiffs justifiably relied on these assurances.

12

Moreover, Plaintiff COBA repeatedly demanded and addressed the need for accurate violence reporting, thereby leaving no doubt that Defendants knew their cover-up of violence would injure Plaintiffs as detailed in the FASC.

## CONCLUSION

For the reasons set forth above, Plaintiffs' respectfully request this Court grant its motion for leave to amend.

Dated:  September 7, 2018
          New York, New York

KOEHLER & ISAACS LLP
*Counsel for Plaintiffs*

By: _____
      Cynthia Devasia, Esq. (CD0320)
      61 Broadway - 25th Floor
      New York, New York 10006
      Office: (917) 551-1325