17 Civ. 2899 (LTS)(JCF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, INC., TIFFANI DUBLIN, individually and on behalf of all others similarly situated, ANTHONY ROMANO, individually and on behalf of all others similarly situated, MATTHEW HINES, individually and on behalf of all others similarly situated, FRANCIS CASTRO, individually and on behalf of all others similarly situated, and JOHN and JANE DOES 1 - 2,000,

Plaintiffs,

-against-

THE CITY OF NEW YORK, MAYOR BILL DEBLASIO, NEW YORK CITY DEPARTMENT OF CORRECTION, and COMMISSIONER CYNTHIA BRANN,

Defendants.

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE COMPLAINT

# ZACHARY W. CARTER
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-187
New York, New York 10007-2601

*Of Counsel:*   Alan M. Schlesinger
*Telephone:*   (212) 356-2628
aschlesi@law.nyc.gov

Our No. 2017-018199

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................ i

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT ......................................................................................................................... 7

            THE PAC IS FUTILE AND THUS, PLAINTIFFS'
            MOTION TO AMEND SHOULD BE DENIED. ...................................... 7

CONCLUSION ..................................................................................................................... 25

APPENDIX A ........................................................................................................................ 1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Oliver*,
    510 U.S. 266, 271-72 (1994) (Rehnquist, C.J., plurality opinion) ...........................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................7, 8, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................7, 8, 13

*Benzman v. Whitman*,
    523 F.3d 119, 128 (2d Cir. 2008).............................................................................9, 11, 18

*Burlew v. Am. Mut. Ins. Co.*,
    63 N.Y.2d 412 (1984) ..................................................................................................23

*Camarella v. East Irondequoit Cent. School Board*,
    34 N.Y.2d 139 (1974) ..................................................................................................23

*Capers v. Giuliani*,
    253 A.D.2d 630 (1st Dep't 1998), *motion dismissed and app. denied*, 93
    N.Y.2d 868 (1999) ..................................................................................................23

*Collins v. City of Harker Heights*,
    503 U.S. 115 (1992).............................................................................................8, 9, 10, 21

*Daniels v. City of New York*,
    17 Civ. 9960 (LGS)..................................................................................................20

*DeShaney v. Winnebago County Dep't of Social Services*,
    489 U.S. 189 (1989)...............................................................................................8, 10, 21

*Donohue v. Wing*,
    2018 U.S. Dist. LEXIS 140812 at *29 (E.D.N.Y. Aug. 17, 2018)(citing
    Decision), *adopted by and case dismissed by*, 2018 U.S. Dist. LEXIS 158176
    (E.D.N.Y. Sept. 17, 2018)........................................................................................12, 13, 22

*Dougherty v. North Hempstead Bd. of Zoning Appeals*,
    282 F.3d 83 (2d Cir. 2002)................................................................................................7

*Foman v. Davis*,
    371 U.S. 178 (1962)..........................................................................................................7

*Hardy v. New York City Health & Hosps. Corp.*,
   164 F.3d 789 (2d Cir. 1999)............................................................................23

*Health-Chem Corp. v. Baker*,
   915 F.2d 805 (2d Cir. 1990)..............................................................................7

*Hirsch v. City of New York*,
   __ Fed. Appx. __, 2018 U.S. App. LEXIS 28096 *3-4, 2018 WL 4846523 (2d
   Cir. Oct. 4, 2018) ...............................................................................10, 11, 13

*Kaluczky v. White Plains*,
   57 F.3d 202 (2d Cir. 1995)...........................................................................9, 18

*Lombardi v. Whitman*,
   485 F.3d 73 (2d Cir. 2007)...................................................................... *passim*

*Lombardi v. Whitman*,
   485 F.3d 73, 79 (2d Cir. 2007).........................................................................10

*Matican v. City of New York*,
   524 F.3d 151 (2d Cir. 2008)...............................................................................9

*McClary v. O'Hare*,
   786 F.2d 83 (2d Cir. 1986)................................................................................9

*McLean v. City of New York*,
   12 N.Y.3d 194, 199 (2009) ..............................................................................23

*Medina v. Tremor Video*,
   640 Fed. Appx. 45 (2d Cir. 2016) ......................................................................7

*Monahan v. New York City Department of Correction*,
   214 F.3d 275 (2d Cir. 2000).............................................................................24

*Oklahoma City v. Tuttle*,
   471 U.S. 808, 823-24 (1985)(plurality) ............................................................17

*Pena v.DePrisco*,
   432 F.3d 98, 112 (2d Cir. 2005).......................................................................10

*Pena v.DePrisco*,
   432 F.3d 98, 112 (2d Cir. 2005).......................................................................21

*Ricciuti v. N.Y.C. Transit Auth.*,
   941 F.2d 119, 123 (2d Cir. 1991).......................................................................7

*Sacramento v. Lewis*,
   523 U.S. 833 (1998)...........................................................................................8

*Sheppard v. Phoenix*,
  91 Civ. 4148 (RPP), 1998 U.S. Dist. LEXIS 10576, 1998 WL 397846
  (S.D.N.Y. 1998) ...........................................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .....................................................................................................24

**Statutes**

The Due Process Clause.............................................................................................8, 9

Laws of New York, Ch. 313 of 2018 .........................................................................21

N.Y. Public Health L. § 3502 ....................................................................................21

New York General Municipal Law §§ 50-i and 50-e ................................................23

New York Public Employee Safety and Health Act ..................................................23

New York's Workplace Violence Act ........................................................................23

Workers Compensation Law.......................................................................................23

Workplace Violence Act .............................................................................................23

**Other Authorities**

Rule 12(b)(6)................................................................................................................7

Rule 15 .........................................................................................................................7

Rule 15(a)(2).................................................................................................................7

Rule 23(a).....................................................................................................................24

## PRELIMINARY STATEMENT[1]

   Plaintiffs brought this action contending that 9 areas of decisions made by the Department of Correction of the City of New York ("DOC") concerning jail conditions, many compelled by the terms of the *Nunez* consent judgment, increased the physical risks that Correction Officers ("COs") confront in DOC jails and thus violated the substantive component of the Due Process Clause under the "state created danger" theory.  Defendants moved to dismiss and plaintiffs opposed the motion.  The Court granted defendants' motion but permitted re-pleading concerning the 9th area of the complaint, the alleged misreporting of incidents.

   In the Decision the Court held that government action which balances obligations to many interested groups cannot violate Substantive Due Process by alleged deliberate indifference to the needs of one of those interested groups.  Rather intent to harm must be shown.  As to the 9th area, misreporting, the Decision found that there were no allegations indicating how misreporting caused harm to COs or why it was a constitutional violation and therefor permitted amendment of the complaint.  Plaintiffs have moved to amend with over 900 pages of exhibits.

---

[1] In this memorandum, the terms "plaintiffs" and "COBA" are used interchangeably.  In the Decision, the Court substituted the current DOC Commissioner, Cynthia Brann, in her official capacity, for the former Commissioner Joseph Ponte under Rule 25(d).  *See Correction Officers' Benevolent Ass'n v. City Of New York,* 2018 U.S. Dist. LEXIS 90457 n.1, 2018 WL 2435178 (S.D.N.Y May 30, 2018) ("Decision").  For clarity, this memorandum will cite to the Court's Decision filed in this case as Dkt No. 51, rather than the Lexis or Westlaw citation.  A copy of the Decision is annexed to plaintiff's motion as Exhibit "A," to the Declaration of Cynthia Devasia, dated September 7, 2018 (Dkt. No. 57 refiled as 60) ("Devasia Decl.").

