UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CORRECTION OFFICERS' BENEVOLENT
ASSOCIATION, INC., ANTHONY ROMANO,
individually and on behalf of all others similarly
situated, BRYAN ASHENDORF individually and
on behalf of all others similarly situated, and JOHN
and JANE DOES 1 – 2,000,

        Plaintiffs,

   -against-

THE CITY OF NEW YORK, MAYOR BILL DE
BLASIO, NEW YORK CITY DEPARTMENT OF
CORRECTION, and COMMISSIONER CYNTHIA
BRANN,[1]

        Defendants.
------------------------------------------------------------------X

Case No. 17-CV-2899 (LTS)

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO FILE AN AMENDED AND SUPPLEMENTAL COMPLAINT

**KOEHLER & ISAACS LLP**
Attorneys for Plaintiffs
61 Broadway, 25th Floor
New York, N.Y. 10006
(917) 551-1300

Attorney of Record: Cynthia Devasia, Esq. (CD0320)

---

[1] By Opinion and Order dated May 30, 2018 Opinion & Order (Decision) which dismissed the Original Complaint (OC) in this action without prejudice, this Court substituted Defendant Commissioner Joseph Ponte with current Department of Correction Commissioner Cynthia Brann.

1

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I. THE FASC PLAUSIBLY STATES A VALID CLAIM FOR SUBSTANTIVE DUE PROCESS VIOLATIONS. ............................................................................................ 2

        A.  The FASC Cures the OC's Defects And Demonstrates How Defendants' Cover-up Increases Danger In the Workplace. ............................................................................ 2

        B.  The FASC Is Not a Collateral Attack On Nunez Or Its Policies. ................................. 5

        C.  The FASC Alleges the Requisite States of Mind. ....................................................... 6

        D.  The FASC's Failure To Act Allegations Constitute Culpable Conduct. ..................... 8

        E.  The FASC's Allegations Regarding Defendants' Abuse Of Power Constitutes Conduct That Shocks the Conscience. ..................................................................................... 9

        F.  Workplace Safety Issues Are a Valid Basis To Assert a State Created Danger Substantive Due Process Violation. ........................................................................... 14

    II. DEFENDANTS' ARGUMENTS AGAINST CLASS CERTIFICATION ARE MERITLESS ............................................................................................................... 16

CONCLUSION .......................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

Bell Atl. Corp. v. Twombly, 550 U.S. 266 (2007) .................................................. 2, 4, 17
Benzman v. Whitman, 523 F.3d 119 (2d Cir. 2008)................................................. passim
Briscoe v. Potter, 355 F.Supp. 2d 30 (D.D.C. 2004), aff'd, 171 Fed.Appx.850 (D.C. Cir. 2005)....
.................................................................................................................................. 11, 14
Collins v. City of Harker Heights, 503 U.S. 115 (1992) .......................................... 15, 16
County of Sacramento v. Lewis, 523 U.S. 833 (1998). .......................................... 9, 11, 14
Estate of Phillips v. District of Columbia, 455 F. 3d 397 (D.C. Cir. 2006).......................... 111,14
Gormley v. Wood-El, 93 A.3d 344 (N.J. Sup. Ct. 2014)................................................ 18
Hirsch v. City of New York, 2018 WL 4846523 (2d Cir. Oct. 4, 2018).............................4
In re Margulies, 517 B.R. 441 (S.D.N.Y. 2014) ........................................................... 7
Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246 (2d Cir. 2001). ............................... 9, 10
Kaucher v. County of Bucks, 455 F.3d 418 (3d Cir. 2006)............................................. 14
Kowaleski v. Lewis, 643 F. Supp. 2d 259 (N.D.N.Y. 2009) ...................................... 11,14
L.W. v. Grubbs (Grubbs I), 974 F.2d 119 (9th Cir. 1992)............................................. 14
Lombardi v. Whitman, 485 F.3d 73............................................................................... passim
McClary v. O'Hare, 786 F.2d 83 (1986) ........................................................................ 10
Okin v. Village of Cornwall–on–Hudson Police Dep't., 577 F.3d 415 (2d Cir. 2009)................. 3,8
Pauluk v. Savage, 836 F.3d 1117 (9th Cir. 2016)................................................................ 14, 15
Pena v. DePrisco, 432 F.3d 98 (2d Cir. 2005) ............................................................ passim
Kaucher v. County of Bucks, 455 F.3d 418 (3d Cir. 2006)..............................................16
Kowaleski v. Lewis, 643 F. Supp. 2d 259 (N.D.N.Y. 2009) ...................................... 13, 16
Shillingford v. Holmes, 634 F.2d 263 (5th Cir. 1981)....................................................... 10
Smith v. Half Hollow Hills Cent. School Dist, 298 F.3d 168 (2d Cir. 2001)................................. 9
Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011)................................................... 16

