UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CORRECTION OFFICERS' BENEVOLENT ASSOCIATION,
INC., ANTHONY ROMANO, individually
and on behalf of all others similarly situated, BRYAN ASHENDORF
individually and on behalf of all others similarly situated,
and JOHN and JANE DOES 1 – 2,000,

                                                      Plaintiffs,

                            -against-                                    Case No. 17-CV-2899  (LTS)

THE CITY OF NEW YORK, MAYOR BILL DE BLASIO,
NEW YORK CITY DEPARTMENT OF CORRECTION, and
COMMISSIONER CYNTHIA BRANN,

                                                      Defendants.
------------------------------------------------------------------------X

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO FILE AN AMENDED AND SUPPLEMENTAL COMPLAINT

**KOEHLER & ISAACS LLP**
Attorneys for Plaintiffs
61 Broadway, 25th Floor
New York, N.Y. 10006
(917) 551-1300

Attorney of Record: Cynthia Devasia, Esq. (CD0320)

# TABLE OF CONTENTS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

    I.   State Created Danger Claims Resulting In Increased, Inherent Employment Risks Are Not Barred as a Matter of Law. ........................................................................................... 1

    II.  The FASC is Not Barred Because, Under These Circumstances, the Increased Risks Are Not Inherent to an NYC Correction Officers' Job. ........................................................ 5

CONCLUSION .......................................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**

Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162 (2d Cir. 2012) ........................................8
Collins v. City of Harker Heights, 503 U.S. 115 (1992) ....................................................................4
DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189 (1989) .........................................4
Dwares v. City of New York, 985 F.2d 94 (2d Cir.1993) ................................................................4,5
Estate of Carrigan v. Park Cty. Sheriff's Office, No. 16-CV-3079-MSK-NRN, 2019 WL 1429282
 (D. Colo. Mar. 29, 2019) ............................................................................................. passim
Estate of Phillips v. District of Columbia, 455 F.3d 397 (D.C. Cir. 2006 .............................. passim
Kedra v. Schroeter, 876 F.3d 424 (3d Cir. 2017) ..............................................................................5
Keitz v. Unnamed Sponsors of Cocaine Research Study, 829 F. Supp. 2d 374, 384 (W.D. Va.
 2011). .................................................................................................................................8
L.W. v. Grubbs, 974 F.2d 119 (9th Cir. 1992) .......................................................................... passim
Lombardi v. Whitman, 485 F.3d 73 (2d Cir.2007), .........................................................................4
Mann v. Palmerton Area Sch. Dist., 33 F. Supp. 3d 530 (M.D. Pa. 2014). .......................................5
McGann v. City of New York, No. 12 CIV. 5746 PAE, 2013 WL 1234928 (S.D.N.Y. Mar. 27,
 2013) ................................................................................................................................10
R.B. by Hickey v. Enterline, 304 F. Supp. 3d 456 (M.D. Pa. 2018) ..................................................5
Russett v. Arizona, No. CV-16-00431-PHX-ROS, 2017 WL 5973348 (D. Ariz. Mar. 31, 2017)
 ................................................................................................................................... passim
Slaughter v. Mayor and City Council of Baltimore, 682 F.3d 317 (4th Cir. 2012) ..........................7
Uhlrig v. Harder, 64 F.3d 567 (10th Cir. 1995) .......................................................................6, 7, 8
Waller v. Trippett, 49 F. App'x 45 (6th Cir. 2002) .......................................................................5, 6

## INTRODUCTION

By Order dated April 26, 2019, this Court directed the parties to address the following issue:

> Whether, as a matter of law, Plaintiffs are precluded from asserting a state created danger claim resulting in risks already inherent in their job and, if so, whether the risks arising from Defendants' alleged underreporting practices are inherent occupational risks of Correction Officers [CO].

Plaintiffs contend the answer to both of these questions is no and submit this supplemental brief in further support of their motion seeking leave to amend.

