17 Civ. 2899 (LTS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, INC., TIFFANI DUBLIN, individually and on behalf of all others similarly situated, ANTHONY ROMANO, individually and on behalf of all others similarly situated, MATTHEW HINES, individually and on behalf of all others similarly situated, FRANCIS CASTRO, individually and on behalf of all others similarly situated, and JOHN and JANE DOES 1 - 2,000,

Plaintiffs,

-against-

THE CITY OF NEW YORK, MAYOR BILL DEBLASIO, NEW YORK CITY DEPARTMENT OF CORRECTION, and COMMISSIONER CYNTHIA BRANN,

Defendants.

**DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE ORDER OF APRIL 26, 2019 AND IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE COMPLAINT**

# ZACHARY W. CARTER
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-187
New York, New York 10007-2601

*Of Counsel:*   Alan M. Schlesinger
*Telephone:*   (212) 356-2628
aschlesi@law.nyc.gov

Our No. 2017-018199

# TABLE OF CONTENTS

**<u>Page</u>**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

CONCLUSION............................................................................................................................. 7

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Estate of Carrigan v. Park City Sheriff's Office*,
    2019 U.S. Dist. LEXIS 54248, 2019 WL 1429282 (D. Col. Mar. 29, 2019) ...................4, 5, 7

*Collins v. City of Harker Heights*,
    503 U.S. 115, 129 (1992).................................................................................... *passim*

*Donohue v. Wing*,
    2019 U.S. App. LEXIS 14050, 2019 WL 2024826 (2d Cir. May 8, 2019)..............................1

*FOP Dep't of Corr. Labor Comm. v. Williams*,
    375 F.3d 1141 (D.C. Cir. 2004) ...............................................................................2, 3, 5, 7

*Giaccio v. City of New York*,
    308 F. Appx. 470 (2d Cir. 2009)..............................................................................2

*Kaucher v. County of Bucks*,
    455 F.3d 418 (3rd Cir. 2006), The PAC .................................................................2

*Kedra v. Schroeter*,
    876 F.3d 424 (3rd Cir. 2017) ...............................................................................4, 5

*L.W. v. Grubbs*,
    974 F.2d 119 (9th Cir. 1992),
    *later decision,* 92 F.3d 894 (9th Cir. 1996)...........................................................5, 6

*Mitchell v. City of New York*,
    841 F.3d 72 (2d Cir. 2016)....................................................................................2

*Pahler v. City of Wilkes-Barre*,
    207 F. Supp. 2d 341 (M.D. Pa. 2001), *aff'd*, 31 Fed. Appx. 69 (3rd Cir. 2002) ......................3

*Estate of Phillips v. District of Columbia*,
    455 F.3d 397 (D.C. Cir. 2006) ..................................................................... *passim*

*Pickle v. McConnell*,
    592 Fed. Appx. 493 (6th Cir. 2015)..........................................................................3

*Russett v. Arizona*,
    2017 WL 5973348 (D. Ariz. Mar. 31, 2017), *later decision*, 2018 U.S. Dist.
    LEXIS 24277 (D. Ariz. Feb. 13, 2018), *appeals pending* ........................................5

*Seelig v. Koehler*,
    76 N.Y.2d 87 556 N.E.2d 125, 556 N.Y.S.2d 832 (1990).......................................6

*Washington v. District of Columbia*,
    802 F.2d 1478 (D.C. Cir. 1986) ........................................................................3, 5, 7

*Witkowski v. Milwaukee Co.*,
    480 F.3d 511 (7th Cir. 2007) ..............................................................................4, 5

## PRELIMINARY STATEMENT

Plaintiffs' proposed amended complaint ("PAC") contends that the DOC misreports or underreports violent incidents in its jails and that this somehow causes an increase in the risk of harm to COs thereby violating Substantive Due Process under the "state created danger" theory. The Court has asked for supplemental briefing as to whether, as a matter of law, alleged increases in the risks already inherent in the CO job can constitute a violation of Substantive Due Process. Order, dated April 26, 2019 (Dkt. No. 79) at 2. In response to the Order, plaintiffs have claimed that almost anything that DOC does that increases risks to COs constitutes a Substantive Due Process violation under the state increased danger theory.

Defendants now respond to the Order and to plaintiffs' response to the Order. The risk of harm through confrontations with inmates is inherent in the CO job and an increase in that risk cannot form the basis of a Substantive Due Process claim. Plaintiffs' argument relies on increases in the magnitude of the assumed risk and not a change in the *type* of risk inherent in the job to claim otherwise. In short, permitting Substantive Due Process to govern the working conditions of government employees would enshrine occupational safety minima into Substantive Due Process in derogation of *Collins* and its progeny.

## ARGUMENT

An increase in a risk intrinsic to a particular job caused by government action cannot give rise to a Substantive Due Process violation. In *Collins v. City of Harker Heights*, the Supreme Court held that Substantive Due Process "does not impose an independent federal obligation upon municipalities to provide certain minimal levels of safety and security in the workplace …." 503 U.S. 115, 129 (1992). *Collins* also held that the Constitution does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Id.*; *Donohue v. Wing*, 2019 U.S. App. LEXIS 14050 *5, 2019 WL 2024826 (2d Cir. May 8, 2019).