  "PAC" refers to the proposed amended complaint which is annexed to the Devasia Decl. as Exhibit "B," ((Dkt No. 57-2 and refiled 60-2).  "*Nunez,*" refers to *Nunez v. City of New York*, 11 Civ. 5845 (LTS)(JCF) and the consent judgment signed by the Court October 21, 2015 (*Nunez,* Dkt No. 249), which is annexed as Exhibit "C," to the PAC.  The PAC is Exhibit "B," to the Devasia Declaration (part of Dkt 60-3).  In this memorandum, the term "misreporting" includes misclassification.  A table of the motion's exhibits is annexed hereto as Appendix "A," as a courtesy to the Court.

Defendants now oppose the motion to amend.  The PAC does not state a claim and the motion to amend is, therefore, futile.  The PAC does not remedy the fatal defects of the complaint but, rather, merely adds "and all this is due to misreporting" as an allegation. Plaintiffs affirmatively contend that the misreporting of which they complain is created by the classification system mandated in large part by *Nunez* and the DOC Directive issued as required by *Nunez*.  Thus, the reporting system is the product of the balancing of interests inherent in the *Nunez* consent judgment and an impermissible collateral attack on that judgment.  As such it cannot be a violation of the substantive component of the Due Process Clause.

Further, the PAC contends that the misreporting is the product of the classification system which was intentionally adopted by DOC as part of the *Nunez* consent judgment and the Use of Force Directive mandated by *Nunez*, DOC Directive 5006R-D. However, the PAC never alleges that the reason, purpose, or intent behind the classification system was intent to injure COs or even deliberate indifference to their welfare.  Indeed, the PAC seems to claim that the intent of the misreporting is an alleged desire to vindicate the City's 14-point reform agenda by showing a reduction in violence.  However, the PAC simultaneously contends that DOC's statistics show a marked <u>increase</u> in violence, 18% as alleged in the PAC (and also the original complaint and as accepted by the Decision).  Apparently, plaintiffs' speculation as to the misreporting of statistics is untroubled by the fact that the statistics reported are to the <u>detriment</u> of both the DOC and the 14-point plan.  In any event there is no allegation, let alone a plausible allegation, of intent to harm COs and this is fatal to the PAC.

Substantive Due Process requires that the government be shown to act egregiously and outrageously for the very purpose of causing harm or at least deliberately indifferent to the possibility of harm.  Here, there are no facts, apart from speculative theories

and conclusions, to show any link between the alleged misreporting and any injury to anybody. Indeed, misreporting is being used as a pathway to revive all of the allegations of the original complaint.  Plaintiffs simply ascribe all of the ills of the first 8 of 9 areas of DOC action to the alleged misreporting, the 9th area, and create a pathway between them built on sheer imagination and speculation.  This shows that plaintiffs have read the Decision but it does not state a Substantive Due Process claim.

It should also be noted, that unlike many problems facing government, plaintiffs have never alleged that this matter is about money.  The PAC cites various sources proving as much.  *See,* e.g., PAC Ex. F, Presentation to Board of Correction; Funding for Youth Programming has risen from $250,000 to nearly $20 million; PAC Ex. G Wall Street Journal quoting Comptroller as stating that the City spends <u>daily</u> $112,665/inmate double the next highest spending per inmate, Chicago at $55,636.

## STATEMENT OF FACTS[2]

In *Nunez*, the City entered into a consent judgment to settle claims that the constitutional rights of inmates were being violated by the excessive use of force against them. Decision at 3.  The *Nunez* consent judgment covered a broad range of DOC procedures including the Use of Force directive, and the classification of incidents.  *See* PAC ¶ 43; *see also* PAC, Ex. C, *Nunez* consent judgment, Articles III (Defining Use of Force Classes A, B, and C), IV (Use Of Force Policy); V (Use of Force Reporting and Tracking), VII (Use of Force Investigations). Among the other areas was the reporting and investigation of use of force incidents.  *Id.*  As

---

[2] Defendants oppose plaintiffs' motion to amend because it fails to state a claim and is therefore futile.  Thus, for purposes of this memorandum only, defendants accept the PAC's allegations of fact (including those of the PAC's exhibits), but not its conclusions, as true.

required by the *Nunez* consent judgment, the DOC issued a new use of force directive, Directive 5006R-D, which also incorporates the classification system agreed to in *Nunez*.

The original complaint ("Complaint") cited to the City's 14-point plan for reforming DOC. Decision at 3; PAC ¶¶ 5, 42, 46; Compl. ¶¶ 21-22. Plaintiffs identified 9 areas causing a constitutional violation: (1) insufficient use of punitive segregation for young inmates (as required by *Nunez*); (2) insufficient use of punitive segregation for adult inmates; (3) failure to use pre-hearing detention; (4) the new use of force directive; (5) inadequate training; (6) housing of high risk inmates including those at the West Facility; (7) housing of gang affiliated members together; (8) lack of equipment; and (9) misreporting of violence against DOC staff. Decision at 3-4. The Complaint alleged an 18% increase in violence in DOC facilities. *Id.* at 4.

The Decision held that 8 of the 9 areas of DOC decisions were the product of a balancing of competing interests and did not constitute a Substantive Due Process violation. Decision at 9-14. The Decision found that the 9th area, misreporting of incidents, did not state a claim because "[p]laintiffs allege no facts showing how such false reporting increases the COs' exposure to physical harm." *Id.* at 14. Plaintiffs were permitted to replead concerning this area.

Plaintiffs moved to amend. The PAC, like the Complaint, complains that the 14-point plan and *Nunez* have led to violence in the DOC facilities. PAC ¶¶ 5, 42, and 46. The PAC alleges that the misreporting is caused by a desire to show that the 14-point plan is working by showing a decrease in violence. *Id.* ¶ 71. However, the PAC also alleges that violence has increased, assaults on staff have also increased, and proves this by attaching literally hundreds of pages of detailed DOC workplace violence reports concerning incident at DOC facilities. *See* PAC Exs. AA-CC (Part 2). The PAC like the Complaint alleges that violence has increased in DOC facilities by 18%. *See* PAC ¶ 48; newspaper report of 18% increase in stabbings, PAC, Ex.

H.  The PAC pleads that the misreporting has caused the harm in most of the other 8 areas.  For example, due to misreporting, inmates are housed improperly (areas 6 and 7).  For a further example, due to misreporting, the COs are lulled into a false sense of security resulting in misapprehension of the risks of being a CO.  PAC ¶ 6; (area 4).  The PAC again alleges the young inmates are mishoused and blames misreporting.  PAC ¶ 40.  The PAC complains that the new use of force directive is increasing the risk of violence to COs by misreporting incidents.  PAC ¶¶ 43-44.  The PAC like the Complaint decries the insufficient use of punitive segregation especially on young inmates.  PAC ¶¶ 131, 145.  Also as in the Complaint, the PAC complains of inadequate equipment.  PAC ¶ 146.