**Other Authorities**

Fed R. Civ. Proc. 23......................................................................................................... 16
Fed. R. Civ. Proc. 15(a)(2)…............................................................................................. 2
Fourteenth Amendment. U.S. Const. .......................................................................... 1,2
Restatement (Second) of Torts § 8A, Cmt. b………................................................... 8

## INTRODUCTION

Defendants oppose Plaintiffs' Motion for Leave to File an Amended and Supplemental Complaint (Motion for Leave). The proposed First Amended and Supplemental Complaint (FASC) challenges Defendants' policy, practice and/or custom[1] of falsely reporting violence in the City Jails as a state created[2] danger substantive due process violation under the Fourteenth Amendment. Defendants argue the FASC is futile by deliberately mischaracterizing it as a number of things that it is not. See generally Defendants' Memo (Deft. Memo). Part of Defendants' red herring strategy is to paint the FASC as a collateral attack on Nunez. Presumably, they believe this tactic will be effective because this Court presided over Nunez and continues to enforce it. However, as explained below, this transparent ploy should be rejected because the FASC does not challenge Nunez or any of its related policies. Rather, the FASC seeks to uphold the same Nunez objective: accurate reporting of jail violence.

Defendants also urge this Court to refrain from expanding substantive due process protections to workplace safety issues suggesting public employees are somehow exempt from constitutional protection. In doing so, Defendants disregard the fact that several courts found the state created danger doctrine viable in this context. They also ignore that the conduct challenged here --- government's sheer abuse of power --- is precisely what substantive due process wards against. The absurdity of Defendants' arguments is inescapable because, while they protest for the first time that it is "impossible" to misreport violence as there is extensive oversight, the New York City Board of Corrections (BOC) has once *again* confirmed that it is not only possible, but that it is factual. The BOC recently and publically issued an incriminating report finding that "DOC is underreporting serious [inmate] injuries…" by almost **81%**. See E. Husamudeen's

---

[1] The use of the term "policy" herein also encompasses the terms "practice" and "custom."
[2] Reference to "state created danger" herein also includes the term "state increase danger."

1

Declaration (Husamudeen Decl.) at ¶10 and BOC Serious Injury Report dated January 2019 attached thereto as Exhibit A. In sum, Defendants' arguments opposing the FASC's filing, much like their reporting practices, are misleading and specious at best.

Plaintiffs now submit this Reply and respectfully urge the Court to grant leave to amend where, as here, the FASC's allegations nudge the claims well past the line between conceivable and plausible, and given the nature of the allegations, "justice so requires" granting leave. Fed. R. Civ. P. 15(a)(2); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007).

## ARGUMENT

### I. THE FASC PLAUSIBLY STATES A VALID CLAIM FOR SUBSTANTIVE DUE PROCESS VIOLATIONS.

#### A. The FASC Cures the OC's Defects And Demonstrates How Defendants' Cover-up Increases Danger In the Workplace.

This Court should grant Plaintiffs' Motion for Leave to Amend because the FASC asserts non-conclusory, factual allegations demonstrating that Plaintiffs' claim that Defendants have violated their substantive due process right to be free from state created or increased dangers under the Fourteenth Amendment is not futile. See Fed. R. Civ. P. 15(a)(2). In its Decision, this Court held, "to succeed on a state-created danger substantive due process violation claim, a plaintiff must establish that the defendant caused the plaintiff to suffer harm through an affirmative action that was of such character as to shock the conscience." Decision at p. 8. The Court further elaborated:

> A determination as to whether state-sanctioned action shocks the contemporary conscience requires a careful evaluation of the particular circumstances of the case, including the nature of the state action, the magnitude and form of the harm inflicted on the plaintiff, and the state of mind of the defendants. Lewis, 532 U.S. at 850-854; cf Pena, 432 F.3d at 114 (citations and internal explication omitted).

2

Id. On the issue of state of mind, the Court noted there is a culpability continuum whereby "intent to injure/harm" or "deliberate indifference" can shock the conscience. Id. at pp. 8-9.