## ARGUMENT

**I. State Created Danger Claims Resulting In Increased, Inherent Employment Risks Are Not Barred as a Matter of Law.**

In the Second Circuit, a state created danger claim is established by demonstrating that a defendant's affirmative actions create or enhance a risk of harm to the plaintiff that is shocking to the conscience. Dwares v. City of New York, 985 F.2d 94 (2d Cir.1993). While this concept has been clarified and expanded by the Second Circuit in several successive opinions, the Court has not found that the nature of the increased/created danger is determinative. Rather, the cases in this Circuit – consistent with the Supreme Court's seminal decision in DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189 (1989) -- have focused on the defendant's culpability in rendering the plaintiff more vulnerable to harm even if that harm was pre-existing. See Dwares, supra, (recognizing liability where state contributes to the plaintiff's vulnerability, or aides and abetts in increase of same harm). The touchstone of substantive due process violations in this area is the **defendant's** role and whether any **affirmative** steps were taken to create or increase the risk of harm. See Dwares, supra; Indeed, in Lombardi v. Whitman, 485 F.3d 73 (2d Cir.2007), the Second Circuit emphasized the importance of affirmative conduct, stating that a government official's failure to warn of a known danger, **without more**, does not violate substantive due process. That is the dividing line between Collins v. City of Harker Heights, 503 U.S. 115 (1992) -

- which held there is no constitutional right to a safe workplace --- and the plethora of cases recognizing state created danger claims viable within public employment. See Plaintiffs' Reply 14.

Although some courts have rejected state created danger claims brought by police officers and firefighters where the increased risk of harm was deemed to be the same type inherent to employment, see Estate of Phillips v. District of Columbia, 455 F.3d 397 (D.C. Cir. 2006) and Estate of Carrigan v. Park Cty. Sheriff's Office, No. 16-CV-3079-MSK-NRN, 2019 WL 1429282, at *5 (D. Colo. Mar. 29, 2019), other courts from the Ninth and Sixth Circuits have found such employee claims to be viable notwithstanding inherent risks – even in the prison/jail context. See L.W. v. Grubbs, 974 F.2d 119 (9th Cir. 1992)(allowing state created danger claim by prison nurse who was attacked by an inmate); Russett v. Arizona, No. CV-16-00431-PHX-ROS, 2017 WL 5973348 (D. Ariz. Mar. 31, 2017)(allowing state created danger claims by COs who were attacked by inmates); Waller v. Trippett, 49 F. App'x 45, 50–51 (6th Cir. 2002) (notwithstanding qualified immunity, noting prison kitchen worker's claim as viable). Courts have also found state created danger liability in other contexts where plaintiffs participating in risky activities like cheerleading and football alleged an increase in inherent risks. See R.B. by Hickey v. Enterline, 304 F. Supp. 3d 456 (M.D. Pa. 2018); Mann v. Palmerton Area Sch. Dist., 33 F. Supp. 3d 530 (M.D. Pa. 2014). While other jurisdictions are not binding on this Court, L.W. v. Grubbs and Russett v. Arizona should be deemed more persuasive because their particular circumstances are more similar to this case than Estate of Carrigan and Estate of Phillips.

In L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir. 1992), the Ninth Circuit held that a nurse who was employed in a medium-security correctional institution established a state created danger claim when she was assaulted and raped after being assigned to an inmate whom the employer knew had a propensity for sexual violence. Similarly, in Russett v. Arizona, No. CV-16-00431-PHX-ROS, 2017 WL 5973348 (D. Ariz. Mar. 31, 2017), the District Court of Arizona found that

some COs, who worked for the Arizona Department of Corrections and were attacked by the inmates they were assigned to guard, established state created danger claims arising from their employer's poor staffing decisions and use of faulty equipment. In so deciding, these courts essentially held that an increase in an inherent job risk is not a bar for recompense. See also Waller v. Trippett, supra (recognizing state created danger claim without application of an "inherent risks" bar where civilian prison kitchen worker was stabbed to death by inmate who was regularly assigned to kitchen workers and had access to knives).