*Collins*' holding is broad, there is no constitutional protection against even "unreasonable" risks to employees' safety, and excludes any constitutional protection for government employees from the type of risks inherent in the job the employee has chosen.  *See Kaucher v. County of Bucks*, 455 F.3d 418, 436 (3rd Cir. 2006).[1]

Consistent with *Collins,* the D.C. Circuit has held that the lower threshold of deliberate indifference, as opposed to intentional conduct, applies if and <u>only</u> if the government has a heightened obligation to the plaintiff.  *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 402 (D.C. Cir. 2006).  Applying *Phillips* here, plaintiffs are COs to whom no heightened obligation applies.  Under *Phillips* plaintiffs must plead <u>intentional</u> conduct rather than deliberate indifference.  The PAC does not even attempt to plead that there has been misreporting with the intent to harm COs and relies instead on the lower standard of deliberate indifference.  Thus, the PAC cannot survive a motion to dismiss and plaintiffs' motion to amend must be denied.

In *Phillips*, the D.C. Circuit explained that "'[t]he state did not force [the plaintiff] to become a guard, and the state has no constitutional obligation to protect him from the hazards inherent in that occupation.'"  *Phillips*, 455 F.3d at 406 (quoting *FOP Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141 (D.C. Cir. 2004) ("*FOP*")), 407.  Here, plaintiffs complain of the very risks that are intrinsic to the job of CO, the risk of bodily harm from inmates.  Cases such as the D.C. Circuit's decisions in *Phillips* and *FOP* hold that Substantive Due Process does not provide a remedy for the very risks that make the job of CO necessary in the first place, the restraint of antisocial inmates and the risk of harm it engenders.

*Phillips*' discussion of *FOP* is instructive.  In *FOP*, the government increased the

---

[1] The PAC has cited to a single instance, outside the limitations period, of alleged false reporting. This is insufficient to allege a *Monell*, policy or practice.  *See Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016); *Giaccio v. City of New York*, 308 F. Appx. 470, 472 (2d Cir. 2009).

number of inmates and decreased the number of correction officers guarding the inmates thereby "affirmatively" subjecting officers to an increased risk. *Phillips*, 455 F.3d at 406 (citing *FOP*, 375 F.3d at 1142). This conduct did <u>not</u> give rise to a Substantive Due Process claim because the risk of harm was of a type inherent in the job. *Id.* In *Phillips,* the employees attempted to evade the holding of *FOP* by denying that the risk at issue was inherent in the job. *Id.* at 407. In *Phillips*, as here, the government employees claimed to be seeking constitutional protection from state created <u>additional</u> risks of injury unknown to the employees when they joined government service. *Id.* The D.C. Circuit rejected this claimed distinction, finding that the *type* of risk was inherent in the job, even if the magnitude might be unknown. *Id.* (citing *Washington v. District of Columbia*, 802 F.2d 1478 (D.C. Cir. 1986)). In *Washington,* the type of risk was an inmate assaulting a guard. In *Phillips*, the type of risk was "injury or death suffered in a fire." *Id.* (citing *Washington*, 802 F.2d at 1479, 1482). Here, as in *Washington* and *FOP*, the risk of injury is assault from an inmate and, as in *Washington*, *FOP*, and *Phillips*, a risk inherent in the job <u>cannot</u> give rise to a Substantive Due Process claim. *Phillips*, 455 F.3d at 407 ("As both *Washington* and *FOP* make clear, the District is not constitutionally obliged by the Due Process Clause to protect public employees from inherent job-related risks.")(citing *Washington*, *FOP*, and *Collins*); *see Pickle v. McConnell*, 592 Fed. Appx. 493, 494 (6th Cir. 2015); *Pahler v. City of Wilkes-Barre*, 207 F. Supp. 2d 341, 351 (M.D. Pa. 2001), *aff'd*, 31 Fed. Appx. 69 (3d Cir. 2002); *Washington*, 802 F.2d at 1482 (no constitutional obligation to protect employee from "hazards inherent in that occupation"). Thus, Substantive Due Process does <u>not</u> provide a remedy for injuries sustained by a government employee due to the inherent risks of the job even if those risks were increased by the intentional and unreasonable conduct of the government. It need only be noted here, as did the Supreme Court in *Collins* and the D.C. Circuit in *Phillips*, as well

as in a plethora of cases in this area, that Substantive Due Process should not be interpreted to impose federal duties analogous to those of state law because state law governs the employment relationship in the public sector.  *See Collins*, 503 U.S. at 128.

The D.C. Circuit's reasoning in *Phillips*, is echoed in the District Court's decision in *Estate of Carrigan v. Park City Sheriff's Office*, 2019 U.S. Dist. LEXIS 54248, 2019 WL 1429282 (D. Col. Mar. 29, 2019), issued less than 3 months ago.  *Carrigan* first found that the cause of the plaintiffs' injuries was a municipal policy.  *Carrigan* then cited to the "well-settled authority that the Constitution does not guarantee state actors a safe workplace."  2019 U.S. Dist. LEXIS 54248 at *12 (citing *Collins*, 503 U.S. at 126, 129).  The Court then noted that certain government employees, like law enforcement and firefighters, are exposed to "state-created dangers" every day.  *Id.* at *12-13.  The Court held that employees doing some public sector jobs will always face an increased risk at some point on the job, that the supervisors will always be aware of the risk, and will make decisions nonetheless.  *Id.* Yet, *Carrigan* held that, even if tragically wrong, such decisions cannot bear "constitutional implications" because to hold otherwise would convert the Constitution into a guarantee of workplace safety despite the admonitions in *Collins*.  *Id.* at *13 (citation omitted).