According to the PAC, "[a]t the center of Defendants' cover-up, is the classification system used to categorize violence occurring within the Jails.  Upon information and belief, this system is designed to give an illusion of increased safety in the Jails because it downgrades the severity of violence incidents."  PAC ¶ 88; *see* PAC ¶ 135.  The classification system is mandated by *Nunez* and incorporated in the new Use of Force directive which is also required by *Nunez*.  PAC ¶ 43, 124 (*Nunez* caused promulgation of new use of force directive); *Nunez* consent judgment PAC Ex. B, Articles III (Defining Classes of Use of Force Class A, Class B, and Class C), IV (Use Of Force Policy); V (Use of Force Reporting and Tracking), VII (Use of Force Investigations).  Despite alleging that the classification system is "at the center" of DOC's "cover-up," plaintiffs do not allege that the classification system was adopted with intent to harm COs.  The FC does allege that as a result of the classification system, a slashing of a CO was listed as a "serious assault" rather than a "slashing."  PAC ¶ 124.  The PAC does not allege how the reporting of a slashing as a serious assault (or some other category) increases the risk of violence to COs or that this classification was adopted with intent to injure COs.

The PAC also cites to an alleged incident in 2011 in which a uniformed supervisor suppressed violent incidents and the alleged ratification of the cover-ups by promotion of the supervisor and the deletion of allegations from a draft report.  PAC ¶¶ 76-81; and 127-28.  The PAC does not allege that the suppression of these incidents occurred within the three-year statute of limitations or that it was done with intent to cause harm to COs.  Indeed, the PAC alleges that it has been widely and often reported that violence in the DOC facilities has increased substantially.  *Id.* ¶¶ 55 (newspaper reports), 56 (Workers Compensation claims and inmate lawsuits as reported in newspapers); 103 (*Nunez* monitor's 4th report); PAC Newspaper reports Exs. D, E, H, I, and K; Mayor's Management Reports ("MMRs") Exs. D and E; *Nunez* Monitor Reports PAC Exs. J and M.  It should also be noted that the *Nunez* monitor has reviewed claims of "manipulating violence statistics" and, in a portion of the **Third** *Nunez* **Monitoring Report** which plaintiff has not attached to the PAC, the *Nunez* Monitor found these claims unjustified.  Third Report at 51-53 (*Nunez* Dkt. 295); *see* PAC Ex. J (plaintiffs excerpt of monitoring report).

The PAC also complains of a lack of inmate discipline including punitive segregation (areas 1-3), as well as the housing of inmates, and attributes these to the *Nunez* and to misreporting.  PAC ¶¶ 35, 130, and 135.  The goal of the misreporting is the vindication of the Mayor's 14-pont plan which was supposed to reduce DOC violence.  *Id.* ¶¶ 42 and 46.  There is no allegation that any of this was done with intent to harm COs.  Nor is there a clear pathway, other than the conclusory allegation, between misreporting and violence to COs.

Finally, the PAC seems to dwell on spitting and splashing of staff by inmates.  PAC ¶¶ 109, 115-117; and 125; splashing log books excerpts PAC Ex. Z (129 pages); Board of Correction letter PAC Ex. Y.  The PAC does not allege that the splashings are misreported in

order to increase risks to COs, contenting itself in complaining that they are not taken seriously enough.  Nor does the PAC allege a connection between splashing and violence toward COs.

<u>**ARGUMENT**</u>

**THE PAC IS FUTILE AND THUS, PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED.**

**A.      The Amendment And Motion To Dismiss Standard**

Under Rule 15 motions to amend are freely granted.  *See* Rule 15(a)(2). However, where the amendment would be futile the motion to amend the complaint should be denied.  *Medina v. Tremor Video*, 640 Fed. Appx. 45, 47 (2d Cir. 2016); *see Foman v. Davis*, 371 U.S. 178, 182 (1962)("a court need not grant such leave if the proposed amendment would still not state a claim, so that the amendment would be futile")(citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).  In determining whether the proposed amended complaint is futile, the Court applies the same standards as would be applicable in a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

Nearly ten years ago, the Supreme Court revitalized (if not resurrected) the motion to dismiss under Rule 12(b)(6) for failure to state a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)("*Twombly*").  A complaint, be it an original or a proposed amended complaint, fails to state a claim if it does not allege facts sufficient to state a plausible cause of action on its face.  *Iqbal*, 556 U.S. at 678.  It is insufficient for plaintiff to allege facts consistent with a claim; the complaint must allege a plausible claim and not simply a possibility.  *Id.*; *Twombly*, 550 U.S. at 570 ("plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be

dismissed.").  Nor may the proposed amended complaint rely on conclusory allegations without the facts to support the critical components of the cause of action.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 678-79.  A plaintiff also cannot rely on discovery to state a claim:

> It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through "careful case management," *post,* at 573, 167 L. Ed. 2d, at 951, given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.

*Twombly*, 550 U.S. at 559.

## B.      Substantive Due Process

The history of the substantive component of the Due Process Clause reflects the Courts' awareness that it is an amorphous theory without clearly marked signposts.  *See Sacramento v. Lewis*, 523 U.S. 833 (1998); *Collins v. City of Harker Heights*, 503 U.S. 115 (1992); and *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 196 (1989). As a result, the application of this doctrine is reserved for those few cases in which the government's actions use governmental authority for the very purpose of oppression.  It is not implicated by government conduct which is merely incorrect or ill-advised.  Rather, the government must be truly outrageous and shocking to the judicial conscience.  Substantive due process is reserved for only the most extreme cases and requires either intent to injure or, at the very least, deliberate indifference to a significant, clear, and direct risk of harm, without countervailing considerations.

The Supreme Court has used extreme caution in defining Substantive Due Process and has been reluctant to expand this doctrine into uncharted areas.  *See Lewis*, 523 U.S. at 851; *see also Albright v. Oliver*, 510 U.S. 266, 271-72 (1994) (Rehnquist, C.J., plurality opinion) ("As

a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.") (internal quotation marks and citations omitted).  This fundamental caution against an expansive reading of the Substantive Due Process doctrine can be traced through such Second Circuit cases as *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008); *Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008), *Lombardi v. Whitman*, 485 F.3d 73, 74-75 (2d Cir. 2007); *Kaluczky v. White Plains*, 57 F.3d 202, 211 (2d Cir. 1995); and *McClary v. O'Hare*, 786 F.2d 83 (2d Cir. 1986).  The recurrent theme of this line of cases requires a plaintiff asserting a substantive Due Process Clause claim to show that the government's action is outrageous and egregious, truly shocking the conscience and directly causing harm to the plaintiff.  In each situation the government's action was not simply wrong or a tort.  Rather, to state a Substantive Due Process claim the government's action must be for the very purpose of causing harm and without competing governmental interests in favor of the action taken.  This would include the state created danger exception cited in *DeShaney*, and relied on by plaintiffs in the instant case.  *See Matican*, 524 F.3d at 157.