The FASC alleges a breach of substantive due process rights based on the ninth challenged policy from the Original Complaint (OC) – the Defendants' policy practice and/or custom of deliberately underreporting and misreporting violence in an effort to cover up the true nature, magnitude and frequency of violence occurring within the City Jails. As set forth more fully in Plaintiffs' Motion for Leave to Amend, the FASC sufficiently details Defendants' concealment practices --- misreporting, underreporting, non-reporting and a failure to hold inmates accountable for their violent actions.[3] Contrary to Defendants' illusory claim that the FASC does not allege any facts demonstrating a link between the misreporting and the injuries caused, the FASC cures the defects of the OC by illustrating, in a non-conclusory fashion, how the violence cover-up increases the danger and risk of harm[4] to Plaintiff Correction Officers and inmates alike.

---

[3] Defendants cover-up jail violence by: 1) misclassifying violent incidents and downgrading their severity. FASC at ¶¶ 89-108 (assaults on Correction Officers or inmates are misclassified under the innocuous label of "log book entry" instead of as the criminal acts they are; yet same assaults on other staff classified as "criminal acts"); see also ¶¶ 120-22 (CO slashings reported as an assault instead); 2) failing to report – or non-report violence incidents. Id. at ¶¶ 126-29 (unreported inmate assaults on a CO); Id. at ¶¶ 122-24 (unreported sexual assault on a CO); 3) underreporting incidents Id. at ¶ 126, 128 (omitting key details to hide true levels of violence); 4) failing to classify incidents accurately in accordance with their own classification system. Id. at ¶¶124-25; Id. at 125 (workplace violence data records); 5) misreporting inmate splashings with known and unknown liquids contrary to both law and DOC policy." Id. at ¶¶ 109-114; 6) misreporting the incidences of inmates spitting on COS. Id. ¶¶ 115 – 17; 7) failing to hold inmates accountable for their violent actions. Id. at ¶130 (in 2014 over 800 inmates adjudicated as guilty of violating the rules after a due process hearing went unpunished)(several hundred inmates owing punitive segregation time will likely never serve it); 8) discouraging the reporting of infractions. Id. at ¶ 131; 9) failing to investigate and process infractions against inmates. Id.;10) failing to hold inmates accountable for spitting and splashing against their own regulations. Id. ¶ at 132.

[4] Harm in the state created danger context also includes an enhanced or increased risk of harm. Decision at p. 8, n. 4; See also Okin v. Village of Cornwall-on-Hudson-Police Dept., 577 F.3d 415, 427-28 (2d Cir 2009).

3

In short, hiding the true levels of violence compromises the institutional response to a violent inmate resulting in adverse impacts on inmate housing, classification, whether or not inmate discipline is imposed, the degree of inmate discipline imposed, the custodial practices and management strategies applied to inmates like security measures and observation practices, the provision of necessary behavioral and therapeutic services to inmates, and the provision of equipment and resources ensuring the safety and security of the jails to staff. FASC at ¶¶ 135 – 47. The FASC also illustrates three examples of how the misreporting of an initial violence incident was the "but for" cause of a secondary attack and injury by the same inmate of either the same or another officer --- thus, furnishing the causation link the Decision opined was missing from the OC. Id. at ¶¶ 148-65. The false reporting of these initial attacks as mere "log book entries" downplayed the severity of these incidents and resulted in an insufficient institutional response (no investigation, non-punitive measures taken etc.). Id. As a result, in each of these incidents, the same inmate went on to attack again with impunity. Id.

In support of its claims, the FASC also provides a significant amount of data demonstrating an increase in jail violence. Id. at ¶¶ 47-73. Although Defendants argue that the FASC's claims of a violence cover-up are undermined by the increased violence data (Def. Memo at p. 17), they ignore what the FASC makes plainly clear: that the *true* level of violence would be far greater if Defendants did not engage in their concealment practices. FASC at ¶¶16 and 117.

Against this backdrop, Defendants are hard pressed to argue that Plaintiffs have not met the plausibility standard for granting leave. Twombly, 550 U.S. 544, 559 (2007). The FASC's detailed allegations allow the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged. See Hirsch v. City of New York, 2018 WL 4846523 (2d Cir. Oct. 4, 2018). Thus, the FASC has set forth facially plausible claims and avoids futility.