Critical to both Grubbs and Russett, both of which, like this case, notably arose in the prison/jail context, was: 1) the employer's active role and misrepresentation resulting in the employees' increased vulnerability to, and facilitation of, attack by inmates; and 2) the employees' lack of knowledge of the increase in danger. In Grubbs, the employer misrepresented the risks of working with the inmate to the nurse. 974 F.2d at 121. In Russett, the employer issued work assignments under dangerous conditions unbeknownst to the employee (i.e., faulty cell doors or understaffing posts with known, dangerous inmates). 2017 WL 5973348, at *1. Similarly, in this case, Plaintiffs are employees whose vulnerability to attack by violent inmates has been increased by the employer's misrepresentations about the risks they face. Like the complainants in Gibbs and Russett, Plaintiffs have been misled by Defendants' underreporting and misreporting about how violent the inmates they work with are and, as a result, have been injured. Accordingly, based on these unique facts, a state created danger claim is legally plausible. Uhlrig v. Harder, 64 F.3d 567, 575 (10th Cir. 1995) (stating § 1983 lies where a state actor affirmatively misleads an employee of the substantial risks in the workplace).

A closer look at Estate of Phillips and Estate of Carrigan reveals the rationale used by those courts to reject state created danger claims brought by public employees in potentially dangerous jobs does not apply here. In Estate of Phillips, plaintiffs alleged the employer's failure to follow

3

standard operating procedures related to communication, ventilation, and personnel coordination while fighting a fire, as well as its failure to cure longstanding training deficiencies all contributed to the deaths of two firefighters and injuries to others. 455 F.3d at 399. The court dismissed the claims in part on qualified immunity grounds but also noted that the risk of injury or death was inherent to fighting fires. Id. In Estate of Carrigan, a claim was brought on behalf of an undersheriff who was killed when he and fellow police officers tried to evict an individual known to be armed, dangerous, and who recently had threatened to shoot the first cop he saw. 2019 WL 1429282, at *1. The court rejected the claim stating the risk of violence by someone known to be unstable was an inherent job risk and that not only were the police officers fully aware the evictee would shoot at them but they "specifically anticipated and planned for that possibility." Id. at *6.

Similar to the Grubbs and Russett courts, the critical factor in these cases is knowledge and its corollary, informed choice. In other words, the courts embraced a dividing line of liability premised on inherent versus non-inherent job risks because the employees in question had a full understanding and contemplation of the risks they would face when accepting employment or the particular job assignment. See also Uhlrig v. Harder, 64 F.3d 567, 476 (10th Cir. 1995) (finding no violation where staff therapist at a state mental hospital was killed by an inmate because the plaintiff was specifically aware of the inmate's background); Slaughter v. Mayor and City Council of Baltimore, 682 F.3d 317 (4th Cir. 2012) (noting no violation where state compelled victim to undergo danger without a choice whether to face the peril or not). Accordingly, a state created danger claim citing an increase in inherent job risks is precluded only when an employee has full understanding and acceptance of risks involved. That is not the case here.

Assuming *arguendo* that the risks herein are deemed inherent, the principles underlying Estate of Carrigan and Estate of Phillips are inapposite. Defendants' concealment practices have essentially deprived Plaintiffs of the ability to make an informed choice or the ability to consent to

4

the true risk of employment as COs within the City jails. Plaintiffs have **not** knowingly and voluntarily consented to Defendants' fraudulent acts and the kind of dangerous workplace they have created. To wit, job assignments are accepted without a full understanding of, or preparation for, all the risks; indeed, Plaintiffs can neither accept nor assume the risk of what is not made known to them. This is particularly true when COs accept or seek transfer to posts unaware of the true magnitude of violence amongst the inmates they will be guarding. Where plaintiffs "made no affirmative choice knowingly to associate themselves with the circumstance that spawned the danger resulting in harm," a state created danger claim is established. Keitz v. Unnamed Sponsors of Cocaine Research Study, 829 F. Supp. 2d 374, 384 (W.D. Va. 2011). Any argument that Plaintiffs can quit their jobs and are under no compulsion to continue working in the City Jails is inapplicable where the public employer has misled the employees about working conditions Uhlrig v. Harder, 64 F.3d 567, 575 (10th Cir. 1995).

## II. The FASC is Not Barred Because, Under These Circumstances, the Increased Risks Are Not Inherent to an NYC Correction Officers' Job.