*Carrigan*, relied, in part, on the Seventh Circuit's decision dismissal of the complaint in *Witkowski v. Milwaukee Co.*, 480 F.3d 511 (7th Cir. 2007).  *Witkowski* dismissed a sheriff's deputy's complaint alleging that she was injured by an inmate and because other deputies had increased the risk to her by their actions.  *Carrigan*, 2019 U.S. Dist. LEXIS 54248 at *14. *Carrigan*, explained that the *Witkowski*, plaintiff had voluntarily assumed the job of sheriff's deputy and thus assumed the risks inherent in that job, even though the risks were greatly and tragically increased by the acts of other government officials.  *Id.* (citing *Witkowski*, 480 F.3d at 512-13).  *Carrigan*, distinguished cases such as *Kedra v. Schroeter*, 876 F.3d 424 (3rd Cir. 2017), in which the danger that caused the injury to the plaintiff was not inherent in the job.  2019 U.S.

- 4 -

Dist. LEXIS 54248 at *15.  *Carrigan*, held that the distinction between *Witkowski*, and *Kedra*, lay in the *types* of risks which were intrinsic to the job rather than the magnitude of either the risk or the injury.  Where the risk is of a *type* that is intrinsic to the job then there is no Substantive Due Process claim for injuries even if the risk was greatly enhanced by the government employer. *Carrigan*, held that it is the *type* of risk and not the magnitude of the risk or injury that is critical in the Substantive Due Process analysis.  The magnitude of the risk could not have been higher than that in *Phillips*, *FOP*, and *Washington*, yet the *type* of risk was inherent in the jobs of firefighter, sheriff's deputy, and, in *FOP*, Correction Officer.  *Carrigan*, 2019 U.S. Dist. LEXIS 54248 at *15-16 (citing *Phillips; Slaughter v. Mayor and City Council of Baltimore,* 682 F.3d 317, 322 (4th Cir. 2012); and *Uhlrig v. Harder,* 64 F.3d 567, 576 (10th Cir. 1995)).  *Id.*

Plaintiffs' reliance on *Grubbs*, and *Russett*, is misplaced.  *See* Pl. Supp. at 2-3; *L.W. v. Grubbs*, 974 F.2d 119, 120-22 (9th Cir. 1992), *later decision,* 92 F.3d 894 (9th Cir. 1996); *Russett v. Arizona*, 2017 WL 5973348 (D. Ariz. Mar. 31, 2017), *later decision*, 2018 U.S. Dist. LEXIS 24277 (D. Ariz. Feb. 13, 2018), *appeals pending.*[2]  *Grubbs and Russett*, which relies heavily on *Grubbs*, both require a showing that defendants affirmatively placed plaintiff in a situation where that specific plaintiff was exposed to an actual, particularized danger of which the supervisor was well aware.  *Grubbs*, 974 F.2d at 122; *Russett I,* 2017 WL 5973348 at *3-4, *Russett II*, 2018 U.S. Dist. LEXIS 24277 at *9.  Grubbs was raped by an inmate in a jail after COs left her alone with the inmate although they knew of the extreme risk he posed.  974 F.2d at 120.  Grubbs was not warned that her nursing job entailed being alone with high risk inmates. *Id.*  Similarly, in *Russett* COs were attacked by violent, mentally ill inmates and alleged that

---

[2] The 2017 *Russett,* decision on the motion to dismiss the first amended complaint does not appear to be on Lexis and the 2018 decision, which is addressed to the second amended complaint, does not appear to be on Westlaw.  According to the docket, Arizona appealed both the 2017 and 2018 decisions to the 9th Circuit (Dkt Nos. 54 and 72), which are still pending.

officials knew of the danger and failed to warn the COs.  In *Grubbs* and *Russett* there was actual particularized risk to specific public employees and not a generalized risk to all, or almost all COs.  *Grubbs* and *Russett* are, therefore, inapposite.

Here, there is no allegation of particularized risk to a specific employee.  In sharp contrast to the first *Grubbs* decision, the PAC alleges increased risk to most, if not all COs, but no particularized increased risk to any specific CO or group of COs.  Thus, *Grubbs* and *Russett* are inapposite.  It should be noted that the Ninth Circuit in the 1996 *Grubbs* decision admitted that it was, in effect, constitutionalizing tort law, despite the warning in *Collins*.  503 U.S. at 128. It should also be noted that the 1996 *Grubbs* decision reversed a verdict against an official and the reversal was because plaintiff failed to show deliberate indifference to a known and impending risk.  92 F.3d at 896, 900.

Injury to a CO in DOC is, unfortunately, intrinsic to the job of CO.  It is for this reason that COs carry chemical agents such as OC spray and must maintain their firearms qualification throughout their employment as CO.  *See* Job Description and Notice of Examination which are annexed hereto as Appendices "A," and "B,"; *Seelig v. Koehler*, 76 N.Y.2d 87, 90-91, 93 556 N.E.2d 125, 556 N.Y.S.2d 832 (1990)(permitting random drug testing of COs under the "special needs" doctrine because of the dangers of jails to inmates and COs).  The notice of exam for CO ("NOE") from 2017 (when this case began) requires COs to undergo physical and mental examinations prior to hiring and warns of the possibility of further testing during employment.  The NOE warns that the CO job, which has peace officer status, requires "close contact with inmates," "possible physical restraint of an inmate," "exposure to chemical agents," and the requirement of firearms qualification.  NOE at 2.  Plaintiffs' argument that "*serious* bodily harm or death" is not inherent in the CO job, implicitly admits that bodily harm

*simpliciter*, is a *type* of risk inherent in the CO job.  Pl. Supp. at 5-6 (emphasis supplied).