In particular, the substantive component of the Due Process Clause does not extend to the protection of government employees as a kind of occupational safety and health statute.  It is not a guarantee of a certain level of protections by a government employer toward government employees.  Such a broad interpretation of Substantive Due Process is counter to the long line of limitations on substantive Due Process described above, would be inconsistent with the earlier Decision in this case, and might well violate the constitutional concept of federalism.  As the Supreme Court noted in *Collins*:

> [t]he reasoning in those cases applies with special force to claims asserted against public employers

> because state law, rather than the Federal
> Constitution, generally governs the substance of the
> employment relationship.

*Collins,* 503 U.S. at 128.  In *Collins*, the plaintiff claimed a City government had systematically

and intentionally failed to provide the equipment and training to that government's employee, as

required by a State statute, causing injury to the employee.  503 U.S. at 118.  The Supreme Court

held that the City in *Collins* did not violate Substantive Due Process.  The "intent" requirement

of a Substantive Due Process claim was not met by the deliberate failure to provide the training

and equipment.  *See Lombardi*, 85 F.3d at 74-75 ("only intent to cause harm arbitrarily can shock

the conscience in a way that justifies constitutional liability.").

Last month, in a state created danger case, the Second Circuit reaffirmed its

holding in this line of cases, and in the Decision, finding that claims under the substantive

component of the Due Process Clause must be narrowly circumscribed.

> Government action resulting in bodily harm is not a
> Substantive Due Process violation unless "the
> government action was 'so egregious, so
> outrageous, that it may fairly be said to shock the
> contemporary conscience.'" *Lombardi v. Whitman*,
> 485 F.3d 73, 79 (2d Cir. 2007) (quoting *Pena
> v.DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005)).

*Hirsch v. City of New York*, __ Fed. Appx. __, 2018 U.S. App. LEXIS 28096 *3-4, 2018 WL

4846523 (2d Cir. Oct. 4, 2018).  The Second Circuit in *Hirsch*, then held that

> Additionally, **only an affirmative act can amount
> to a Substantive Due Process violation** because
> the *Due Process Clause* "is phrased as a limitation
> on the State's power to act, **not as a guarantee of
> certain minimal levels of safety and security**."

*Hirsch*, 2018 U.S. App. LEXIS 28096 at *4 (emphasis supplied) (quoting *DeShaney* , 489 U.S. at

195).

*Hirsch* therefore echoed the Decision's limitations on Substantive Due Process, the need for an intentional act, and the rejection of the notion that hidden in the Constitution are protections for government employees.  As held in *Hirsch*, only an affirmative act intended to do harm can satisfy the stringent requirements of Substantive Due Process.  The Constitution, as the Circuit said in the context of the State created danger doctrine, is not a guarantor of safety and security.

As held in the Decision, in accordance with the very narrow scope of Substantive Due Process, government actions taken while attempting to balance important competing interests cannot run afoul of that constitutional protection unless there is intent by the government to take an affirmative act to cause harm to specific persons.  *See* Decision at 9-10 (citing *Benzman v. Whitman*, 523 F.3d 119, 128 (2d Cir. 2008) (finding that, in light of competing public policy considerations, a state-created danger claim could only succeed if plaintiff alleged that the government "acted with intent to harm."  In the Decision, this Court discussed the Court's reasoning for the strict limitations on Substantive Due Process doctrine as applied to government actions:

> government action often necessitates decisions that inherently involve weighing the risk to the safety and welfare of one group against that of another or the advancement of other public policy goals.

Decision at 9 (citing *Collins*, 503 U.S. at 128-29 and *Lombardi v. Whitman*, 485 F.3d 73, 83-85 (2d Cir. 2007)).  *Lombardi*, relied on by the Court in the Decision, was also cited with approval in the very recent Second Circuit's decision in *Hirsch*.

Plaintiffs here seek to convert the Substantive Due Process doctrine into just such a guarantee that the policies of DOC will give greatest weight to the safety and security uniformed staff, to the near exclusion of those of the inmates.  Plaintiffs urge that the failure to

conform to the Union's precepts constitutes a violation of Substantive Due Process. This contention must be rejected. Here, the PAC tries to draw a causal line between alleged misreporting and the alleged increase in harm to COs. Simultaneously, the PAC seeks to use DOC statistics to show that there was a marked <u>increase</u> in violence in DOC facilities and that DOC was covering up violence to vindicate the 14-point plan for DOC reform, which, for plaintiffs, is joined to *Nunez*, as the font of all evils. According to the PAC, the intent was not to do harm to COs, it was not even deliberate indifference to the welfare of COs, but, rather to vindicate the 14 point plan. An intent other than to cause harm cannot suffice to state a Substantive Due Process claim and this is an end to the federal claims of the PAC.

The requirement that government weigh and balance the competing needs of the public, the employees, and inmates compels the conclusion that to violate the substantive component of the Due Process Clause the challenged governmental action must have been taken for the very purpose of causing harm. *See* Decision at 10 (citing *Benzman v. Whitman*, 523 F.3d 119, 128 (2d Cir. 2008)).

> liability cannot be imposed under the deliberate indifference standard when a governmental entity acts subject to the pull of competing governmental obligations.

Decision at 10; *see Donohue v. Wing*, 2018 U.S. Dist. LEXIS 140812 at *29 (E.D.N.Y. Aug. 17, 2018)(citing Decision)(Report and Recommendation recommending that the Court grant a motion to dismiss the complaint), *adopted by and case dismissed by*, 2018 U.S. Dist. LEXIS 158176 (E.D.N.Y. Sept. 17, 2018).

Plaintiffs contend that DOC's classification system is "designed to give an illusion of increased safety …." PAC ¶ 88. This even though plaintiffs cite to a much publicized increase in violence in DOC facilities. Much of the PAC is consumed with the classification of

particular events as log book entries as opposed to a Class of assault on staff.  According to plaintiffs the heart of the PAC is the classification systems created by the *Nunez* consent judgment and Directive 5006R-D, which was promulgated as a result of the *Nunez* consent judgment.  *Id.*  At its core, plaintiffs wish to use the Substantive Due Process Clause to undo *Nunez,* which plaintiffs believe sacrifices their safety to the alleged rights of inmates.  As this Court held in the Decision, and as recently reaffirmed by the Second in *Hirsch*, Substantive Due Process analysis does not compel that certain weights be given to any one or more of the competing obligations which must be managed by the government.

Here, COBA is seeking to substitute its view of the proper method of approaching penology by attempting to wedge all of its approach under the rubric of misreporting.  This is merely an attempt to meet what COBA believes is the requirement of the Decision to show that misreporting increases the risk of harm.  *See* Decision at 14.  Speculations and the musings of attorneys are not allegations of fact which need be accepted by the Court.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

In addition, the classification system, which plaintiffs contend is at the heart of their case, was adopted in Use of Force Directive 5006R-D as required by the *Nunez* consent judgment.  *See* PAC ¶ 88 ("At the center of Defendants' cover-up, is the classification system used to categorize violence occurring within the Jails"); *Nunez* consent judgment, Article IV, "Use Of Force Policy," a copy of which is annexed to the PAC as Exhibit "C."  The classes of the incidents in DOC facilities are defined in the *Nunez* consent judgment.  *Nunez,* Article III, "Definitions," §§ 3-6 (Classes of Use of Force, A, B, C, and P).  The reporting procedures complained of in the PAC are the result of the *Nunez* consent judgment.  *Id.* Article V, "Use of

Force Reporting and Tracking."  This includes computerized tracking by facility of uses of force

(including assaults on staff and inmate on inmate violence), investigations, and discipline.  *Id.*

§§ 15-19.  The *Nunez* consent judgment provides that

> Within 60 days of the Effective Date, the
> Department, in consultation with the Monitor, shall
> review the definitions of the categories of
> institutional violence data maintained by the
> Department, including all security indicators related
> to violence *(e.g.,* "allegations of Use of Force,"
> "inmate-on-inmate fight," "inmate-on-inmate
> assault," "assault on Staff," and "sexual assault") to
> ensure that the definitions are clear and will result
> in the collection and reporting of reliable and
> accurate data.