### B. The FASC Is Not a Collateral Attack On <u>Nunez</u> Or its Policies.

Defendants' opposition to the FASC rests solely on a campaign of deliberate mischaracterization designed to paint the FASC as something it is not. First, Defendants claim the FASC re-litigates that which the Court dismissed in its Decision. Def. Memo at pp. 3, 15,16, 19-21, Specifically, Defendants argue that the FASC attempts to shoehorn the eight policy bases from the OC – which were rejected by this Court -- into the ninth basis (the deliberate underreporting and misreporting of violence). This argument fails because it distorts reality. While the FASC references aspects of the eight previously-challenged policies as *background* information, it is clear the FASC's main and only gravamen – clearly set forth in the claims for relief -- concerns the false reporting and cover-up of Jail violence which has been an ongoing and continuous practice[5]. FASC at ¶¶181-202.

Next, Defendants' red herring strategy resurrects an argument from their Motion to Dismiss the OC and claims the FASC is a collateral attack on <u>Nunez</u> and its various resulting policies. Deft. Memo at 2, 4, 18, 21. Defendants mischaracterize the FASC as a challenge to the incident classification system ultimately derived from <u>Nunez</u> and reasons, misleadingly, that the FASC must allege an "intent to harm" behind the adoption of the classification system. <u>Id.</u> Defendants then reiterate an "intent to harm" mantra by describing all the allegations in the FASC as challenges to <u>Nunez</u> or a <u>Nunez</u>-related policy like the reporting requirements or the Use of Force Policy. <u>Id.</u> This stretch-of-an-argument is a gross distortion of the FASC's scope and this Court should, again, reject these <u>Nunez</u> related contentions.

---

[5] Defendants concede that Security Chief Gumusdere engaged in misreporting, but argue that it happened only in 2011 and outside the applicable statute of limitations period. Deft. Memo at p. 17. Plaintiffs allege a continuing and systemic pattern of misreporting that not only continued while Gumusdere was employed by Defendants through August 2017, but was also perpetrated by other DOC officials during the limitations period. Moreover, the examples of false reporting in the case of individual officers, including Plaintiffs Romano and Ashendorf occurred within the limitations period.

The FASC challenges Defendants' concealment practices as a whole. These practices are not limited to misclassification of incidents alone; they include non-reporting of violence as well as, among other things, a failure to hold violent inmates accountable, investigate infractions, and impose discipline. FASC at ¶¶ 129-32. **Plaintiffs do not challenge the Nunez classification system itself or any related policies**. Rather, the FASC challenges Defendants' *actual* classification practices under the mandated policies. This much is clear from the FASC itself which discusses the classification system to illustrate in detail the many ways *how* Defendants misclassify violence as part and parcel to their cover-up scheme. See, e.g FASC at ¶¶ 89-129 – special note to ¶¶124-25. The FASC also demonstrates that Defendants' false reporting practices actually manipulate the Nunez classification and reporting requirements. The FASC's objectives – preventing an increase in Jail violence, ensuring accurate violence reporting and in turn accurate inmate and incident classifications, custodial, management and program strategies -- mirror those of Nunez.

There is another and obvious reason why Defendants falsely spin the FASC as an attack on Nunez; it is the only way they can argue the existence of "competing interests" in order to defeat the deliberate indifference state of mind element of this claim. As explained more fully below in Subsection D, if Defendants were to concede that the FASC challenges the false reporting of jail violence (as it plainly does) and does not challenge *something* or *anything* related to Nunez, then then they would also have to admit that the misreporting policy was adopted in the absence of competing interests. Thus, the deliberate indifference alleged in the FASC would not only satisfy the requisite state of mind element, but also render Defendants' futility argument itself futile.

### C. The FASC Alleges the Requisite States of Mind.

Contrary to Defendants' claims, the FASC alleges the requisite state of mind to demonstrate a substantive due process violation. To wit, the FASC alleges both intent to harm and, in the

alternative, deliberate indifference. FASC at ¶¶ 184-86, 191-93,198-200. Defendants' actions evince an "intent to harm" state of mind inasmuch as they have, by design, intentionally engaged in concealment practices and knew there could be only one outcome of covering up the true nature, magnitude and frequency of violence occurring in the jails: more violence and injuries to inmates and staff alike. This concept of "inferred intent" has been embraced in other areas of law and should apply in the constitutional context as well. See In re Margulies, 517 B.R. 441 (S.D.N.Y. 2014)(assessing intentional conduct for liability purposes under an insurance agreement pursuant to New York law and recognizing that when alleged harm is an inherent result of the act, intent to injure will be inferred as a matter of law because of the intentional character of the conduct); see also Restatement (Second) of Torts § 8A (1965), Cmt. b., (stating that "[i]f the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result."). There can be no doubt that Defendants knew, with at *least* substantial certainty, that covering up the violence in the City Jails would impact the institutional response adversely, alter custodial practices, strategies and programs, and risk the safety of all Jail constituencies.