Even if this Court decides that, as a matter of law, claims alleging state created danger resulting in increased inherent job risks are barred, the instant claim must still proceed. As a preliminary matter, whether the increased risks in this case are inherent to these particular COs' job is a question of fact that cannot be resolved on the pleadings here. See Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162 (2d Cir. 2012). When compared to the average job, the job of a CO has a higher risk of injury. Defendants' underreporting, misreporting, downgrading and failure to discipline, have altered the severity and frequency of known risks inherent to the position of CO without their knowledge and violates due process. See Dwares, supra; see also Grubbs, supra; Russett,supra; Tippett, supra (no application of "inherent risks" bar where inmates assaulted or killed prison employees including COs). In doing so, Defendants have also created new and separate risks that are arguably non-inherent. Further, the risk of serious bodily harm or death is

5

**not** an inherent risk of the job that all COs face or voluntarily assume. Indeed, City COs work in many posts where there is no inmate contact (i.e. office jobs, headquarters, training etc.), limited inmate contact, or contact with inmates on the low end of security risk classification. Thus, the full extent and scope of the increased risk resulting from Defendants' actions and whether those risks are the same or different from any inherent risks of a City COs' job is a factual inquiry, see Kedra v. Schroeter, 876 F.3d 424 (3d Cir. 2017)(where factual circumstances of state trooper's death was integral to distinguishing inherent versus non-inherent risks), and further requires discovery.

Even if the Court decides this is question of fact, the risks created/increased by Defendants' concealment of jail violence are qualitatively different from any risks the Court may deem inherent to the job. Here, Defendants knowingly, intentionally, and with deliberate indifference to the safety of COs, have manufactured a guaranteed risk of harm to them. This manufactured risk, one that the employer itself creates through intentional misrepresentation, is not an inherent job risk. Like the Grubbs and Russett employers, Defendants' cover-up creates an independent opportunity for, and facilitates, inmate on officer violence and prevents Plaintiffs from adequately protecting themselves. See Russett, 2017 WL 5973348 at *7-8.

To illustrate further, under Defendants' cover-up scheme, the institutional response will be compromised when an inmate engages in a sexual assault and that misconduct is listed as a mere "log book entry" (see FASC at ¶¶ 122-23). The inmate may be mistakenly kept within the same housing unit. Compounding this, any female CO who is then offered a post in that housing unit and accepts, is more vulnerable to sexual assault unbeknownst to her. Plaintiff Romano's situation is also instructive. He was assaulted by the same inmate twice in four days—a danger he would not have otherwise been exposed to had Defendants not covered up the first attack as a mere "log book entry," which curtailed the initial institutional response to the inmate and kept him the same housing unit. These examples are akin to the deceptive scenarios in Grubbs and Russett and unlike

the scenarios in Estate of Carrigan and Estate of Phillips where the employers did not affirmatively mislead the employees about, and employees knew exactly what, dangers they were getting into. Where the risk to the employee is not one within the ordinary contemplation of the job, such as here where COs do not voluntarily recognize and accept the risk of serious bodily harm or death arising from their employer's fraudulent conduct, a new and distinct harm that injures the employee has been created. See Estate of Carrigan, supra.

## CONCLUSION

In sum, this Court should allow this claim to proceed based on the unique set of circumstances present here. Defendants' affirmative role in misleading Plaintiffs about the dangers in the workplace and Plaintiffs' lack of awareness and informed acceptance of these dangers, precludes the application of any "inherent risks" bar. Additionally, for these same reasons, the nature of the manufactured risks created/increased here cannot be deemed inherent to the job. Moreover, leave to amend should be granted to remain consistent with substantive due process principles. Indeed, this Court has recognized that, "A public employer's conduct constitutes a due process violation when a governmental employer abuses some power unique to its role as a governmental entity." McGann v. City of New York, No. 12 CIV. 5746 PAE, 2013 WL 1234928, at *6 (S.D.N.Y. Mar. 27, 2013) (internal quotes omitted). Thus, even though courts are reluctant to expand substantive due process protections, judicial intervention is not only appropriate, but mandatory when, as in this case, Defendants abused their authority by covering up jail violence and actively misled Plaintiffs about the true dangers they face in the workplace.

Dated: May 31, 2019
New York, New York

KOEHLER & ISAACS LLP
By: _____
Cynthia Devasia, Esq. (CD0320)
61 Broadway - 25th Floor
New York, New York 10006
917-551-1300

7