Plaintiffs' argument concerns the *magnitude* of the injury from inmates' attacks and not the *type*

of risks inherent in the job.  This is precisely the kind of argument made and rejected by

employees in *Phillips*, *FOP, Washington*, and *Carrigan*, all of which held that the *type* of risk

was inherent in the job even if the magnitude of the risk was exacerbated by the government

employer's actions.  All rejected the Substantive Due Process claim.  As *Carrigan* held, it is the

*type* of risk and not the magnitude of risk or injury that is determinative.  It is undisputed, and

indisputable, that injury from inmates assaults are "within the ordinary contemplation of the job"

of CO.  Therefore, an increase in a type of risk inherent in the CO job cannot give rise to a

Substantive Due Process claim .  *See Carrigan,* 2019 U.S. Dist. LEXIS 54248 at *17.

<u>**CONCLUSION**</u>

**WHEREFORE,** defendants respectfully request that plaintiffs' motion to amend

and supplement the complaint be denied, that this case be dismissed in their entirety, that

judgment be entered for defendants, and that defendants be granted costs, fees, and

disbursements together with such other and further relief as the Court deems just and proper.

Dated:     New York, New York                    **ZACHARY W. CARTER**
           June 14, 2019                          Corporation Counsel of the
                                                    City of New York
                                                  Attorney for Defendants
                                                  100 Church Street, Room 2-187
                                                  New York, New York 10007-2601
                                                  (212) 356-2628
                                                  aschlesi@law.nyc.gov


                                          By:    /s/ *Alan Maer Schlesinger*
                                                 _____
                                                     Alan M. Schlesinger
                                                     Assistant Corporation Counsel

# APPENDIX A

**C - X**                                                          **CODE NO.  70410**
**THE  CORRECTION  SERVICE  [009]**

## CORRECTION  OFFICER

### General  Statement  of  Duties  and  Responsibilities

Under supervision, maintains security within correctional facilities and is responsible for the custody, control, care, job training and work performance of inmates of detention and sentenced correctional facilities;  performs related work.

### Examples  of  Typical  Tasks

Supervises inmate meals, visits, recreational programs, and other congregate activities.

Inspects assigned areas for conditions which threaten safety and security;  conducts searches in order to detect contraband.

Completes forms and reports;  maintains appropriate logs.

Communicates with other area Correction Officers to exchange pertinent information.

Issues verbal orders, announcements and explanations to inmates.

Observes inmates and makes recommendations concerning medical  and/or  psychiatric referrals.

Safeguards Departmental supplies and equipment.

Escorts inmates within and outside of the facility including their transportation in department vehicles.

C - X                                          CODE NO.  70410
THE  CORRECTION  SERVICE  [009]

<u>CORRECTION  OFFICER</u>  (continued)

<u>Examples  of  Typical  Tasks</u>  (continued)

Responds to unusual incidents and disturbances;  enforces security procedures in accordance with Department guidelines.

Requests medical assistance for inmates when necessary.

Counts and verifies the number of inmates present in assigned area;  verifies identification of inmates;  and supervises inmates of either sex.

Operates a motor vehicle in the performance of assigned duties.

<u>Qualification  Requirements</u>

1.      Sixty semester credits from an accredited college;  or

2.      At least forty-four semester credits from an accredited college.  Satisfactory completion of Academy training will provide an additional sixteen semester credits for a total of sixty semester credits;  or

3.      A four-year high diploma or its educational equivalent, and two years of honorable full-time United States military service;  or

C - X                                                     CODE NO.  70410

THE  CORRECTION  SERVICE  [009]

## CORRECTION  OFFICER  (continued)

**Qualification  Requirements**  (continued)

4.     A four-year high school diploma or its educational equivalent, and two years of
        satisfactory full-time experience as follows:

   **a)**     In Police Officer positions pursuant to Section 1.20, subdivision 34, of the
               New York State Criminal Procedure Law;  or
   **b)**     In Peace Officer positions pursuant to Section 2.10 of the New York State
               Criminal Procedure Law;  or
   **c)**     In positions with Special Patrolman designation;  or
   **d)**     In positions with status or designations equivalent to the above in Federal
               law enforcement or law enforcement in other states or municipalities.

**Firearms  Qualification**

Must qualify and remain qualified for firearms' usage as a condition of employment for
the duration of their tenure.  The methods, procedures and protocol for the firearms
qualification test will be determined by the Department of Correction.  A firearms
qualification test will be administered annually to determine qualification.  In addition,
Correction Officers must remain authorized to carry firearms under Federal and New
York State statutes.

**Peace  Officer  Status**

This class of positions is designated for Peace Officer status under the New York State
Criminal Procedure Law.  Therefore, candidates must be found qualified to serve as Peace
Officers.  Eligibility for Peace Officer status must be maintained for the duration of
employment.

C - X                                                        CODE NO.  70410
**THE  CORRECTION  SERVICE  [009]**

<u>**CORRECTION  OFFICER**</u>   (continued)

<u>**License  Requirement**</u>

A motor vehicle driver license valid in the State of New York State.  This license must be
maintained for the duration of employment.