*Id.* Art. V, § 21.

*Nunez,* further provides for a "Preliminary Review," a term of art created by the

consent judgment, of every Use of Force Incident, which in part requires "confirm[ation] that the

Use of Force Incident is properly classified" and ot be completed within 5 days.  *See* Nunez,

consent judgment, PAC Ex. C (the PAC itself is Ex. B to the Devasia Declaration), Art. VII

§ 7(b).  Similarly, the consent judgment provides that when the Preliminary Review determines

that an incident should be investigated by a "Facility Investigator," another term of art created by

the consent judgment, that investigation must "confirm that the Use Force Incident is

appropriately classified …."  *Id.* Art. VII, § 13(e).  Plaintiffs' objective is apparent; to undo the

Use of Force, classification, and reporting requirements of *Nunez*.  The PAC and this case are an

impermissible collateral attack on *Nunez*.  *See Sheppard v. Phoenix*, 91 Civ. 4148 (RPP), 1998

U.S. Dist. LEXIS 10576, 1998 WL 397846 (S.D.N.Y. 1998).  Thus, the motion to amend must

be denied as futile.

In any event, the PAC does not even attempt to claim that the DOC adopted the

challenged classification system intending to cause injury to anyone, be they COs or inmate.

Nor does the PAC deny that in adopting the contested policies and procedures DOC balanced competing considerations including the safety of staff, the safety of inmates, the constitutional and statutory requirements attendant to the confinement of individuals, and the security of the public.  Among the balancing of interests was the entry into the *Nunez* consent judgment which itself contains a classification system, incorporated into the new Use of Force regulation, Directive 5006R-D, which was also required by the *Nunez* consent judgment.  PAC ¶ 43 (*Nunez* caused promulgation of new use of force directive); *Nunez* consent judgment Articles III (Defining Classes of Use of Force Class A, Class B, and Class C), IV (Use Of Force Policy); V (Use of Force Reporting and Tracking), VII (Use of Force Investigations) PAC Ex. "B."  Yet plaintiffs describe the reporting system as being "[a]t the center of Defendants' cover-up, …" PAC ¶ 88; *see*  PAC ¶ 124 (describing the A, B, C, classification system as mislabeling).

The PAC claims that misreporting is the cause of all of the evils cited in the first 8 of 9 areas of DOC decisions cited in the original complaint.  Plaintiff's motion to amend includes a veritable mountain of proof of the continuing and intensive oversight of the City correctional system by: (1) the *Nunez* monitor and the *Nunez* Court, (2) the Department of Justice which was a party to *Nunez;* (3) the various advocates for inmates, some of whom were a party to *Nunez;* (4) the State Commission of Corrections ("SCOC"); (5) State and City workplace violence laws; (6) the City's Board of Correction; (7) the Mayor; (8) the City Council; (9) the press, and (10) the various unions, including COBA, representing DOC staff, plaintiffs here – all of which appear in the exhibits to the PAC.  *See* table, annexed hereto as Appendix "A,"; *Nunez* Consent Judgment and Monitoring Reports (Ex. C, J, M)[3]; Mayor's Management Report excerpts (Exs.

---

[3]  The exhibits referred to are the exhibits to the PAC.  The PAC, the proposed amended complaint, is annexed to the Devasia Declaration as Exhibit "B."  *See* n.1, above.  Plaintiffs have attached the Third and Fourth *Nunez* Monitoring Reports as Exhibits J and M.  The latest

D, E, and I [News Report On MMR]); Board of Correction, (Exs. F, W, X, Y, Z); State letter, (Ex. P and DD); Comptroller's Report (Ex. G); Workplace Violence Reports (Ex. AA, BB, CC, CC [Part 2]); *see also* Table of Contents of Plaintiffs' Motion, which is annexed hereto as Appendix A.  Press reports are also used to illustrate the PAC, as are statements to the City Council.  *See* Exs. A, B, G, H, I, K, N, O, Q, S, T, U, and GG.  This massive and continuing oversight by a myriad of agencies ensures that, contrary to the conclusion urged by COBA, it would be impossible for the DOC to cover-up any statistics (meaningful or otherwise) concerning violence involving staff or inmates at DOC facilities.

COBA itself <u>agrees</u> that DOC is subject to the most continuing and rigorous oversight.  PAC ¶ 9.  COBA seeks to use this massive amount of statistics to bolster their case in the PAC.  However, plaintiffs are merely seeking to bolster allegations already accepted by the Court in the Decision; that is, that violence in DOC facilities has <u>risen</u> and that the 9 policies are responsible for that increase.  Decision at 3-5.  Indeed, PAC Exhibit "H," is a newspaper article citing the "18%" increase in violence cited in both the original complaint and in the Decision.  *See* Decision at 4; PAC ¶ 48.

The PAC seems to ignore the plain and simple fact that while claiming misreporting (including misclassification) they rely on those same statistics to show an increase in violence against staff.  PAC ¶ 13.  This cannot suffice to plausibly allege some sort of cover-up of violence in DCO's facilities.  The various monitors, oversight agencies, the Comptroller,

---

monitoring report, the Sixth Monitoring Report, for the period January 1, through June 31, 2018, has been filed with the *Nunez* Court as *Nunez* Dkt. 317.  That Report notes that "[t]he Department has also maintained a transparent, collaborative, and constructive relationship with the Monitoring Team."  Report at 3.  The Report also notes that "[a]long with scrutiny from the Monitoring Team, the Department remains under significant scrutiny from various City and State stakeholders, often creating competing priorities and initiatives that make it difficult for the Department to sustain its focus on one area of compliance."  *Id.*  The *Nunez* Monitoring Reports recognize the vast challenges presented to DOC to balance all of the competing interests including that of its employees.

the City Council, the unions and the press all cite to these statistics and reports of increased violence to justify their concern about DOC facilities.  The PAC is blatantly and unabashedly internally inconsistent and thus fails to plausibly allege a policy of misreporting.  Rather, COBA prefers a reporting system of its own to record incidents rather than the one negotiated in the *Nunez* consent judgment and the Use of Force Directive.  It need only be noted that if the City is misreporting to make it look like there is a <u>decrease</u> in violence in correctional facilities then how is it that the all of these groups and plaintiffs cite to them to show the increase in violence of the facilities.  *See, e.g.,* PAC ¶¶ 6 (intentional cover-up of violence), 48 (DOC reports stabbings and slashing increase of 18%).