Even if this Court finds the FASC's allegation of intentional conduct is insufficient, leave to amend must still be granted because the FASC's allegation of deliberate indifference meets the requisite state of mind to establish a substantive due process violation. FASC at ¶ ¶ 186, 193, 200; Decision at 9; see also Pena v. DePrisco, 432 F.3d 98. 114 (2d Cir. 2005). Deliberate indifference is "akin to recklessness,[and] requires that a defendant knew of the risk and deliberately assumed or disregarded it." Decision at 9. Here, there can be no doubt that Defendants were aware of the obvious risks to the safety of inmates and staff alike when they affirmatively engaged in their concealment practices. However, Defendants' willful ignorance of the "serious implication[s]" of their conduct and the increased "likelihood of harm" justifies

imposing substantive due process liability. That is the very definition of deliberate indifference. See Okin, 577 F.3d 415, 427-28. Plaintiff COBA has brought the dangers alleged in the FASC to Defendants' attention, and for years have begged for change, and even proposed potential solutions. FASC at ¶ ¶ 133-34. Yet, Defendants intentionally and willfully disregarded these dangers and risks to the safety of inmates and staff alike. At minimum, the Defendants knew or should have known of the consequences of their decisions as COBA regularly informed them of it.

### D. The FASC's Failure To Act Allegations Constitute Culpable Conduct.

The full panoply of Defendants concealment practices constitutes affirmative, actionable conduct. The FASC alleges Defendants' cover-up runs the gamut from misreporting, non-reporting and underreporting, to failing to hold inmates accountable for their violent actions. On this latter end of the spectrum is defendants' failure to act --- specifically their reluctance to investigate and process infractions and impose discipline on adjudicated inmates. This Circuit recognizes that culpable conduct also includes action that "communicates, explicitly or implicitly, official sanction of private violence," Okin v. Village of Cornwall–on–Hudson Police Dep't., 577 F.3d 415, 429 (2d Cir. 2009) or "repeated, sustained inaction by government officials, in the face of potential acts of violence" Id.; see also Pena v. DePrisco, 432 F.3d 98 (2d Cir. 2005). Defendants' failure to impose accountability for violence signals to inmates that they can behave with impunity. See Okin, supra. Defendants' actions are, essentially, tantamount to condoning violence and encouraging repeated attacks on Correction Officers and other inmates. Stated another way, if the law removed a penalty for theft, would more people engage in that conduct knowing their conduct will not be punished? To the extent the Complaint alleges that Defendants' practice has explicitly or implicitly encouraged increased inmate violence by signaling that their misconduct will be tolerated or go unpunished, Plaintiffs are entitled to

discovery and their leave to amend should be granted. Pena v. DePrisco, 432 F.3d 98, 111 (2d Cir. 2005). In Pena, the Court noted that if officials "communicate to a private person that he or she will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under § 1983 for injury caused by the misconduct." Id. The court further stated, "Whether such [deliberate silence] silence in this particular case—or in future cases—did in fact communicate permission is a factual determination which we decline to resolve on a 12(b)(6) motion to dismiss." Id. at 112.

### E. The FASC's Allegations Regarding Defendants' Abuse Of Power Constitutes Conduct That Shocks the Conscience.

Turning now to the last element of conscience shocking conduct, this Court's Decision is instructive on the applicable precedents. "'Government action resulting in bodily harm is not a substantive due process violation unless the government action was so egregious, so outrageous [or arbitrary, in a constitutional sense] that it may be fairly said to shock the contemporary conscience.'" Decision at 8 (quoting Lombardi; internal citations omitted). In order to shock the conscience and trigger a violation of substantive due process, official conduct must be truly "brutal and offensive to human dignity..." Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007) (quoting Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 173 (2d Cir.2002) (internal citations omitted). It is well settled that conduct exhibiting intent to harm shocks the conscience. Additionally, "deliberate indifference can rise to a constitutionally shocking level." County of Sacramento v. Lewis, 523 U.S. 833, 852 (1998).