<u>**Direct  Lines  of  Promotion**</u>

<u>**From:**</u>        None                                    <u>**To:**</u>    Captain  (Correction)
                                                                   (70467)

R  02.16.2005                    **PAGE  4  OF  4**

# APPENDIX B



**THE CITY OF NEW YORK**
**DEPARTMENT OF CITYWIDE**
**ADMINISTRATIVE SERVICES**
**APPLICATION UNIT**
**1 CENTRE STREET, 14TH FLOOR**
**NEW YORK, NY 10007**

| REQUIRED INFORMATION |
|---|
| APPLICATION |

# N O T I C E
# O F
# E X A M I N A T I O N

BILL DE BLASIO
Mayor

LISETTE CAMILO
Commissioner

---

## CORRECTION OFFICER
### Exam Nos. 7320, 7329, 7322, 7324, 7331, and 7327
### THIRD AMENDED NOTICE - April 5, 2017

---

**The Notice of Examination is amended to add Exam No. 7331 with an application and scheduling period from April 26, 2017 to May 31, 2017 and a testing period from May 1, 2017 to May 31, 2017.**

### YOU ARE RESPONSIBLE FOR READING THIS NOTICE IN ITS ENTIRETY
### BEFORE YOU SUBMIT YOUR APPLICATION.

**WHEN TO APPLY**:

| Exam No. | Application and Scheduling Period |
|---|---|
| 7320 | September 26, 2016 - October 31, 2016 |
| 7329 | October 27, 2016 - November 30, 2016 |
| 7322 | January 27, 2017 - February 28, 2017 |
| 7324 | March 27, 2017 - April 29, 2017 |
| 7331 | April 26, 2017- May 31, 2017 |
| 7327 | May 26, 2017 - June 30, 2017 |

**APPLICATION FEE**: **$61.00**

**If you choose to pay the application fee with a credit/debit/gift card, you will be charged a fee of 2.49% of the payment amount. This fee is nonrefundable.**

**THE TEST SCHEDULE**: Testing for the title of Correction Officer is anticipated to be held throughout the year depending on the hiring needs of the agency.  Below is the schedule of testing from October 2016 - June 2017:

| Exam No. | Testing Period |
|---|---|
| 7320 | October 1, 2016 - October 31, 2016 |
| 7329 | November 1, 2016 - November 30, 2016 |
| 7322 | February 1, 2017 - February 28, 2017 |
| 7324 | April 1 , 2017 - April 29, 2017 |
| 7331 | May 1, 2017- May 31, 2017 |
| 7327 | June 1, 2017 - June 30, 2017 |

**Monthly Schedule**: A monthly schedule of the days and times for applying, scheduling and testing will be available within the week prior to the 1st day of each month at *www.nyc.gov/dcas* and at the DCAS Computer-based Testing & Applications Centers. Although the testing period for the exam numbers will be open for multiple months, the available test dates and times for self-scheduling will be released on a monthly basis and specified on the monthly exam schedule.

**DCAS COMPUTER-BASED TESTING & APPLICATIONS CENTERS**:  This exam will be administered at the DCAS Computer-based Testing and Application Centers:

| **Manhattan** | **Brooklyn** |
|---|---|
| **2 Lafayette Street** | **210 Joralemon Street** |
| **17th Floor** | **4th Floor** |
| **New York, NY 10007** | **Brooklyn, NY 11201** |

You may take the Correction Officer test at either location, but you may only take each exam number once.  If you take a test with the same exam number more than once, only your first test will be rated and your additional application fee will not be refunded.

**Warning**:  You are not permitted to enter the test site with cellular phones, smart watches, beepers, pagers, cameras, portable media players, or other electronic devices.  Calculators are permitted; however, they must be hand-held, battery or solar powered, numeric only. Calculators with functions **other than** addition, subtraction, multiplication and division **are prohibited**. Electronic devices with an alphabetic keyboard or with word processing or data recording capabilities such as planners, organizers, etc. are prohibited.  If you use any of these devices in the building at any time before, during or after the test,  your test score may be nullified, you may not receive your test results and your application fee will not be refunded.

You may not have any other person, including children, present with you while you are being processed for or taking the test, and no one may wait for you inside of a Computer-based Testing & Applications Center while you are taking the test.

**Required Identification**:  **You are required to bring one (1) form of valid (non-expired) signature and photo bearing identification to the test site**.  The name that was used to apply for the exam must match the first and last name on the photo ID.  A list of acceptable identification documents is provided below.  **If you do not have an acceptable ID, you may be denied testing.**  Acceptable forms of identification (bring one) are as follows: State issued driver's license, State issued identification card, US Government issued Passport, US Government issued Military Identification Card, US Government issued Alien Registration Card, Employer ID with photo, or Student ID with photo.

**Leaving**:  You must leave the test site once you finish the test.  If you leave the test site after being fingerprinted but before finishing the test, you will not be permitted to re-enter.  If you disregard this instruction and re-enter the test site, you may not receive your test results, your test score may be nullified, and your application fee will not be refunded.

**Test dates and times are subject to change.**

---

### READ CAREFULLY AND SAVE FOR FUTURE REFERENCE

**WHAT THE JOB INVOLVES**:  Correction Officers, under supervision, maintain security and are responsible for the care, custody, control, job training and work performance of sentenced and detained inmates within New York City correctional facilities.  They supervise inmate meals, visits, recreational programs, and other congregate activities; inspect assigned areas for conditions which threaten safety and security; conduct searches in order to detect contraband; complete forms and reports; maintain appropriate log books; communicate with other area Correction Officers to exchange pertinent information; issue verbal orders, announcements and explanations to inmates; observe inmates and make recommendations concerning medical and/or psychiatric referrals; safeguard Department supplies and equipment; escort inmates within and outside of the facility including their transportation in Departmental vehicles; respond to unusual incidents and disturbances; enforce security procedures in accordance with Department guidelines; request medical assistance for inmates when necessary; count and verify the number of inmates present in assigned areas; verify identification of inmates; supervise inmates of either sex; operate a motor vehicle; and perform related work.