The only instance of what might be stretched to be called deliberate misreporting cited by plaintiffs is the alleged 2011 misreporting by Gumusdere.  PAC ¶¶ 76-81; 127, and 128. The PAC alleges that this misreporting was condoned by DOC in 2011 because the allegation was removed from a draft report and Gumusdere was later promoted.  Assuming, *arguendo*, that all of the allegations are true this single instance occurring 7 years ago hardly suffices to allege a policy of misreporting.  *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)(plurality)(in a § 1983 a single incident does not state a policy under *Monell*).  Certainly, this single incident, which <u>preceded</u> *Nunez*, and Directive 5006R-D and the classification system at the heart of this case, cannot suffice to allege a system-wide misreporting problem.  In any event, there is no allegation that this incident caused <u>any</u> injury to any staff member or inmate for that matter, let alone an intentional injury as required by the law of Substantive Due Process.  Nor is there any allegation that the misreporting was due to intent to cause injury to COs or even with deliberate indifference to CO injuries.  The Gumusdere allegations of the PAC cannot suffice to state a plausible Substantive Due Process claim.

- 17 -

The PAC adds further instances of unacceptable violence against COs in DOC facilities.  *See, e.g.,* PAC ¶¶ 5, 7, 8, 6, Exhibits "D," "E," "H," "I," "J,""K," "L," "M," "N," "Q," "R," "W," "X," "Y," "Z," "AA," BB," "CC," "CC (Part 2)," "EE," and "GG."  These are the same sorts of allegations made in the original complaint but involving different inmates and COs.  More importantly, the Decision assumed for purposes of decision that there had been an increase in violence at DOC correctional facilities and that the increase in violence was caused by the 9 DOC policies cited by plaintiffs.  *See* Decision at 3-5 (Dkt No. 51).  The Court held:

> Plaintiffs also allege that these specific incidents and the alleged increase in the rate of violence against DOC staff are attributable to Defendants' aforementioned policies and practices.

Decision at 4 (Dkt. No. 51) (citations omitted).  Thus, all of these allegations and exhibits, the vast majority of the 933 pages of exhibits to the Devasia Declaration, serve to do nothing but reassert that which was accepted by the Court in the Decision in the first instance.  These allegations and exhibits do not serve to rectify the gaping lapses in the original complaint.

While these events are as unacceptable to defendants as they are to plaintiffs, the replication of allegations in the PAC does not make either the new or the original allegations a violation of the Constitution.  *See Lombardi*. 485 F.3d at 83-84; *Benzman*, 523 F.3d at 127-28 (both cases concern allegedly deliberate inaccurate pronouncements of the safety of the air following the 9/11 attack).  Nothing in the government's choice of policies in this case is "arbitrary, conscience shocking, or oppressive in a constitutional sense."  *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).  Nothing in the adoption of the classification system of *Nunez* and the new Use of Force Directive adopted as required by Nunez, reflects any intent to injure staff.  Rather, the *Nunez* consent judgment was intended to more carefully circumscribe and track violence in DOC facilities.  This balancing, including the classification

system, which is an integral part of the *Nunez* consent judgment and the Use Of Force directive, plaintiffs describe as the core of their case and as a violation of Substantive Due Process.  As held in the Decision, and as echoed in Hirsch, policies resulting from a balancing of interests cannot constitute a Substantive Due process violation.  This is an end to the PAC and it must be dismissed.

Moreover, as defendants have noted in our previous filings, there are no facts which show the challenged policies, including alleged misreporting (whether by classification or by random acts of alleged suppression), were the "but for," let alone the proximate, cause of any of these instances of violence.  Statistical increases in violence of inmates on staff do not suffice to plausibly allege a chain of causation between a specific policy and a specific incident.  Nor are the imaginative speculations of plaintiffs which attempt to link <u>every</u> alleged policy which was the subject of the original complaint to the alleged misreporting of incidents, in accordance with plaintiffs desire to mold their complaint to their view of the Decision.

For example, the original complaint concerned itself with the 14-point reform agenda.  *See* Decision at 3, (citing complaint ¶¶ 21-22).  Here, that same 14-point agenda is front and center once again.  PAC ¶ 5, 42, 46.  It appears as part of the sub-heading at the very start of the PAC's allegations just after the heading "General Allegations," (just after the PAC's description of the parties, jurisdiction and procedural history).  *See* PAC ¶¶ 32-46.  It re-appears prominently in the second sub-heading asserting that the "Reform Agenda Has Increased the Risk of Harm To Correction Officers" rather than alleging that the increased risk is due to misreporting.  *See* PAC ¶¶ 46-73.  Only then is there a section on alleged concealment practices, and this section is devoted to the alleged 2011 Gumusdere incident and a recitation concerning a second lawsuit by a former DOC manager named Daniels.  As previously noted there is no

allegation that Gumusdere acted to injure COs and the *Daniels* suit also is devoid of such allegations.[4]   It is the alleged 14-point agenda that is the gravamen of plaintiffs' PAC, just as it was in the original complaint.   Here as there plaintiffs have failed to state a claim.

For another example, the original complaint criticized the restrictions on the use of punitive segregation.   *See* Decision at 3.   Those claims (areas 1 and 2 of 9) were dismissed by the Decision.   The PAC now repeats the very same claim and ascribes the "underuse" of punitive segregation to the alleged misreporting of incidents.   *See* PAC ¶¶ 35 (restricted as to adolescents under *Nunez*), 130, and 145.   COBA alleges that misreporting may lead to the underuse of punitive segregation which may lead to an increased risk of harm to COs.   There is no example of any misreporting that has actually led to the under use of punitive segregation.   Nor is there any concrete allegation of fact showing that more punitive segregation would reduce assaults on staff, although plaintiffs seem to imply it with respect to the two new named defendants. There are no factual allegations, as opposed to conclusory allegations, linking misreporting to under use of punitive segregation, to increased risk of violence to COs.   All there is are conclusions. Further, the PAC makes these conclusory allegations even though the PAC simultaneously alleges that there is a backlog of inmates for punitive segregation.[5]   This is one more internal inconsistency in the PAC and the hallmark of an attempt to squeeze the square peg of misreporting into the round hold of increased risk of violence.   Again there are no allegations

---

[4]The *Daniels* suit is the subject of a partial motion to dismiss which is pending before this Court. *See Daniels v. City of New York*, 17 Civ. 9960 (LGS) (Dkt Nos. 40, 41, 45 and 46).   The alleged misreporting is part of a discrimination claim and is not alleged to have had an effect on COs or to be part of a policy of misreporting.

[5] Plaintiffs complain of the ban on the use of punitive segregation for 16 and 17 year olds and the decrease for 18-21 year olds.  *See* PAC ¶¶ 35-37.  The elimination of punitive segregation for16 and 17 year olds was part of the *Nunez* consent judgment.

that the classification policies were adopted to decrease the use of punitive segregation let alone with intent to raise the risk of harm to COs.  Thus, the PAC's Substantive Due Process claims must fail.