While "the measure of what is conscience-shocking is no calibrated yard stick," County of Sacramento, 523 U.S. at 847, government's abusive exercise of its authority surpasses this

9

threshold. Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir. 2001). The Second Circuit has recognized that:

> Such acts by their very nature offend our fundamental democratic notions of fair play, ordered liberty and human decency. See, e.g., County of Sacramento, 523 U.S. at 846, 118 S.Ct. 1708 (citing Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), for the proposition that "the substantive due process guarantee protects against government power arbitrarily and oppressively exercised"); Breithaupt v. Abram, 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) (conduct shocks the conscience where it is so " 'brutal' and 'offensive' that it d[oes] not comport with traditional ideas of fair play and decency").

Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir. 2001); see also Decision at 8. Government's deliberate and unjustified misuse of authority is conduct "sufficiently severe …as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." McClary v. O'Hare, 786 F.2d 83, 88 (1986) (quoting Shillingford v. Holmes, 634 F.2d 263, 266 (5th Cir. 1981).

As this Court noted in its Decision, critical to the conscience shocking analysis is the nature of the government action and the harm inflicted. Decision at p. 8. The Second Circuit in Lombardi recognized the suggestion that "depending on the circumstances…a substantive due process violation can be made out when a private individual derives a false sense of security from an intentional misrepresentation by government if foreseeable bodily harm directly results" from conscience shocking conduct. Lombardi, 485 F.3d 73 at 81.

Here, assuming the truth of the allegations and drawing all reasonable inferences in Plaintiffs' favor, a public employer tasked with the safe operation and management of jail facilities is covering up the true nature, magnitude and frequency of violence in the jails and eschewing its legal obligations to report --- even criminal acts ---accurately. As the BOC stated in its "Serious Injury Report," "accurate reporting is necessary to maintain public accountability

and trust in and engagement with government." See Report at Husamudeen Decl., Exhibit A at p. 3. The Defendants' knowing, deliberate, and protracted practice of false reporting (now ongoing for several *years* unlike the shorter period of time involved in Lombardi and Benzman) is the epitome of arbitrary, abusive conduct, in the constitutional sense. See Benzman v. Whitman, 523 F.3d 119 (2d Cir. 2008) (making knowingly false statements is undoubtedly conscience-shocking conduct). The resulting mismanagement of violent inmates increases the likelihood that inmates and staff will be subject to substantial bodily harm -- even death. In the case of individual Plaintiffs Romano and Ashendorf, as well as the other referenced Correction Officers, mismanagement due to intentional misreporting did in fact result in physical harm. FASC at ¶¶ 148-165. Simply put, matters that risk safety in prisons, specifically conduct that disregards known dangers or increases danger, suffices to shock the conscience. Kowaleski v. Lewis, 643 F. Supp. 2d 259, 272 (N.D.N.Y. 2009).

Briscoe v. Potter, 355 F.Supp.2d 30 (D.D.C.2004), aff'd, 171 Fed.Appx. 850 (D.C.Cir. 2005) is instructive here. In that case, postal employees alleged their supervisors had falsely told them it was safe to return after anthrax had been discovered in the workplace. Id. The district court held that the government employer's deceptive actions were conscience-shocking. Id. at 49. Significant in this finding was the allegation, as is also alleged in the instant action, that the defendants "'had been put on notice of the serious consequences that could result'" when they engaged in a "campaign of misinformation designed to keep the employees at work." Id. at 42 quoting Phillips, 257 F.Supp.2d at 79. "'[W]hen opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking.'" Id. at 77 (quoting Lewis, 523 U.S. at 844).

Here, Plaintiffs allege harm similar to that suffered in Briscoe. Defendants' concealment practices – a "campaign of misinformation" in its own right -- gives the illusion that the City

11

Jails are safer than they are. As illustrated in the FASC, this dangerously impacts not only the institutional response to ongoing violence (which is consequently insufficient), but also Correction Officers' personal choices regarding job postings/assignments. FASC at ¶143. Plaintiff COBA has challenged Defendants' concealment practices --- the false reporting and failures to hold violent inmates accountable – for years. FASC at ¶133-34. Yet, Defendants have willfully disregarded the obvious risks. Multiple outside agencies, news outlets, and Plaintiff COBA have adduced evidence of Defendants' misreporting and underreporting. Yet, Defendants ignore the "serious implication[s]" of their conduct and the increased "likelihood of harm." This deliberate indifference is truly shocking. See Pena, supra.