**Special Working Conditions**: Correction Officers are required to work weekends, holidays, nights, rotating tours and overtime when ordered.

Some of the physical activities performed and environmental conditions experienced by Correction Officers are: walking and/or standing in an assigned area for 8 ½ to 17 hours continuously; walking up several flights of stairs; working outdoors in all kinds of weather; exposure to chemical agents; being subjected to close contact with inmates; possible physical restraint of an inmate; interactions with different inmate categories e.g., adolescents and inmates under mental health observation; responding to various incidents as required; carrying or donning heavy equipment; lifting/moving heavy objects.

(This is a brief description of what you might do in this position and does not include all the duties of this position.)

**THE SALARY**:  The current minimum salary is $41,992 per annum.  Incumbents will receive salary increments reaching $80,788 per annum at the completion of five and one half years of employment.  There is an annual uniform allowance of $1,100, holiday pay of $1,769 increasing to $3,599 after five and one half years of service, contributions by the City to Welfare and Annuity Funds and City-paid health insurance.  In addition, after 5, 10, 15 and 20 years of service, incumbents receive $4,365, $5,365, $6,365 and $7,365, respectively, in addition to base salary as longevity.  All rates are subject to change.

**HOW TO APPLY**:  You may apply and schedule a reservation for a test date if you believe you meet the requirements in the "How to Qualify" section. To apply and schedule yourself for this exam you must do so through the Online Application System (OASys) at *www.nyc.gov/examsforjobs*.  In order to apply and schedule yourself for this exam, you must have an OASys account. Once you create a new OASys account, you **may submit an application and schedule yourself for this exam. However, all new OASys accounts require verification to ensure the accuracy of candidate information. Some new OASys accounts may require up to 24 hours to be reviewed and resolved during normal business hours. An email notification will be sent to you if additional information is required. Please keep this information and the application period deadline in mind when creating your account.**

Follow the onscreen application instructions for making a reservation and electronically submitting your application and payment, and completing any required information.  A unique and valid email address is required to apply online.  Several internet service providers, including but not limited to Google, Yahoo!, AOL, Outlook.com, and Mail.com offer free email. The following methods of payment are acceptable: major credit card, bank card associated with a bank account, or a prepaid debit card with a credit card logo which you may purchase online or at various retail outlets.

If you are receiving or participating in certain forms of public assistance/benefits/programs, or are a veteran, you may qualify to have the application fee waived.  For more information on eligibility for a fee waiver and documentation requirements, visit the Fee Waiver FAQ on the Online Application System at *https://a856-eeexams.nyc.gov/OLEE/oasys/FAQFeeWaiver.aspx*.

If you do not have access to a computer, you may apply and schedule a reservation for a test date online at one of the DCAS' Computer-based Testing & Applications Centers. The centers will be open Monday through Saturday from 9:00 AM to 5:00 PM:

| Manhattan | Brooklyn |
|---|---|
| 2 Lafayette Street | 210 Joralemon Street |
| 17th Floor | 4th Floor |
| New York, NY 10007 | Brooklyn, NY 11201 |

For questions regarding scheduling and rescheduling refer to the Reservation and Rescheduling FAQs at *https://a856-eeexams.nyc.gov/OLEE/SeatReservation/FAQReservation.aspx*.

The administration of the test is subject to change in the event of an unforeseen occurrence. If you wish to verify the test date and time, you may call the DCAS Interactive Voice Response (IVR) system at (212) 669-1357 two hours before the test session you wish to attend to hear if the test is not being administered at that time. The recorded message will be heard after the "Thank you for calling" greeting. If there is no message regarding testing at the Centers, it means that testing will be administered as scheduled for that day.

**Special Circumstances Guide**: This guide is located on the DCAS website at *www.nyc.gov/html/dcas/downloads/pdf/misc/pdf_c_special_circumstances_guide.pdf* and available at the DCAS Computer-based Testing & Applications Centers.  This guide gives important information about requesting an alternate test date because of religious observance or a special test accommodation for disability, claiming Veterans' or Legacy credit, and notifying DCAS of a change in your mailing address.  Follow all instructions on the Special Circumstances Guide that pertain to you when you complete your "Application for Examination."

If you plan to request special testing accommodations due to disability, do not apply for an exam and self-schedule through OASys. Refer to the Special Test Accommodations Section at the end of this Notice of Examination for instructions on how to apply.

You will be given the test before we review your qualifications. You are responsible for determining whether or not you meet the qualification requirements for this examination prior to submitting your application. If you are marked "Not Qualified," your application fee will not be refunded.

**HOW TO QUALIFY**:

**Education and Experience Requirements**:  By the **time you are appointed to this position**, you must have:

1.  successfully completed 39 semester credits at an accredited college or university, accredited by regional, national, professional or specialized agencies recognized as accrediting bodies by the U.S. Secretary of Education, and by the Council for Higher Education Accreditation (CHEA). In addition, you must complete an additional 21 semester credits, which may be satisfied by successful completion of Academy training, to total 60 semester credits by the end of Academy training; **or**

2.  a four-year high school diploma or its equivalent, approved by a State's Department of Education or a recognized accrediting organization, **and** have completed two years of honorable full-time U.S. military service; **or**

3.  a four-year high school diploma or its educational equivalent, approved by a State's Department of Education or a recognized accrediting organization, **and** two years of satisfactory, full-time experience (a) in positions classified as Police Officers pursuant to Section 1.20, subd. 34, of the NYS Criminal Procedure Law, or (b) in positions classified as Peace Officers pursuant to Section 2.10 of the NYS Criminal Procedure Law, or (c) in positions designated as Special Patrolman pursuant to Section 14-106 of the Administrative Code and Chapter 13 of Title 38 of the Rules of the City of New York, or (d) in positions in Federal law enforcement or law enforcement in other states or municipalities with status or designations equivalent to (a), (b), or (c) above; **or**

4.  six years of active service in the Army Reserve, the Army National Guard, the Navy Reserve, the Air Force Reserve, the Air National Guard, the Marine Corps Reserve, or the Coast Guard Reserve with an honorable discharge.  Time spent in the Individual Ready Reserve (IRR) will not count towards six years of active service.