Similarly, the classification of inmates, claim 7 of 9, was previously dismissed by the Court in the Decision.  *See* Decision at 4.  The PAC attempts to resurrect this claim by arguing that classification of inmates is adversely affected by the alleged misreporting including misclassification of incidents.  The misclassification of inmates, the PAC theorizes, results in injury to plaintiffs.  *Compare* Complaint ¶¶ 119-121, 124 *with* PAC ¶¶ 15, 39.  There are no fact allegations that might permit an inference that the misreporting was intended to cause a misclassification of inmates so that COs might be injured.  This is, once more an end to the PAC's allegation that misreporting is the root of all evil.[6]

In sum, the "shocks the conscience" test of Substantive Due Process is at the core of the holdings of the Supreme Court in *DeShaney, Lewis,* and *Collins*, and intentionally limit the amorphous doctrine of Substantive Due Process to only the most outrageous and egregious cases of government oppression.  *See Lombardi*, 485 F.3d at 79) (quoting *Pena v.DePrisco,* 432 F.3d 98, 112 (2d Cir. 2005)).  It is also in keeping with the admonition in *Lombardi*, that the

> Substantive Due Process liability should not be allowed to inhibit or control policy decisions of government agencies, even if some decisions could be made to seem gravely erroneous in retrospect

485 F.3d at 84.  Despite all the PAC's attempts to couch the original complaint's 9 areas of

---

[6] Plaintiffs do not attempt to resurrect their claims concerning the "chair," a body scanner which allows detection of contraband hidden on or in a person, which was part of claim 8 of 9.  This is probably because New York has recently enacted statutory authorization for use of the chair at correctional facilities.  *See* original complaint claim 8; Decision at 4; *see* Laws of New York, Ch. 313 of 2018 (signed October 2, 2018) (Bill No. A.6838/S.5337).  Prior to the enactment, the use of body scanners on inmates was prohibited by New York law.  N.Y. Public Health L. § 3502.

concern as flowing from misreporting, the 9th claim, the PAC remains no more than a claim that the DOC has insufficiently protected COs, not because of misreporting or an intent to cause harm to COs or anyone else, but, rather because of an excess of solicitude for inmates.  This cannot suffice to state a plausible claim of violation of Substantive Due Process and the PAC must be dismissed.

**C.      State Law Claims**

Plaintiffs attempt to state a state law breach of special duty claim.  *See* PAC claims 4 and 5, ¶¶ 204-16; Decision at 7.  The Decision observed in passing that a "special relationship" under the Due Process Clause was a theory separate and apart from the state created danger theory that animated the complaint.  Decision at 7 and n. 3.  Plaintiffs have <u>not</u> alleged a special relationship in the PAC.  Just this past August, in *Donohue* the Court held that

> In the context of the special relationship exception, courts have held that "consensual employment agreements do 'not entitle the employee to constitutional protection from workplace hazards' even if the government employee 'risk[s] losing her job if she did not submit to unsafe job conditions.'"

2018 U.S. Dist. LEXIS 140812 at *18 (citations omitted), *adopted by and case dismissed by*, 2018 U.S. Dist. LEXIS 158176 (E.D.N.Y. Sept. 17, 2018).

Plaintiffs' State law claims are summed up in plaintiffs' declaration

> In sum and substance, these claims allege that by engaging in the described concealment practices, Defendants have **breached their duty to use due care** and maintain a safe and secure environment, where workplace hazards are minimized for Plaintiffs.

Devasia Declaration, Dkt No. 57, ¶ 38 (emphasis supplied).  This cannot suffice to create a special duty and would create an occupational and safety act out of common law negligence.

In *McLean v. City of New York*, the New York Court of Appeals noted that "[w]e have long followed the rule that an agency of government is not liable for the negligent performance of a governmental function unless there existed 'a special duty to the injured person, in contrast to a general duty owed to the public.'"  12 N.Y.3d 194, 199 (2009) (citations omitted).  In *McLean*, the Court of Appeals declined to find that the Social Services Law created a special duty in the City because such a duty would be inconsistent with the statutory scheme. 12 N.Y.3d at 200.  Moreover, in New York, worker's compensation laws prevent employee suit sounding in tort against the government employer.  *Burlew v. Am. Mut. Ins. Co.*, 63 N.Y.2d 412, 417 (1984)(citing N.Y. Workers Comp. L. § 29(6)).

Here, plaintiffs cite to New York's Workplace Violence Act but they do not contend that this statute creates a private right of action, or repeals Workers Compensation Law. There is nothing in the Act making an employer liable for injuries inflicted by a private person on a government employee.  Nor is the act a substitute for the New York Public Employee Safety and Health Act ("PESH"), which has long been held <u>not</u> to provide a private cause of action.  *See Capers v. Giuliani*, 253 A.D.2d 630, 633 (1st Dep't 1998), *motion dismissed and app. denied*, 93 N.Y.2d 868 (1999).  Rather, PESH has its own administrative processes and these must be exhausted.  *Id.*  The Workplace Violence Act does not eviscerate any of these laws or case law and thus, PAC claims 4 and 5 fail to state a claim.[7]

---

[7] Negligence claims must all be dismissed for failure to file a timely notice of claim under New York General Municipal Law §§ 50-i and 50-e.  The burden is on plaintiffs to plead and prove compliance with the notice of claim statutes.  *Camarella v. East Irondequoit Cent. School Board*, 34 N.Y.2d 139 (1974).  The notice of claim statute applies to pendent state tort claims such as those of PAC claims 4 and 5.  *See Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).

D.      **Class Allegations**

The PAC purports to be a class action although it does not offer any real class definition.  Rather, the PAC describes the class as all COs hurt by DOC policies.  The PAC seems to imply that this would include just about all COs.  While the PAC recites the characteristics of a class action, numerosity, uniformity etc., the PAC does not offer fact allegations that might permit an inference that there is a class much less one that should be certified.

Under Rule 23(a), plaintiffs seeking certification must demonstrate, first, that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) (quoting Rule 23(a)).  "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Id.* at 348 (citations omitted).  Therefore, the factors of Rule 23(a) are meant to closely guard the gate to ensure that the exception does not swallow the usual rule.[8]

Here, there is no class definition and not the remotest attempt to show a pathway from offending policy to actual injury.  Rather, there is an amorphous cloud projected by the PAC and meant primarily to undo the classification system of *Nunez*, and Directive 5006R-D which was promulgated in accordance with the parameters set forth in *Nunez*, which the PAC

---

[8] Oddly, although the PAC is denominated a class action with class allegations, the PAC continues to sue on behalf of "John and Jane Does 1-2,000" and still maintains the COs' union, COBA as a plaintiff.  *See Monahan v. New York City Department of Correction*, 214 F.3d 275 (2d Cir. 2000)(COs are in privity with COBA and preclusion applies from prior COBA litigation to later suit by individual CO).

describes as the center of its complaints of misreporting.  Indeed, the lack of a common thread in this case precludes class certification.  There are no facts from which it can be inferred that there is a direct causal connection from misreporting to injury to a CO.  Thus, there is no method of distinguishing those COs who would fall in the class from all those outside the class.

Moreover there is no commonality here.  The PAC alleges completely different injuries to two particular COs.  One was injured by an inmate on one day and again by the same inmate the very next day.  The other was not.  There is simply no common thread and this prong of the class action test fails.