Defendants argue that the decisions in Lombardi and Benzman are controlling because the Second Circuit found that misleading statements made by government did not shock the conscience. Lombardi, 485 F.3d 73 at 82-85; Benzman, 523 F.3d at 128-29. This is, yet again, another red herring. The claims in Lombardi and Benzman arose out of similar misleading statements made by the Environmental Protection agency after the September 11, 2001, terrorist attacks about the air quality in and around Ground Zero. Lombardi, 485 F.3d at 76; Benzman, 523 F.3d at 123-24. In Lombardi, plaintiffs were emergency responders who worked at Ground Zero, Lombardi, 485 F.3d at 75, and in Benzman they were area residents, Benzman, 523 F.3d at 123. Both groups claimed a violation of their substantive due process rights when the government assured them it was safe to work in the area or return to reside in it when in reality the air was contaminated. Lombardi, 485 F.3d at 75; Benzman, 523 F.3d at 123-24.

These cases are inapposite to the matter at bar because the Second Circuit's decision to reject those claims was based on a determination that government was subject to competing interests in both instances and the alleged deliberate indifference, **under those very specific circumstances**, was insufficient to establish conscience-shocking conduct. Lombardi, 485 F.3d

12

73 at 82-85; Benzman, 523 F.3d at 128-29. The Court found that where government is faced with competing interests, only an "intent to harm" can shock the conscience. This Court held similarly here when it dismissed the OC as failing to state a claim based on the first eight policies. Decision at pp. 9-11. "[L]iability cannot be imposed under the deliberate indifference standard when a governmental entity acts subject to the pull of competing governmental obligations…In such circumstances, a substantive due process violation cannot be found unless the government action was undertaken arbitrarily or with the intent to harm." Id. at 10. Notably, the Court did not reference competing interests and deliberate indifference when it addressed the OC's ninth basis – false reporting of violence – which is plead here.

In this case, Defendants do not face any competing interests and deliberate indifference suffices to shock the conscience. Unlike the government's choices in Lombardi and Benzman, Defendants decision to cover-up jail violence is not a choice between different policy alternatives - there is **no valid policy** supporting such a cover-up. Nor do Defendants have to choose between the interests of inmates and staff as this Court opined in its Decision when dismissing Plaintiffs claims in the OC based on the first eight policies. Decision at pp. 13-14. Notably absent from Defendants' Memo is the mention of a single, legitimate interest served by their concealment practices. Nor is there mention of any competing interests that are balanced or any government obligation facing Defendants with respect to their cover-up policy. Defendants have to stretch and mischaracterize the FASC as something it is not (See Subsection D supra) to come up with competing interests. Contrary to Defendants' claim, the FASC does not prioritize the safety of Correction Officers over inmates since violence concealment hurts everyone. Indeed, safety in the City Jails -- which is either bolstered or undermined by the accuracy of violence reporting -- is a universal interest of inmates and staff alike. Thus, in the absence of

competing interests, Defendants' deliberate indifference in the instant case suffices to shock the conscience.

### F. Workplace Safety Issues Are a Valid Basis To Assert a State Created Danger Substantive Due Process Violation.

Defendants' last meritless argument against the federal claims is also recycled from their Motion to Dismiss the OC. Specifically, Defendants argue that substantive due process "does not extend to the protection of government employees," does not regulate occupational safety, and health, and does not guarantee certain levels of workplace safety. Notably, this Court did not, in its Decision, predicate the "without prejudice" dismissal of the OC on this basis or address this argument at all. To do so would be to ignore the vast body of case law recognizing that substantive due process does protect employees' safety where the employer is the cause, in whole or in part, of newly created/increased danger in the workplace. See, e.g., Pauluk v. Savage, 836 F.3d 1117 (9th Cir. 2016) (state created danger theory recognized in suit filed by widow of employee subject to toxic occupational exposure); Briscoe v. Potter, 355 F.Supp. 2d 30 (D.C. 2004) (state created danger claim recognized in suit filed by postal workers exposed to anthrax); Estate of Phillips v. District of Columbia, 455 F. 3d 397 (D.C. Cir. 2006) (recognizing the validity of state endangerment theory in suit filed by firefighters and estate of firefighters). In particular, the state created danger theory has been advanced and recognized as a valid basis for constitutional claims when, as is the case here, brought by prison/jail employees. See Kowaleski v. Lewis, 643 F. Supp. 2d 259 (N.D.N.Y. 2009) (recognizing validity of former employee's state created danger claim against prison officials and allowing claim to survive summary judgment); L.W. v. Grubbs (Grubbs I), 974 F.2d 119 (9th Cir. 1992) (allowing state created danger suit against custodial institution where nurse was raped and terrorized by inmate whose violent propensities were known to officials); Kaucher v. County of Bucks, 455 F.3d 418 (3d Cir. 2006)

14

(recognizing viability of state created danger claim where correction officers filed suit against prison officials for creating unsanitary and dangerous conditions).