If you were educated outside the United States, you must have your foreign education evaluated to determine its equivalence to education obtained in the United States.  You will receive instructions from the Department of Correction during the pre-employment screening process regarding the approved evaluation services that you may use for foreign education.

**The Prison Rape Elimination Act (PREA)**:  Appointment into this title is subject to the Federal Regulations of the Prison Rape Elimination Act (PREA). As per PREA Regulations, the Department of Correction will not hire or promote anyone who may have contact with inmates and detainees, and who has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997); or who has been convicted or civilly or administratively adjudicated to have engaged or attempted to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse.

**Minimum Age Requirement**:  You must be at least 17 ½ years of age by the date you take the multiple-choice test.  Additionally, you must have attained age 21 to be appointed as a Correction Officer.  If you are too young for appointment on the date the eligible list is terminated, you will have no further opportunity for appointment from this list.

**Driver License Requirement**:  You must possess a learner's permit valid in the State of New York at the time of appointment and must obtain a valid driver license from the State of New York prior to graduating from the Department of Correction Academy. If you already have a license you may be disqualified for any moving violation (s), license suspension or an accident record. You must maintain a driver license for the duration of your employment.

**Character and Background**:  Proof of good character and satisfactory background will be absolute prerequisites to appointment. The following are among the factors which would ordinarily be cause for disqualification: (a) arrest record or conviction of an offense, the nature of which indicates lack of good moral character or disposition towards violence or disorder; (b) repeated arrests or convictions of an offense, where such convictions or arrests indicate a disrespect for the law; (c) discharge from employment, where such discharge indicates poor behavior or an inability to adjust to discipline; (d) dishonorable discharge from the Armed Forces; and (e) conviction of petit larceny.  In accordance with provisions of law, persons convicted of a felony or domestic violence misdemeanor are not eligible for appointment to the title of Correction Officer.

**Medical and Psychological Assessment**:  Medical and psychological guidelines have been established for the position of Correction Officer.  You will be examined to determine whether you can perform the essential functions of a Correction Officer.  Additionally, you will be expected to continue to perform the essential functions of a Correction Officer throughout your career, and may, therefore, be medically and psychologically tested periodically throughout your career.  Where appropriate, a reasonable accommodation will be provided for a person with a disability to enable him or her to take these medical and psychological examinations, and/or to perform the essential functions of the job.

**Physical Testing**:  Physical standards have been established for the position of Correction Officer.  You must pass a qualifying physical test, and may be required to undergo periodic physical testing throughout your career.

**Drug Testing**:  You must pass a drug screening prior to appointment as a part of a pre-employment screening process.  Additionally, as a probationary Correction Officer, you are subject to random drug testing during Academy Training.  You may again be drug tested on a random basis after your probationary period is completed or as a prerequisite for assignment or promotion.  Any member of the NYC Department of Correction found in possession of or using illegal drugs, or who fail, refuses, or attempts to evade a drug test, will be terminated. The NYC Department of Correction has a strict zero tolerance policy concerning illegal drug use.

Individuals who are considering applying for positions in the NYC Department of Correction are expected to conform their behavior to this policy well before they begin the application process.

**Residency Requirement**:  The New York State Public Officers Law requires that at the date of appointment, you must be a resident of the City of New York or of Nassau, Westchester, Suffolk, Orange, Rockland or Putnam counties.

**English Requirement**:  You must be able to understand and be understood in English.

**Citizenship**:  United States citizenship is required at the time of appointment.

**Proof of Identity**:  Under the Immigration Reform and Control Act of 1986, you must be able to prove your identity and your right to obtain employment in the United States prior to employment with the City of New York.

**THE TEST**:  You will be given a multiple-choice test at a computer terminal.  Your score on this test will be used to determine your place on an eligible list.  You must achieve a score of at least 70% to pass the test.  The multiple-choice test may include questions which require the use of any of the following abilities:

**Written Comprehension**: understanding written sentences and paragraphs. Example: A Correction Officer may use this ability to interpret policies and regulations in a correctional facility and carry out procedures based on the written materials.

**Written Expression**: using English words or sentences in writing so that others will understand. Example: A Correction Officer may use this ability to write reports using correct grammar, spelling and punctuation.

**Memorization**: remembering information, such as words, numbers, pictures and procedures. Pieces of information can be remembered by themselves or with other pieces of information. Example: A Correction Officer may use this ability to memorize information such as numbers, pictures, or persons or items in a room or location.

**Problem Sensitivity**: being able to tell when something is wrong or is likely to go wrong.  It includes being able to identify the whole problem as well as elements of the problem. Example: A Correction Officer may use this ability to observe behavior, conduct and activities of inmates to verify compliance.