## CONCLUSION

**WHEREFORE,** defendants respectfully request that plaintiffs' motion to amend the complaint be denied, that the complaint and the proposed amended complaint be dismissed in their entirety, that the request for relief be denied in all respects, that judgment be entered for defendants, and that defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
November 16, 2018

**ZACHARY W. CARTER**
Corporation Counsel of the
   City of New York
Attorney for Defendants
100 Church Street, Room 2-187
New York, New York 10007-2601
(212) 356-2628
aschlesi@law.nyc.gov

By:  /s/ *Alan Maer Schlesinger*

Alan M. Schlesinger
Assistant Corporation Counsel
AS-2673

# APPENDIX A

**Table of Contents of Plaintiffs' Motion To Amend**

| Dkt. No. | Description | No. Of Pages |
|---|---|---|
| 56 | Notice of Motion | 2 |
| 60 | Declaration of Cynthia Devasia | 10 |
| 60-1 | Devasia Decl. Exhibit A - Court Order Dismissing Complaint | 15 |
| 60-2 | Devasia Decl. Exhibit B – Proposed Amended Complaint (PAC) | 50 |
| 60-3 | Devasia Decl. Exhibit B – PAC Exhibit A To J | 152 |
| 60-4 | Devasia Decl. Exhibit B – PAC Exhibit K-Q | 124 |
| 60-5 | Devasia Decl. Exhibit B – PAC Exhibit R – W | 123 |
| 60-6 | Devasia Decl. Exhibit B – PAC Exhibit X – Z | 146 |
| 60-7 | Devasia Decl. Exhibit B – PAC Exhibit AA | 56 |
| 60-8 | Devasia Decl. Exhibit B – PAC Exhibit BB | 128 |
| 60-9 | Devasia Decl. Exhibit B – PAC Exhibit CC Part 1 | 50 |
| 60-10 | Devasia Decl. Exhibit B – PAC Exhibit CC Part 2 | 28 |
| 60-11 | Devasia Decl. Exhibit B – PAC Exhibit DD – GG | 33 |
| 61 | Memorandum of Law | 16 |
| | **Total Pages** | 933 |

**Exhibits To The Proposed First Amended And Supplemental Complaint (PAC)**<u>*</u>

(The PAC and the PAC's Exhibits Are Exhibit B to the Devasia Declaration)

| PAC Ex. | Description |
|---|---|
| A. | 3/10/16 Commissioner Ponte Statement to City Council |
| B. | 3/12/15 City Press Release 14 Point Plan on Inmate On Inmate Violence |
| C. | 10/21/15 *Nunez* Consent Judgment |
| D. | MMR On DOC w/ stats |
| E. | 2018 MMR On DOC w/ stats |
| F. | 6/13/17 DOC Presentation to Bd of Correction Young Adult Plan<br>Ends Punitive Segfor 16 and 17 year olds; Max of Punitive Seg is 30 days<br>AOS by 18-21 down 27% FY16 to FY 17<br>2014-2017 funding Youth Programming $250K to almost $20M |
| G. | 11/28/16 *Wall Street Journal* - Comptroller Says Cost of DOC rose 50% in 5 yrs;<br>AOS decline; Staff:Inmate ratio better; ADP less than 10,000<br>11/2016 Comptroller's Rpt, AOS down 103.2/1,000 ADP to 94.8 (FY 2015 to FY2016); Avg Daily Cost/Inmate $112,665 (2d highest is Chicago at $55,636) |
| H. | 3/9/17; *Daily News*; 18% Increase in Stabbing; AOS down by 11%<br>(AOS with/ serious injury to staff down 31%) |
| I. | 9/18/17 *Post* MMR says Rikers Island violence rose |
| J. | 3rd *Nunez* Monitoring Rept 8/1/16-12/31/16 – Excerpts (pp. 24, 227, and 233) |
| K. | 3/14/17 *Daily News* Clinicians Want Lock Down For Rounds |
| L. | 4/28/17 Letter NYS To DOC |
| M. | 4th *Nunez* Monitoring Rept 1/1/17-6/30/17 – Excerpt (p. 14) (Reducing Youth Violence) |
| N. | 5/20/18 *Daily News* - Violence At Non-Rikers Jails |
| O. | 3/2016 *Newsday* Comptroller Rpts number of NOCs on the rise |
| P. | 2/2018 State Comm'n Corrections Rep't on State's Worst Offenders |
| Q. | 5/9/17 *Daily News* Lockdown on Bronx Barge 3 AOS<br>Other Press same incident |
| R. | 2018 COBA Briefing Booklet |
| S. | 9/21/14 *NY Times* Data Distorted by 2 Supervisors in 2011 to show decrease in violence; 2 |

---

*"MMR" refers to the Mayor's Management Report; "AOS" to an assault on staff, "ADP" to adult daily population, "FY" to the City's Fiscal Year, and "NOC" to notice of claim under N.Y. Gen. Mun. L. §§ 50-i and 50-e.

| PAC Ex. | Description |
|---|---|
| | Promoted; Comm'r says it was negligence not intentional |
| T. | 3/2015 *Daily News* + other Press Re: Statistics |
| U. | 7/24/18 *Chief* DOC's Gumusdere retires; 6 assaults downgraded in stats in 2011 |
| V. | 5/7/18 Amended Complaint *Daniels v. CNY*, 17 Civ. 9960 (LGS), 6 plaintiffs; alleging race discrimination in promotions; some plaintiffs forced to retire or terminated; claims false violence statistics |
| W. | 4/2017 Bd of Correction on Enhanced Supervised Housing (ESH) |
| X. | 7/2017 Bd of Correction on ESH |
| Y. | 2/2018 Bd of Correction on Splashing |
| Z. | Splashing Log Book Entries By Facility (129 Pages) |
| AA. | Workplace Violence Incidents 2015 Table (56 Pages) |
| BB. | Workplace Violence Incidents 2015 Table (128 Pages) |
| CC. | Workplace Violence Incidents 2015 Table (50 Pages) |
| CC.-2 | Workplace Violence Incidents 2015 Table (28 Pages) |
| DD. | 7/28/14 NYS To DOC Re: Disciplinary Confinement |
| EE. | 8/3/16 Letter COBA To DOC; Union disagrees w/ CNY statement that AOS ↓ to 394 is substantial progress ; Need More Punitive Seg; Max reduced 90 days to 30; Re-arrest OK; but no punitive seg. for less than 21 yr old; 20 yr old Re-arrest cannot get Punitive Seg.; wants restore Punitive Seg for those under 21 yrs old also Ability to withdraw Privileges SUCH AS shower and Law Library.  8/22/18 Letter COBA To DOC Workplace violence  2/9/18 Letter COBA To DOC - Let's Discuss COBA Proposals; Proposals Attached (Punitive Seg Is 1st 2 issues; less than 20 yrs old no punitive seg; withdraw privileges such as visits, telephone, haircut, commissary, library as discipline; Don't Want To Debate Pros and Cons of Punitive Seg But restrictions on use have increased violence) |
| FF. | 8/22/18 Maria Guccione of DOC to COBA Re: Workplace Violence Stats |
| GG. | 9/1/16 *Daily News* Inmate Indicted For Slashing Staff |