What these cases all recognize is that while due process may not establish a minimum as it relates to occupational safety standards, it does impose a limit on the policies and practices that government employers embrace. In Collins v. City of Harker Heights, 503 U.S. 115 (1992), the Supreme Court declined to find a general due process constitutional right to a safe workplace in a suit brought by the widow of a sanitation worker who had died of asphyxia after entering a manhole. In Pauluk v. Savage, 836 F.3d 1117, (9th Cir. 2016), the Ninth Circuit directly addressed the intersection between this holding in Collins and the state created danger doctrine. There, the state created danger claim arose out of a deceased employee's transfer to a work location polluted by toxic mold. Id. at 1119-21. The court recognized that Collins was simply an application of the General Rule (that the state does not have an affirmative due process duty to protect its citizens) to the workplace context. Id. at 1123–24. Thus, the Pauluk court logically held, "It follows that the exceptions to the general rule, such as the state-created danger doctrine, should also apply to workplace safety cases." Id. at 1124. The Pauluk court noted that this Collins itself supports this outcome when stated that had plaintiff alleged a state created danger theory rather than a constitutional claim for minimum workplace safety, the result may have differed. Id. at 1123.

Notably, the Collins court recognized that an individual's role as a public employee does not deprive him or her of constitutional protections:

> The First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections. Neither the fact that petitioner's decedent was a government employee nor the characterization of the city's deliberate indifference to his safety

15

> as something other than an "abuse of governmental power" is a sufficient reason for refusing to entertain petitioner's federal claim under § 1983.

Collins, 503 U.S. at 119-120; see also Gormley v. Wood-El, 93 A.3d 344, 363 (N.J. Sup. Ct. 2014) (finding Collins "clearly demonstrates" status as a government employee is not dispositive).

## II. DEFENDANTS' ARGUMENTS AGAINST CLASS CERTIFICATION ARE MERITLESS.

Individual Plaintiffs Romano and Ashendorf bring this suit in their individual capacities and as representatives of an intended class action. FASC at ¶¶ 20,21. Defendants claim that class certification should be rejected because the FASC fails the commonality prong of the four part class action test set forth in Rule 23. See Fed R. Civ. Proc. 23. While Rule 23(a)(2) requires "[T]here are questions of law or fact common to the class," it "does not require that all questions of law or fact raised in the litigation be common." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 368–69, 131 S. Ct. 2541, 2562, 180 L. Ed. 2d 374 (2011). A single question of law or fact common to the members of the class will satisfy the commonality requirement." Id. A "question" "common to the class" is one that is a dispute of either fact or of law --- the resolution of which advances the determination of the class members' claims. Id.

Plaintiffs satisfy the commonality requirement because questions of law and fact germane to the putative class members exist. As a matter of law, there must be a determination of whether or not Defendants' violence concealment practices have created or increase workplace danger and thus violated their substantive due process rights. Additionally, there must be a determination of whether a violence incident was subject to any of the concealment practices and, as a direct and proximate result, a Correction Officer was injured. While an increase of danger suffices to constitute an injury, here members of the class are distinguished from nonmembers based on the

existence (or lack thereof) of a causally connected injury. Neither the nature of the injury, nor the exact mechanism of injury need be the same. To meet the commonality requirement, Plaintiffs need only prove that the mis-reporting, underreporting, etc. put the Plaintiffs in a more dangerous situation that led to injury.

Defendants' remaining contentions against class certification --- that the FASC does not challenge a clear policy, or challenges Nunez and Nunez related policies, or fails to offer a causal connection between false reporting and injuries ---are all dispelled in Section I above.

## CONCLUSION

For the reasons set forth above, Plaintiffs' respectfully request this Court grant its Motion for Leave to Amend because the FASC surpasses the line between conceivable and plausible. See Twombly, 550 U.S. at 570.

Dated: February 22, 2019
      New York, New York

                                          KOEHLER & ISAACS LLP
                                          *Counsel for Plaintiffs*

                                       By: _____
                                          Cynthia Devasia, Esq. (CD0320)
                                          61 Broadway - 25th Floor
                                          New York, New York 10006
                                          Office: (917) 551-1352