**Number Facility**: adding, subtracting, multiplying and dividing quickly and correctly. Example: A Correction Officer may use this ability to compile and verify data such as coordinating the distribution of special meals to different correctional facilities.

**Mathematical Reasoning**: understanding and organizing a problem and then selecting a mathematical method or formula to solve the problem.  It encompasses reasoning through mathematical problems to determine appropriate operations that can be performed to solve problems. Example: A Correction Officer may use this ability to calculate average number of miles driven for each tour.

**Deductive Reasoning**: applying general rules to specific problems and coming up with logical answers. It involves deciding if an answer makes sense. Example: A Correction Officer may use this ability to assign inmates tasks and jobs, and needs to determine which tasks can be assigned to which inmate using specific rules.

**Inductive Reasoning**: combining separate pieces of information, or specific answers to problems, to form general rules or conclusions.  It involves the ability to think of possible reasons for why things go together. Example: A Correction Officer may use this ability to determine the validity of inmate complaints based on information such as observations and discussions with inmates.

**Information Ordering**: correctly following a rule or set of rules of actions in a certain order.  The rule or set of rules used must be given. The things or actions to be put in order can include numbers, letters, words, pictures, procedures, sentences, and mathematical or logical operations. Example: A Correction Officer may use this ability to report for roll call ready to receive work assignment orders and ready to be instructed to do things in a particular order.

**Spatial Orientation**: determining where you are in relation to the location of some object or where the object is in relation to you. Example: A Correction Officer may use this ability to appear before criminal court and may need to find the most direct route in a given map.

**Visualization**: imagining how something would look when it is moved around or when its parts are moved or rearranged.  It requires the forming of mental images of how patterns or objects would look after certain changes, such as unfolding or rotation. One has to predict how an object, set of objects, or pattern will appear after the changes have been carried out. Example: A Correction Officer may use this ability to identify the location of an item or items after entering a room through a different entrance.

**THE TEST RESULTS**:  If you pass the multiple-choice test, your name will be placed in final score order on an eligible list and you will be given a list number.  You will be notified by mail of your test results.  If you meet all requirements and conditions, you will be considered for appointment when your name is reached on the eligible list.

**CHANGE OF MAILING AND/OR EMAIL ADDRESS**:  It is critical that you promptly notify DCAS of any change to your mailing and/or  email address. You may miss important information about your exam(s) or consideration for appointment, including important  information that may require a response by a specified deadline, if we do not have your correct mailing and/or email address. Change of mailing and/or email address requests submitted to any place other than DCAS, such as your Agency or the United States Postal  Service will NOT update your records with DCAS. To update your mailing and/or email address with DCAS, you must submit a change request by mail or in person. Your request must include your full name, social security number, exam title(s), exam number(s),  old mailing and/or email address, and your new mailing and/or email address. Your request can be mailed to DCAS Records Room, 1 Centre Street, 14th Floor, New York, NY 10007 or brought in person to the same address Monday through Friday from 9AM to 5PM.

**ADDITIONAL INFORMATION**:

**Peace Officer Status**:  You must satisfy the requirements established by the State of New York for Peace Officers.  You must meet and maintain the requirements for Peace Officer Status for the duration of your employment.

**Investigation**:  The position is subject to investigation before appointment.  At the time of investigation, you will be required to pay a $75.00 fee for fingerprint screening. At the time of investigation and at the time of appointment, you must present originals or certified copies of all required documents and proof, including but not limited to proof of a high school diploma or equivalent, date and place of birth by transcript of record of the Bureau of Vital Statistics or other satisfactory evidence, naturalization papers if necessary, and proof of military service.  Any willful misstatement or failure to present any required documents will be cause for disqualification.  Investigation must be completed prior to appointment.

**Firearms Qualifications**:  You must qualify and remain qualified for firearms usage as a condition of employment for the duration of your career.  The methods, procedures and protocol for the firearms qualification test will be determined by the Department of Correction.  A firearms qualification test will be administered annually to determine qualification.  In addition, you must remain authorized to carry firearms under Federal and New York State statutes.

**Probationary Period**:  The probationary period is 24 months.  As part of the probationary period, you will be required to successfully complete a prescribed training course.  If you fail to successfully complete such training course, you will be terminated by the agency head.

**Promotion Opportunities**:  Employees in the title of Correction Officer are afforded the opportunity to be promoted to the title of Captain (Correction) and, from that title, to Warden (Correction) at several assignment levels.

**SPECIAL TEST ACCOMMODATIONS**:  If you plan to request special testing accommodations due to disability, do not apply for an exam and self-schedule through OASys. If you apply for an exam and schedule yourself for a test date using OASys, you will have no other opportunities to request a special accommodation for that test.  You must submit your application and a written request for the specific special accommodation to Administration, Customer and Exam Support by e-mail at *testingaccommodations@dcas.nyc.gov* or by fax at (212) 313-3241. Please refer to the **Special Circumstances Guide** at *http://www.nyc.gov/html/dcas/downloads/pdf/misc/pdf_c_special_circumstances_guide.pdf* for information on what to include in your request. Your request must be received at least fifteen business days before the date of your test.

**PENALTY FOR MISREPRESENTATION**:  Any intentional misrepresentation on the application or examination may result in disqualification, even after appointment, and may result in criminal prosecution.

---

**The General Examination Regulations of the Department of Citywide Administrative Services apply to this examination and are part of this Notice of Examination.  They are posted and copies are available at nyc.gov/dcas and at the DCAS Computer-based Testing & Applications Centers.**

The City of New York is an Equal Opportunity Employer.

Title Code No. 70410;  Correction Service.